IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA

LANALEX CLOYD, INC.,

     Plaintiff,

v.

TRAFFORD BOROUGH, RICHARD
SAHAR, ASHLEY STACK, DENNIS
HOCKENBERRY, CASEY SHOUB, CRAIG
I. McVICKER, individually and d/b/a CEA
CODE ENFORCEMENT AGENCY, and
CEA CODE ENFORCEMENT
ASSOCIATES, LLC d/b/a CEA CODE
ENFORCEMENT AGENCY,

     Defendants.

CIVIL DIVISION

No.   807 of 2018

**COMPLAINT**



FILED ON BEHALF OF:

**LANALEX CLOYD, INC., PLAINTIFF**

COUNSEL OF RECORD:

James W. Creenan, Esquire
PA. ID. No. 79213

Creenan & Baczkowski, PC
Town Square Professional Building
3907 Old William Penn Highway
Suite 304
Murrysville, PA 15668
(724) 733-8832
(724) 733-8834 (facsimile)

jcreenan@cbattorneys.com

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA

LANALEX CLOYD, INC.,

Plaintiff,

v.

TRAFFORD BOROUGH, RICHARD
SAHAR, ASHLEY STACK, DENNIS
HOCKENBERRY, CASEY SHOUB, CRAIG
I. McVICKER, individually and d/b/a CEA
CODE ENFORCEMENT AGENCY, and
CEA CODE ENFORCEMENT
ASSOCIATES, LLC d/b/a CEA CODE
ENFORCEMENT AGENCY,

Defendants.

CIVIL DIVISION

No. 807 of 2018

## **NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

LAWYER REFERRAL SERVICE
WESTMORELAND BAR ASSOCIATION
P.O. BOX 565
Greensburg, Pennsylvania 15601
(724) 834-8490
http://lrs.westbar.org

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA

LANALEX CLOYD, INC.,                     CIVIL DIVISION

      Plaintiff,                         No. 807 of 2018

v.

TRAFFORD BOROUGH, RICHARD
SAHAR, ASHLEY STACK, DENNIS
HOCKENBERRY, CASEY SHOUB, CRAIG
I. McVICKER, individually and d/b/a CEA
CODE ENFORCEMENT AGENCY, and
CEA CODE ENFORCEMENT
ASSOCIATES, LLC d/b/a CEA CODE
ENFORCEMENT AGENCY,

      Defendants.

## COMPLAINT

AND NOW, comes Plaintiff Lanalex Cloyd, Inc. by and through its attorneys Creenan &
Baczkowski, PC and James W. Creenan, Esquire and files its Complaint against Defendants
Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I.
McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement
Associates, LLC d/b/a CEA Code Enforcement Agency, as follows:

1.     This Civil Action avers the Defendants to be liable for their collective errors,
wrongful conduct, and reckless indifference of the rights of Plaintiff Lanalex Cloyd, Inc. arising
from the Defendants' inept and malicious efforts to interfere with Lanalex's ownership and use of
the historic "Bank Building" in Trafford, Pennsylvania.

### PARTIES

2.     Plaintiff Lanalex Cloyd, Inc. ("**Lanalex**") is a Pennsylvania corporation duly
organized with its registered office at 5204 Foulk Road, Export, PA, 15632.

3.     Defendant Trafford Borough ("**Trafford**") is a municipal entity existing at the permission of the people of the Commonwealth of Pennsylvania with an address of 414 Brinton Avenue, Trafford, PA 15085.

4.     Defendant Trafford acted by and through its elected officials and duly appointed or hired officers and agents including Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA.

5.     Defendant Richard Sahar ("**Sahar**") is an adult individual who, upon information and belief, served as the Borough Manager of Trafford from May 2015 until April 30, 2017.

6.     Upon information and belief, Sahar resides at 208 S. 5th Street, West Newton, PA 15089.

7.     Defendant Ashley Stack ("**Stack**") is an adult individual who serves as the Borough Manager of Trafford at 414 Brinton Avenue, Trafford, PA 15085.

8.     Defendant Dennis Hockenberry ("**Hockenberry**") is an adult individual residing at 764 7th Street, Trafford, PA 15085.

9.     Upon information and belief, Hockenberry served as a Trafford Council Member from November 2014 until June 2018.

10.     Defendant Casey Shoub ("**Shoub**") is an adult individual residing at 113 Coventry Court, Trafford, PA 15085.

11.     At all times material hereto, Shoub served as a Trafford Council Member.

12.     Defendant Craig I. McVicker ("**McVicker**") is an adult individual who, upon information and belief, is a Pennsylvania certified code official and does business as CEA Code Enforcement Agency at 1633 Route 51, Suite 100, Jefferson Hills, PA 15025.

13.     Defendant CEA Code Enforcement Associates, LLC ("**CEA**") is a Pennsylvania limited liability company.

14.     Upon information and belief, Defendant McVicker owns and operates CEA.

15.     Upon information and belief, CEA does business as CEA Code Enforcement Agency at 1633 Route 51, Suite 100, Jefferson Hills, PA 15025.

## JURISDICTION AND VENUE

16.     Jurisdiction and venue are proper because one or more transactions or occurrences giving rise to Lanalex's claims took place in Westmoreland County, Pennsylvania.

## MATERIAL FACTS

17.     Lanalex is the owner of the "Bank Building" in the center of the Borough of Trafford at 501-503 Cavitt Avenue ("**Property**") pursuant to a deed recorded on November 8, 2013 in the Office of the Recorder of Deeds of Westmoreland County, Pennsylvania at Instrument Number 201311080045020 executed by Bayview Loan Servicing, LLC.

18.     At all material times until November of 2019, the Property consisted of a three-story brick structure plus basement ("**Building**") on Lots 501 and 503 in the East Pittsburgh Improvement Company's Plan of Trafford City, recorded in plan Book Volume I, Page 261-263.

### A. History of the Property

19.     The Property is situated at the corner of Cavitt Avenue and Fifth Street (PA Route 130).

20.     The Property has a long history of ownership, as follows:

  a. On October 1, 1901, Security Investment Company conveyed certain real estate, including the real estate that is now the Property, to East Pittsburgh Improvement Company by deed dated October 1, 1901 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 308, Page 248.

  b. On March 22, 1902, East Pittsburgh Improvement Company subdivided a portion of the real estate conveyed to the East Pittsburgh Improvement Company by Security Investment Company as set forth in East Pittsburgh Improvement Company's Plan of Trafford City recorded in the Office of the

Recorder of Deeds of Westmoreland County at Plan Book Volume 1, Pages 261-263. The Property is Lots 501 and 503 of the Plan.

c. On August 11, 1902, East Pittsburgh Improvement Company conveyed the Property to East Pittsburgh Savings & Trust Company by deed dated August 11, 1902 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 339, Page 198.

d. On July 18, 1912, East Pittsburgh Savings & Trust Company conveyed the Property to Trafford Improvement Company by deed dated July 18, 1912 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 517, Page 435.

e. On October 20, 1922, Interborough Improvement Company (formerly Trafford Improvement Company) conveyed the Property to Harry S. Miller by deed dated October 20, 1922 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 723, Page 274.

f. On July 27, 1932, William H. Humes, Sheriff of Westmoreland County, conveyed Harry S. Miller's interest in the Property to Barclay Westmoreland Trust Company, Trustee by deed dated July 27, 1932 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 942, Page 401.

g. On December 24, 1946, Barclay Westmoreland Trust Company, Trustee conveyed its interest in the Property to A. C. Scales, Tony Morocco, and Joe Warren by deed dated December 24, 1946 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 1263, Page 188.

h. On January 31, 1947, A. C. Scales and Gladys L. Scales, his wife, Tony Morocco and Rachel Morocco, his wife, and Joe Warren and Florence Warren, his wife, conveyed an undivided one-fourth (1/4) interest in the Property to Martin Morocco by deed dated January 31, 1947 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 1273, Page 558.

i. On September 1, 1950, A. C. Scales and Gladys L. Scales, his wife, Tony Morocco and Rachel Morocco, his wife, Martin Morocco and Rose Morocco, his wife, and Joe Warren and Florence Warren, his wife conveyed the Property to Nathan H. Leventon and Selma G. Leventon, his wife by deed dated September 1, 1950 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 1400, Page 254.

j.  On January 12, 1953, Nathan H. Leventon and Selma G. Leventon, his wife, conveyed the Property to Tony Morocco and Rachel Morocco, his wife, and A. C. Scales by deed dated January 12, 1953 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 1479, Page 308.

k.  On January 30, 1957, Tony Morocco and Rachel Morocco, his wife, conveyed the Property to Bernard A. Feldman and Bertha Feldman, his wife, and Jacob Slone and Shirley Slone, his wife, by deed dated January 30, 1957 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 1639, Page 406.

l.  On July 6, 1972, Bernard A. Feldman and Bertha Feldman, his wife, and Jacob Slone and Shirley Slone, his wife, conveyed the Property to Bernard A. Feldman and Bertha C. Feldman, his wife by deed dated July 6, 1792 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 2100, Page 969.

m.  On August 30, 1974, Judith M. Baron, Receiver of the Estate of Bernard A. Feldman and Bertha C. Feldman conveyed the Property to Paul Suchko by deed dated August 30, 1974 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 2170, Page 672.

n.  On June 16, 1982, Paul Suchko and Helen Suchko, his wife, conveyed a portion of their interest in the Property to Joseph J. DeVito and Mary M. DeVito, his wife by deed dated June 16, 1982 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 2448, Page 607.

o.  On May 29, 1986, Paul Suchko and Helen Suchko, his wife, and Joseph J. DeVito and Mary M. DeVito, his wife, conveyed the Property to John F. Walko, Jr. by deed dated May 29, 1986 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Deed Book Volume 2670, Page 358.

p.  On December 10, 2012, Johnathan Held, Sheriff of Westmoreland County, conveyed John F. Walko, Jr.'s interest in the Property to Bayview Loan Servicing LLC by deed dated December 12, 2012 and recorded in the Office of the Recorder of Deeds of Westmoreland County at Instrument Number 201301080000799.

q.  On September 5, 2013, Bayview Loan Servicing LLC conveyed the Property to Lanalex Cloyd, Inc. by deed dated September 5, 2013 and recorded in the

Office of the Recorder of Deeds of Westmoreland County at Instrument Number 201311080045020.

21.     Trafford has an equally long history of failing to support the business community and of interfering with the Property's development.

22.     Defendants have repeatedly and persistently obstructed and prevented Lanalex's redevelopment and restoration of the Property since Lanalex acquired the Property.

23.     Further, upon information and belief learned after Lanalex purchased the Property, Trafford has done nothing in its history to directly facilitate the full commercial use of the Property nor indirectly create conditions that would allow for property owners to create a viable economic climate.

24.     Despite this, Defendants further obstructed Lanalex's efforts to own, develop, and use the Property.

25.     In 2013, Lanalex purchased the Property with the intention of rehabilitating the Building and converting the Building into apartments and commercial space.

26.     At the time Lanalex purchased the Property, the Building could be remodeled by Lanalex.

27.     However, Trafford had different plans for the Building.

28.     Trafford wanted to get rid of the Building.

29.     Trafford sought to force Lanalex out and carry out Trafford's plan to erase the Building from Trafford's landscape, and Trafford proceeded with its scheme to do so ("**Trafford's Scheme**").

30.     All of the Defendants participated in Trafford's Scheme.

31.     Trafford obstructed Lanalex's efforts to develop the Property almost immediately.

**B. Trafford's Improper Collection and Retention of Lanalex's Bond**

32. As a condition of Lanalex's purchase of the Property, Trafford demanded that Lanalex apply for a permit to repair the sewer lateral ("**Sewer**") on the Property and deposit the sum of $20,000.00 ("**Bond**") with Trafford to guarantee that Lanalex would repair the Sewer.

33. Trafford lacked the authority to demand and collect a bond for the "Sewer."

34. Nevertheless, Lanalex complied with Trafford's demand and deposited the Bond with Trafford.

35. Notably, Trafford never issued the required permit for the Sewer to Lanalex.

36. Trafford retained the Bond and further demanded that Lanalex complete the repairs to the Sewer and work not covered by the Bond.

37. Lanalex needed to make an opening in the street to access the Sewer ("**Street Opening**").

38. Trafford's Code requires permit applicants for a street opening to provide a bond in the amount of $1,000.00 for one street/sidewalk opening and $10,000.00 for an "indefinite" number of openings. *See* Trafford Borough Code § 170-19. A true and correct copy of Section 170-19 of the Trafford Borough Code is attached as **Exhibit 1**.

39. Trafford advised Lanalex that it did not require Lanalex to deposit any additional bond for the Street Opening Lanalex needed to make to access the Sewer as Trafford already had Lanalex's Bond.

40. On May 19, 2016, McVicker advised Lanalex's counsel that "Trafford Borough will agree to release the bond provided the work being performed passes the sanitary final inspections." A true and correct copy of McVicker's May 19, 2016 email is attached as **Exhibit 2**.

41. Lanalex completed the repairs to the Sewer in September 2016.

42.     Lanalex asked Sahar whether the Sewer passed inspection, but Sahar refused to confirm or deny whether the Sewer passed inspection.

43.     Sahar only advised Lanalex that the Street Opening needed to be backfilled.

44.     Lanalex backfilled the Street Opening with gravel.

45.     Upon Lanalex's completion of the repairs to the Sewer, Trafford became obligated to return Lanalex's Bond.

46.     Lanalex has repeatedly demanded that Trafford return Lanalex's Bond.

47.     Despite Lanalex's repeated demands, Trafford has refused and failed to return Lanalex's Bond.

48.     Trafford never provided Lanalex with an explanation for Trafford's refusal to return the Bond or an opportunity to be heard.

49.     Importantly, Trafford's improper retention of Lanalex's Bond caused Lanalex to not have $20,000 of its funds available to it to use for planned repairs and improvements to the Property.

50.     Withholding Lanalex's funds so that Lanalex could not use the funds to develop the Building was just one aspect of Trafford's Scheme.

51.     Nevertheless, Lanalex performed work on the Building with the funds that Lanalex did have available, but Lanalex's efforts were limited by its limited funds.

52.     Lanalex continued to demand the release of the Bond so Lanalex could perform other repairs.

C.  **Trafford Condemns and Directs Demolition of the Building Without Notice to Lanalex**

53.     In carrying out Trafford's Scheme, Trafford next attempted to deprive Lanalex of its possessory and ownership interest in the Property without notice or an opportunity to be heard.

54.     On May 5, 2015, Trafford held a Public Hearing regarding the Property.  A true and correct copy of the Minutes of the May 5, 2015 Public Hearing is attached as **Exhibit 3**.

55.     Trafford knowingly did not invite or give Lanalex actual notice of the Public Hearing.

56.     Rather, Lanalex only learned of the Public Hearing when a  newspaper reporter contacted Lanalex's owner.

57.     At the Public Hearing, Trafford declared the Property to be an "abandoned, dilapidated, and/or nuisance structure." *See* Ex. 3.

58.     At the Public Hearing, Trafford's Mayor declared "In order for the community to move forward we have to take the direction and tear down these dilapidated buildings." *See* Ex. 3.

59.     Following the May 5, 2015 Public Hearing, Trafford held its Regular Monthly Meeting.  A true and correct copy of the Minutes of the Meeting is attached as **Exhibit 4**.

60.     At the Meeting, Trafford's engineer reported that the Property's sidewalk was collapsing. *See* Ex. 4.

61.     At the Meeting, Lanalex's owner asked why Lanalex was not given notice of the Public Hearing, and Trafford's only response was that the Public Hearing was advertised in a local newspaper. *See* Ex. 4.

62.     Lanalex's owner reported to Trafford that Lanalex was in the process of receiving bids to renovate the property into apartments and commercial stores. *See* Ex. 4.

63.     Trafford's Solicitor responded that Lanalex will receive a letter confirming Trafford's decision to declare the Property a nuisance and to demolish the Building and that Lanalex could file an appeal of that decision within 30 days. *See* Ex. 4.

64. At the Meeting, Hockenberry made a motion to condemn and authorize demolition of the Building. *See* Ex. 4.

65. At the Meeting, Shoub made a motion to adopt a Resolution acknowledging that Trafford joined the Westmoreland County Land Bank ("**Land Bank**"). *See* Ex. 4.

66. Shoub indicated that "[t]he purpose is to get rid of dilapidated structures and get the land back on the tax rolls, fairly new program by very beneficial." *See* Ex. 4.

67. Following the Meeting, Trafford posted on its website[1] that

> Despite the owner's insistence that he's trying his best to schedule and fund repairs, Trafford Council has condemned the historic "bank building" that opened a century ago as a Westinghouse-affiliated inn.
>
> The landmark at 501 Cavitt Ave. was one of four buildings that council on May 5 declared as abandoned, dilapidated or a nuisance. The others are a building at 315-317 Fifth St. and houses at 90 First St. and 635 6th St.
>
> Though council has no money set aside to demolish any of the buildings, it joined the Westmoreland County Land Bank last month to receive help with blighted properties.
>
> "These buildings need to go if we're going to continue to move Trafford forward," Mayor Rey Peduzzi said.
>
> Of the four, the bank building has the most significant backstory in the borough. After making its debut as the Trafford Inn in 1904, multiple banks were housed in the building from the 1920s until the 1990s.

68. In September 2015, Shoub contacted Lanalex's owner on his cell phone to request that Lanalex attend a meeting with Shoub and a representative of the Land Bank.

---

[1] http://www.traffordborough.com/news/4-trafford-buildings-condemned/

69.     At the meeting, Shoub expressed his concerns with the Property and the Land Bank's representative told Lanalex that if it ever felt "overwhelmed," the Land Bank would be happy to accept the donation of the Building.

70.     Notably, Shoub did not arrange the meeting with the Land Bank to offer to assist Lanalex with its efforts to rehabilitate the Building.

71.     Rather, Shoub arranged the meeting to put pressure on Lanalex to surrender its ownership of the Property.

72.     Indeed, part of Trafford's Scheme was to overwhelm Lanalex.

73.     Following the meeting with the Land Bank, Lanalex addressed all of Shoub's concerns with the Property.

### D. Lanalex Complies with Trafford's Demands Yet Trafford Refuses to Cooperate as the Building Deteriorates

74.     As Trafford was not successful in its attempt to persuade Lanalex to voluntarily surrender the Property, Trafford proceeded to pressure and attempt to overwhelm Lanalex by issuing violation notices and citations to Lanalex while simultaneously obstructing Lanalex's efforts to develop the Property and address the issues raised in the violation notices and citations.

75.     On April 19, 2016, McVicker, in his capacity as Code Enforcement Officer for Trafford issued a Notice of Violation to Yeager ("**April 19, 2016 Notice**"). A true and correct copy of the April 19, 2016 Notice is attached as **Exhibit 5**.

76.     The April 19, 2016 Notice of Violation cited the following:

    a. Repairs to the sidewalk;

    b. Fill in areas where excavating efforts have taken place in the rear of the Building;

    c. No permit for commercial repairs or replacement of sanitary lines.

- 12 -

77.     In the April 19, 2016 Notice, McVicker demanded that Lanalex provide a written plan of action for the actions necessary to remove the April 19, 2016 Notice.

78.     On May 19, 2016, Lanalex, through its undersigned counsel, submitted Lanalex's proposed plan for addressing the issues raised in the April 19, 2016 Notice. A true and correct copy of the May 19, 2016 Plan is attached as **Exhibit 6**.

79.     Trafford failed and refused to respond to the May 19, 2016 Plan.

80.     On September 8, 2016, Lanalex, through its undersigned counsel, submitted photographic evidence that Lanalex filled in the areas of excavation in contravention to Trafford's assertions. A true and correct copy of the September 8, 2016 letter is attached as **Exhibit 7**.

81.     In the September 8, 2016 communication, Lanalex, through its undersigned counsel, again requested the return of the Bond and advised McVicker that "[t]he Borough's failure to return the [B]ond is impeding [Lanalex]'s financial ability to complete the repairs to the sidewalk." *See* Ex. 5.

82.     On September 30, 2016, instead of responding to the May 19, 2016 Plan, Trafford sent Lanalex a violation notice ("**September 30, 2016 Notice**") for high grass and weeds on the Property. A true and correct copy of the September 30, 2016 Notice is attached as **Exhibit 8**.

83.     Lanalex addressed the issues raised in the September 30, 2016 Notice.

84.     Over the next several months, Lanalex continued to demand the return of its Bond so it could complete other work on the Property.

### E.    Trafford Becomes Determined to Demolish the Building

85.     Because Lanalex resolved the issues raised in the September 30, 2016 Notice rather than surrender, Trafford decided to become more aggressive in carrying out Trafford's Scheme.

86.     On August 2, 2017, Trafford's current code enforcement officer Joseph Probo ("**Probo**") sent an email to Trafford, its Solicitor, Stack, and various Council Members indicating

that he "noticed a couple red brick pieces on the ground that match the building" and that "[i]t appears that the very top of the structure is losing bricks and shows bowing that it might fall." A true and correct copy of Probo's August 2, 2017 email is attached as **Exhibit 9**.

87.     Trafford's Solicitor replied that "We were faced with this same condition but much worse with the Trafford motor company building. Finally got it torn down with [W]estmoreland [C]ounty grant funds. Let's see what [CEA] recommends." *See* Ex. 9.

88.     Hockenberry replied "hopefully now that we have [J]oe, CEA and Ashley working together, we can get things done. [I] think we have to get as aggressive as possible and hit him in his wallet. [T]hat is how we got landlords to clean up their properties in Pitcairn. [L]andlords hate spending money." *See* Ex. 9.

89.     On August 8, 2017, McVicker issued a Notice of Violation Cause for Emergency Action ("**August 8, 2017 Notice**") to Lanalex. A true and correct copy of the August 8, 2017 Notice is attached as **Exhibit 10**.

90.     The August 8, 2017 Notice indicated that the integrity of the Building was declining and required immediate attention. *See* Ex. 10.

91.     In the August 8, 2017 Notice, McVicker indicated that "[d]ue to the general unsafe conditions of the brick edges, sidewalls and roof concept of this structure being compromised by infiltration and neglect" McVicker required "a report sealed by a Pennsylvania Architect or Engineer . . . outlining the integrity of the structure in its entirety." *See* Ex. 10.

92.     On November 16, 2017, an engineer retained by Lanalex issued a report regarding the structural integrity of the Building.

93.     On November 20, 2017, Trafford, through its Solicitor, sent Lanalex's undersigned counsel a letter indicating that Trafford was providing Lanalex with "one last opportunity to submit

a plan documenting to rectify the code violation and dangerous condition at the [P]roperty, and a concise timeline for completion of same." A true and correct copy of the November 20, 2017 letter is attached as **Exhibit 11**.

### F. Trafford Refuses to Approve Lanalex's Plan to Address Trafford's Concerns with the Property and Issues Notice of Condemnation

94.     In response to the Solicitor's November 20, 2017 letter, Lanalex's counsel advised Trafford's Solicitor that Trafford had not yet returned Lanalex's Bond and that Trafford's improper retention of the Bond was holding up funds needed to address Trafford's other concerns about the Building. A true and correct copy of the November 20, 2017 email is attached as **Exhibit 12**.

95.     On November 21, 2017, Trafford advised Lanalex for the first time that Trafford conditioned the release of the Bond on Lanalex filling the Street Opening created in 2016 to repair the Sewer with concrete. A true and correct copy of the November 21, 2017 email is attached as **Exhibit 13**.

96.     On December 11, 2017, Lanalex's counsel submitted Lanalex's proposed plan to address Trafford's concerns ("**Plan**") to Trafford's Solicitor and Stack by email. A true and correct copy of the Plan is attached as **Exhibit 14**.

97.     In the December 11, 2017 email, Lanalex reiterated its demand that Trafford release Lanalex's Bond and reminded Trafford and Stack that Trafford's improper withholding of the Bond was hindering Lanalex's ability to perform more work on the Property. *See* Ex. 14.

98.     Trafford never objected to Lanalex's Plan.

99.     On January 4, 2018, Lanalex confirmed Trafford's lack of objection and advised Trafford that it was proceeding with its Plan on the assumption that it was acceptable as soon as weather conditions and contractor availability permitted. A true and correct copy of the January 4, 2018 letter is attached as **Exhibit 15**.

100.    On January 20, 2018, five weeks after Lanalex submitted its Plan, Trafford advised Lanalex that Trafford refused to accept the Plan and that "there is no understanding or agreement between [Lanalex] and Trafford Borough." A true and correct copy of the January 20, 2018 email is attached as **Exhibit 16**.

101.    Trafford provided no explanation or reasoning. *See* Ex. 16.

102.    On January 26, 2018, Lanalex's counsel requested a meeting with Trafford and its Solicitor to discuss Trafford's concerns. A true and correct copy of the January 26, 2018 letter is attached as **Exhibit 17**.

103.    Trafford failed to respond to the request.

104.    On January 31, 2018, Trafford, through its Code Enforcement Officer McVicker, issued a Notice of Condemnation ("**Notice of Condemnation**"). A true and correct copy of the Notice of Condemnation is attached as **Exhibit 18**.

105.    Trafford, McVicker, and Trafford's Solicitor refused to respond to Lanalex's repeated requests for information necessary to address Trafford's concerns.

### G. Lanalex Moves for Injunction and Trafford Admits There Are No Defects in Lanalex's Plan

106.    Based on Trafford's failure to acknowledge or respond to Lanalex's inquiries, on March 26, 2018, Lanalex filed a Motion for Injunctive Relief with this Honorable Court wherein Lanalex requested that this Honorable Court direct Trafford to refrain from demolishing the Building. *See* Pl.'s Mot. For Inj. Relief, Mar. 26, 2018.

107.    On May 21, 2018, this Honorable Court held an Evidentiary Hearing on Lanalex's Motion for Injunctive Relief. A true and correct copy of the May 21, 2018 Hearing Transcript is attached as **Exhibit 19**.

108.    At the Hearing, McVicker was the only witness to testify. *See generally* Ex. 19.

109. At the Hearing, McVicker identified certain issues with the Property that he contended gave rise to the Notice of Condemnation he issued.[2] *See* Ex. 19 at 11.

110. At the Hearing, McVicker indicated that in order to issue the permit Lanalex required to address Trafford's concerns ("**Permit**"), Trafford required (1) sealed drawings from an engineer and (2) an application for the Permit. See Ex. 19 at 64.

111. On cross-examination, McVicker admitted there was no basis to reject Lanalex's Plan. *See* Ex. 19 at 36.

112. Lanalex's undersigned counsel requested a continuance of the Hearing to allow Lanalex time to re-submit its drawings and application for the Permit and for Trafford to issue the Permit. *See* Ex. 19 at 63-66.

113. This Honorable Court granted that request and continued the Hearing to June 25, 2018. See Ex. 19 at 65-66; May 21, 2018 Order.

114. Notably, this Honorable Court directed Trafford "to give every deference it can to allow for the construction to proceed in an effort to resolve the matter." See Ex. 19 at 66.

115. Lanalex recalled its repair contractor.

116. On June 20, 2018, Lanalex, through its counsel, submitted a proposed application ("**Proposed Application**") and drawings ("**Drawings**") prepared and sealed by Michael P. Romesburg, PE ("**Romesburg**") to McVicker and Trafford's Solicitor. A true and correct copy of the June 20, 2018 email including the Proposed Application and Drawings is attached as **Exhibit 20**.

117. On June 21, 2018, Lanalex requested that this Honorable Court continue the Hearing indefinitely to allow McVicker and/or Trafford sufficient time to review Lanalex's

---

[2] Notably, the issues McVicker identified at the May 21, 2018 Hearing were not identified anywhere in the January 31, 2018 Notice of Condemnation.

Proposed Application and Drawings, which this Honorable Court granted. *See* Mot. to Continue Hr'g and Order, June 21, 2018.

118.   On June 25, 2018, McVicker provided his overly critical comments on the Drawings to Lanalex's counsel, including:

        a.   McVicker indicated that he was not approving the drawings because "there are many unknowns."

        b.   McVicker indicated that he was not approving the drawings based on the engineer's use of frequently used engineering terms for such drawings such as "verify" and "design by others."

        c.   McVicker indicated that he was not approving the drawings because he required "more detail on the [engineer's proprietary specification] HIT-HY 70."

A true and correct copy of McVicker's June 25, 2018 email is attached as **Exhibit 21**.

119.   On July 22, 2018, Lanalex, through its undersigned counsel, provided its response to McVicker's comments.  A true and correct copy of the July 22, 2018 email is attached as **Exhibit 22**.

120.   On August 18, 2018, having not received any further response from McVicker, Lanalex, through its undersigned counsel, followed up with McVicker.  A true and correct copy of the August 18, 2018 email is attached as **Exhibit 23**.

121.   On August 21, 2018, McVicker replied "confirming the information and follow up information (via email) as being sufficient for permitting" and directed Lanalex to submit its complete application.  A true and correct copy of McVicker's August 21, 2018 email is attached as **Exhibit 24**.

122.   Due to McVicker's delay in confirming that Trafford would accept the Drawings, Lanalex had to obtain **new** proposals for pricing for the work.

123.    At that time, contractors were limited due to a Western Pennsylvania construction boom.

### H. Defendants Refuse to Issue the Necessary Permit to Lanalex, Yet Continue to Cite Lanalex for Not Completing the Repairs to the Building

124.    On November 9, 2018, after obtaining current pricing proposals, Lanalex, through its counsel, in addition to the Drawings it previously provided, submitted another complete application for the Permit ("**Application**"). A true and correct copy of the November 9, 2018 email including the Application is attached as **Exhibit 25**.

125.    Upon receipt of Lanalex's November 9, 2018 Application, McVicker told Trafford's Solicitor and Stack "Let's discuss this first, I think we may be able to withhold this under Act 90." A true and correct copy of McVicker's November 9, 2018 email is attached as **Exhibit 26**.

126.    Trafford, Stack, and McVicker refused to respond to Lanalex's Application with approval, questions, or a request for any additional information.

127.    Rather than process Lanalex's Application, Trafford proceeded to engage in unnecessary motions practice before this Honorable Court in an effort to apply more pressure to Lanalex as part of Trafford's Scheme.

128.    Indeed, neither Trafford, its Solicitor, Stack, nor McVicker contacted Lanalex or its counsel between the time Lanalex submitted its Application and the time Trafford Borough submitted its Motion to Resume Hearing to this Honorable Court on March 4, 2019. A true and correct copy of the Motion to Resume Hearing is attached as **Exhibit 27**.

129.    On March 8, 2019, Trafford, through its Solicitor, presented the Motion to this Honorable Court.

130.    In its Motion to Resume Hearing, Trafford:

a. falsely represented that Lanalex had not yet submitted sealed drawings to Trafford and/or McVicker, when Lanalex had done so and McVicker had confirmed that the drawings submitted by Lanalex were "sufficient for permitting";

b. represented that the Building had "fallen into deeper disrepair"; and,

c. incorrectly accused Lanalex of damaging Trafford's sanitary sewer line when repairing the Sewer on the Property.

*See* Ex. 27.

131. At the time of the presentation of the Motion, this Honorable Court directed the parties to submit additional written submissions to the Court.

132. On April 4, 2019, Trafford's Solicitor submitted a letter to this Honorable Court ("**April 4, 2019 Letter**"), and Trafford attached to the April 4, 2019 Letter a letter dated October 22, 2018 written and signed by McVicker and incorrectly addressed to "Lanalex Cloyd Incorporated, C/O Mr. Frank Yeager, 501-503 Cavitt Avenue, Trafford, PA 15085" ("**October 22, 2018 Letter**"). A true and correct copy of the April 4, 2019 Letter including the copy of the October 22, 2018 Letter is attached as **Exhibit 28**.

133. The October 22, 2018 letter indicates that Trafford is denying the Application pursuant to "Act 90".[3] *See* Ex. 28.

134. The October 22, 2018 letter states:

Therefore, it be, I am denying the application for demolition until such time as the preceding legal matters have been resolved before the Borough of Trafford. This is specific for the address for 501 Cavitt Avenue in Trafford. Additionally, I have not been informed by you or your legal counsel of the pending matters resolution.

---

[3] "Act 90" refers to the Neighborhood Blight Reclamation and Revitalization Act, 53 Pa. C.S. §§ 6101-6145, which permits municipalities to deny municipal permits to property owners on the basis of the property owner's "failure to abate a serious violation of State law or a code on real property that the applicant owns in [the] Commonwealth." 53 Pa. C.S. § 6131. Notably, the Act provides that "[a] municipality or board shall not deny a municipal permit to an applicant if the municipal permit is necessary to correct a violation of State law or a code." § 6131(a)(2).

*See* Ex. 28.

135.    In its April 4, 2019 letter, Trafford represented that McVicker sent the October 22, 2018 Letter to Lanalex. *See* Ex. 28.

136.    Trafford never provided the October 22, 2018 letter to Lanalex's counsel.

137.    Importantly, neither Lanalex nor its undersigned counsel ever received the October 22, 2018 Letter.

138.    Further, Lanalex did not submit the Application until November 9, 2018, so Trafford did not receive and could not have denied the Application on October 22, 2018.

139.    Interestingly, on November 9, 2018, eighteen days after McVicker purportedly sent the October 22, 2018 Letter to Lanalex allegedly denying the Application pursuant to Act 90, upon receipt of the Application by email from undersigned counsel's office, McVicker told Stack and Trafford's Solicitor that "Let's **discuss this *first*,** I think we ***may be able to* withhold this under Act 90.**" (emphasis added).[4] *See* Ex. 26.

140.    McVicker's statement, immediately upon receipt of the Application, of his intent to deny the Application, as well as McVicker's denial of the Application purportedly pursuant to Act 90, is contrary to this Honorable Court's instruction to "give every deference [Trafford] can to allow for the construction to proceed in an effort to resolve the matter" and clearly illustrates McVicker and Trafford's bad faith in dealing with Lanalex.

141.    Not only did Trafford refuse to approve Lanalex's Application, Trafford proceeded to apply more pressure to Lanalex by issuing citations and imposing fines on Lanalex as part of Trafford's Scheme.

---

[4] McVicker's statement upon receipt of the Application on November 9, 2018 is inconsistent with Trafford's representation that McVicker sent the October 22, 2018 letter affirmatively denying the Application eighteen days earlier on October 22, 2018.

142.     On April 25, 2019, Trafford sent Lanalex an Ordinance Violation Notice ("**April 25, 2019 Notice**"), which quoted sections of Trafford's Code, but did not include any explanation or detail as to what issues Trafford identified with Lanalex's Property. A true and correct copy of the April 25, 2019 Notice is attached as **Exhibit 29**.

143.     Lanalex received the April 25, 2019 Notice on April 29, 2019.

144.     On May 8, 2019, Lanalex, through its undersigned counsel, timely appealed the April 25, 2019 Notice. A true and correct copy of the May 8, 2019 appeal is attached as **Exhibit 30**.

145.     Nevertheless, on May 10, 2019, Trafford issued three (3) Non-Traffic Citations to Lanalex for the following alleged violations:

> a.  "Property owner has not taken steps to remedy or repair dangerous conditions including bricks falling from the exterior wall facing onto the sidewalk 3+ stories below. Also glass from broken windows falling onto sidewalk."
>
> b.  "Property owner will not clean up property including bricks that have fallen from building onto sidewalk & mattress in grass. Also broken glass from smashed windows remains on sidewalk."
>
> c.  "Property owner will not cut grass / remove weeds."

True and correct copies of the May 10, 2019 Non-Traffic Citations are attached, collectively, as **Exhibit 31**.

146.     Notably, Lanalex's Plan included that detail, but Trafford refused to act on the Plan despite this Honorable Court's Order.

147.     On May 21, 2019, this Honorable Court held a Status Conference in which the parties participated.

148.     This Honorable Court directed Trafford to issue the Permit to Lanalex immediately.

149.     Specifically, this Honorable Court's May 31, 2019 Order directed:

a. "Defendant Trafford Borough shall immediately issue the requested demolition permit to Plaintiff Lanalex Cloyd, Inc.";

b. "Plaintiff Lanalex Cloyd, Inc. shall begin work, in accordance with the permit, with the involvement of on-site contractors, within thirty (30) days of the issuance of the demolition permit";

c. "Plaintiff Lanalex Cloyd, Inc. shall strictly comply with this time requirement or face possible sanctions";

d. "Defendant Trafford Borough shall issue a building permit to Plaintiff Lanalex Cloyd, Inc. thereafter, provided that the Plaintiff's application is in compliance with all Building Code regulations and requirements";

e. "Defendant Trafford Borough shall withdraw without prejudice any and all pending charges against Plaintiff Lanalex Cloyd, Inc. which have been filed with Magisterial District Justice Helen M. Kistler";

f. "Plaintiff Lanalex Cloyd, Inc. shall take immediate measures to secure the entrance and building where persons may enter until demolition work begins in accordance with this Order."

*See* May 31, 2019 Order.

150.    On May 31, 2019, Trafford withdrew the May 10, 2019 Citations.

151.    On June 6, 2019, Trafford informed Lanalex's undersigned counsel that the Permit had been issued and could be picked up. A true and correct copy of counsel's June 6, 2019 email exchange is attached as **Exhibit 32**.

152.    On June 6, 2019, Lanalex went to the Borough Building and learned that Trafford had not issued the Permit. *See* Ex. 32.

153.    When counsel informed Trafford that the Permit was not available, Trafford's Solicitor then informed counsel that he had to obtain the Permit from McVicker – meaning the Permit was never available to be picked up at the Borough Building. *See* Ex. 32.

154. On June 6, 2019, McVicker and CEA issued a Commercial Demolition Permit ("**Permit**") to Lanalex for "Demolition of Parapet Only." A true and correct copy of the Permit is attached as **Exhibit 33**.

155. On June 7, 2019, following a conversation with Lanalex's counsel, Trafford, through its Solicitor, sent a letter to Lanalex confirming that the Permit that McVicker and CEA issued on June 6, 2019 was erroneous and not limited to demolition of the parapet only, but rather included all of the following work set forth in Lanalex's Application:

> a. Removal of parapet wall, chimneys, and collapsed portion of building interior;
>
> b. Replacement of roof membrane, damaged roof elements, and Fifth Street sidewalk;
>
> c. Bracing of exterior wall in collapse portion of the building.

A true and correct copy of the June 7, 2019 letter is attached as **Exhibit 34**.

### I. Lanalex Finally Begins Work and Discovers That Defendants' Delays Have Caused the Building to Deteriorate Beyond Repair

156. By June 19, 2019, less than two weeks after Trafford issued the Permit and within the 30-day period required by the May 31, 2019 Order, Lanalex commenced select demolition work pursuant to the Permit.

157. Lanalex also secured the entrances to the Building in accordance with the May 31, 2019 Order.

158. Due to the substantial delay in the issuance of the Permit (despite the Court Order directing its issuance), Lanalex learned that the structure sustained significant additional damage that remained unknown until Lanalex's contractor ("**Contractor**") initiated work.

159. Lanalex's Contractor's demolition work continued to progress but was delayed by weather and an emergency impacting the Contractor in North Carolina.

160.    Unbeknownst to Lanalex, the Contractor left the project around Labor Day to attend to property damage sustained in North Carolina from a major hurricane.

161.    During the Contractor's absence, the Building remained unprotected from the elements and sustained damage to the structural integrity of the roof structure and walls.

162.    On September 6, 2019, Trafford's Solicitor contacted Lanalex's undersigned counsel (1) to complain that "no work" had been performed on the Building, and (2) to complain that the Building's middle chimney was about to fall on the street. Both of the statements were false. A true and correct copy of counsel's September 9, 2019 email exchange is attached as **Exhibit 35**.

163.    Lanalex, through its undersigned counsel, replied that the demolition was proceeding along pursuant to the Permit and that the chimney(s) were part of Lanalex's demolition plan and that there was no danger of the chimney(s) falling to the street side because the Contractor intended for it to fall to the interior. *See* Ex. 35.

164.    Despite receiving Lanalex's assurance that the demolition work was proceeding along, Trafford proceeded to engage in more unnecessary motions practice before this Honorable Court in an effort to put more pressure on Lanalex as part of Trafford's Scheme.

165.    On September 16, 2019, Trafford provided Lanalex with notice of Trafford's intent to present a Motion for Expedited Status Conference to this Honorable Court. A true and correct copy of counsel's September 16, 2019 email including the Motion for Expedited Status Conference is attached as **Exhibit 36**.

166.    In its Motion for Expedited Status Conference Trafford alleged that the condition of the Building was continuing to deteriorate, alleged that "the demolition & rehabilitation work has dragged on with no foreseeable conclusion and the residents of Trafford are at risk of further

- 25 -

collapse of the structure," and requested that this Honorable Court schedule an expedited status conference. *See* Ex. 36.

167.    On September 17, 2019, in order to understand Trafford's position as set forth in its Motion for Expedited Status Conference, Lanalex, through its undersigned counsel, requested that Trafford provide all documentation and a fuller explanation of Trafford's concerns. A true and correct copy of the September 17, 2019 email is attached as **Exhibit 37**.

168.    Trafford ignored Lanalex's request.

169.    Rather than (a) meet with Lanalex's counsel in the first instance, or (b) provide counsel the requested information needed for a discussion of the alleged concerns, Trafford informed a high-profile reporter at the Tribune-Review of the presentation of the Motion, yet another example of Trafford's bad faith in dealing with Lanalex.

170.    On October 8, 2019, the parties participated in a Status Conference before this Honorable Court.

171.    At the time of the October 8, 2019 Status Conference, this Honorable Court entered an Order directing that:

       a.  "All parties . . . along with any other available necessary individual, shall appear at 2:00 p.m. on October 8, 2019 at the offices of James W. Creenan, Esquire for an emergency planning meeting regarding the stability of the structure located at 501 Cavitt Avenue, Trafford, Pennsylvania."

       b.  "Plaintiff Lanalex Cloyd, Inc. shall have a structural engineer on site at 501 Cavitt Avenue by 5:00 p.m. on Wednesday, October 9, 2019 to assess the stability of the structure."

       c.  "Plaintiff Lanalex Cloyd, Inc. shall obtain a determination by said structural engineer of the necessary immediate steps to provide for the safety and stability of the structure and/or its possible demolition by 5:00 p.m. on Thursday, October 10, 2019."

*See* Oct. 8, 2019 Order.

172. In accordance with this Honorable Court's October 8, 2019 Order, the parties met at undersigned counsel's office on October 8, 2019 at 2:00 p.m.

173. During the October 8, 2019 meeting, Lanalex and its undersigned counsel asked Trafford's representatives whether Trafford could provide Lanalex with any assistance toward efforts to stabilize or demolish the Building.

174. Trafford's sole and complete answer was that it would supply names of demolition contractors.

175. Based on the urgent nature of the potentially dangerous conditions, Lanalex took prompt action to assess the requirements for the stabilization of the Building.

176. Lanalex's engineers determined that the cost of stabilization to prevent possible collapse could exceed six figures while they anticipated the estimate demolition to cost approximately $30-50,000.00.

177. These costs increased due to Trafford's delays.

178. On October 10, 2019, in accordance with this Honorable Court's October 8, 2019 Order, Lanalex submitted to this Honorable Court and counsel a report prepared by a structural engineer. A true and correct copy of Lanalex's October 10, 2019 report is attached as **Exhibit 38**.

179. On October 10, 2019, the Borough's counsel submitted a report prepared by a structural engineer that the Borough retained and presented to this Honorable Court an Emergency Motion for Special Relief wherein the Borough requested that this Honorable Court "put a time frame for completion of the demolition in place . . . ." A true and correct copy of counsel's October 10, 2019 letter including the report and Emergency Motion are attached as **Exhibit 39**.

180.    On October 10, 2019, upon consideration of the Borough's Emergency Motion for Special Relief, this Honorable Court entered an Order directing that:

    a.   "Plaintiff shall contract with a demolition company to secure the safe demolition of the structure located at 501 Cavitt Avenue and shall submit application to Trafford for an emergency demolition permit along with proper proofs of insurance no later tha[n] 5:00 p.m. Friday, October 11, 2019."

    b.   "Trafford shall issue the demolition permit within 24 hours of application."

    c.   "Demolition shall thereafter be complete with the structure on the ground no later than 5:00 p.m. Friday, October 18, 2019."

*See* Oct. 10, 2019 Order.

181.    On October 11, 2019, upon receipt of the Emergency Motion, Lanalex's undersigned counsel advised the Borough's counsel that Lanalex was actively searching for a demolition contractor and requested that the Borough allow Lanalex some more time to find a contractor. A true and correct copy of counsel's October 11, 2019 email exchange is attached as **Exhibit 40**.

182.    Lanalex's actual demolition estimates proved to be substantially greater than estimated.

183.    The sole estimate that Lanalex was able to obtain from a demolition contractor was $138,500.00 - $148,500.00.

184.    Therefore, despite numerous efforts to secure a contractor, Lanalex was unable to secure a demolition contractor to perform the demolition as set forth in the October 10, 2019 Order.

185.    On October 11, 2019, Lanalex submitted a Motion for Reconsideration of the October 10, 2019 Order requesting that this Honorable Court reconsider the deadlines imposed in the October 10, 2019 Order and provide a reasonable amount of time for Lanalex to find and retain a demolition contactor, submit the demolition permit, and complete the demolition.

186.    On October 11, 2019, this Honorable Court entered an Order denying Lanalex's Motion for Reconsideration. *See* Oct.11, 2019 Order.

187.    On October 12, 2019, Lanalex sent a letter to the Borough wherein Lanalex notified the Borough of its liability and authorized the Borough to take whatever action it deems necessary, without prejudice to Lanalex's rights against the Borough, for the Borough to stabilize or demolish the structure at its own cost. A true and correct copy of the October 12, 2019 letter is attached as **Exhibit 41**.

188.    On October 15, 2019, Lanalex filed and served upon this Honorable Court a Notice setting forth Lanalex's efforts to comply with the October 8, 2019 and October 10, 2019 Orders. *See* Notice, Oct. 15, 2019.

189.    On October 15, 2019, Trafford's Solicitor submitted a Response to Lanalex's Motion for Reconsideration and Counter-Motion for Contempt. *See* Resp. to Mot. for Recons. and Counter-Mot. for Contempt, Oct. 15, 2019.

190.    On October 15, 2019, this Honorable Court entered an Order of Court directing that:

> a.  "Should Lanalex Cloyd, Inc. fail to confirm demolition by 5:00 p.m. on October 16, 2019, then Trafford Borough shall immediately direct the demolition of the building by 5:00 p.m. October 18, 2019.";
>
> b.  "In the alternative, Lanalex Cloyd, Inc. and/or the Borough of Trafford shall at a minimum bring down the external wall siding the Route 130 corridor to the interior of the remaining building until expedited complete demolition can occur at the nearest possible time in accordance with the Court's prior orders and directives.";
>
> c.  "The Borough of Trafford shall be able to seek relief in the case at bar to amend their pleadings to recover any expenditures related to the herein ordered demolition should Lanalex Cloyd fail to perfect the Court ordered demolition unilaterally.';

       d. "Lanalex Cloyd, Inc. shall not be prejudiced in any fashion as to recovery through ongoing litigation in the case at bar and/or any other case or cause of action against Trafford Borough."

*See* Oct. 15, 2019 Order.

191.    On October 16, 2019, Lanalex advised Trafford that Lanalex was unable to secure a demolition contractor and thus Trafford should proceed with the demolition. A true and correct copy of the October 16, 2019 letter is attached as **Exhibit 42**.

### J.  Trafford Demolishes the Building

192.    Upon information and belief, Trafford secured funding from a Westmoreland County agency for the demolition of the Building.

193.    Upon information and belief, Trafford arranged for the demolition of the Building.

194.    Upon information and belief, Trafford demolished the Building in November 2019.

195.    Defendants conduct of delaying Lanalex's development of the Building exacerbated the damage to the Building's foundation and utility services.

196.    Had Trafford simply issued the required permit to Lanalex without delay as Trafford was obligated to do by law and by this Honorable Court's Order, the Building would have been secured without significant damage or need for emergency stabilization or total demolition.

197.    Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA engaged in a pattern of conduct that demonstrated an intent to inhibit Lanalex's ability to use and develop its Property.

198.    Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA acted with the intent to harass, delay, and harm Lanalex.

199.    Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA refused to deal with Lanalex in good faith, but rather repeatedly acted in bad faith in dealing with Lanalex.

200.   Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA's intentional actions to delay Lanalex's development of the Property caused the Property to deteriorate to the point of no longer being economically feasible to repair the Property.

201.   As a result of Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA's conduct, Lanalex has sustained the following damages:

        a.   loss of use of the funds committed to the Sewer Bond;

        b.   loss of use of the Building;

        c.   engineering costs;

        d.   legal fees; and,

        e.   loss of the Building.

### K.   Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA Do Not Enjoy Immunity Under the Political Subdivision Tort Claims Act

202.   Lanalex's claims against Trafford arise out of Trafford's interference with Lanalex's rights to its real property.

203.   Lanalex's claims against Trafford arise out of Trafford's exercise of its authority over utilities, and specifically sanitary sewers.

204.   As Lanalex's claims against Trafford involve real property and utilities, Trafford does not enjoy immunity under the Political Subdivision Tort Claims Act. 42 Pa. C.S. §§ 8541-8542.

205.   Pursuant to the Act,

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 Pa.C.S. § 8550.

206.   "Willful misconduct, for the purposes of tort law, has been defined by our Supreme Court to mean conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied. <u>King v. Breach</u>, 115 Pa. Commw. 355, 366-67, 540 A.2d 976, 981 (1988) (citing <u>Evans v. Philadelphia Transportation Company</u>, 418 Pa. 567, 212 A.2d 440 (1965)). "In other words, the term 'willful misconduct' is synonymous with the term 'intentional tort.'" <u>Id.</u> (citing W. Prosser, Handbook of The Law of Torts, 31 (4th ed. 1971)).

207.   At all times material hereto, Sahar acted willfully, intentionally, and with malice.

208.   At all times material hereto, Sahar acted with the intent to interfere with Lanalex's use of its Property.

209.   At all times material hereto, Sahar acted with the intent to deprive Lanalex of its Property.

210.   At all times material hereto, Sahar acted with the intent to deprive Lanalex of its funds deposited as the Bond.

211.   At all times material hereto, Sahar acted with the intent to cause financial harm to Lanalex.

212.   At all times material hereto, Sahar acted with the intent to harass Lanalex.

213.   At all times material hereto, Stack acted willfully, intentionally, and with malice.

214.   At all times material hereto, Stack acted with the intent to interfere with Lanalex's use of its Property.

215.   At all times material hereto, Stack acted with the intent to deprive Lanalex of its Property.

216. At all times material hereto, Stack acted with the intent to deprive Lanalex of its funds deposited as the Bond.

217. At all times material hereto, Stack acted with the intent to cause financial harm to Lanalex.

218. At all times material hereto, Stack acted with the intent to harass Lanalex.

219. At all times material hereto, Hockenberry acted willfully, intentionally, and with malice.

220. At all times material hereto, Hockenberry acted with the intent to interfere with Lanalex's use of its Property.

221. At all times material hereto, Hockenberry acted with the intent to deprive Lanalex of its Property.

222. At all times material hereto, Hockenberry acted with the intent to deprive Lanalex of its funds deposited as the Bond.

223. At all times material hereto, Hockenberry acted with the intent to cause financial harm to Lanalex.

224. At all times material hereto, Hockenberry acted with the intent to harass Lanalex.

225. At all times material hereto, Shoub acted willfully, intentionally, and with malice.

226. At all times material hereto, Shoub acted with the intent to interfere with Lanalex's use of its Property.

227. At all times material hereto, Shoub acted with the intent to deprive Lanalex of its Property.

228. At all times material hereto, Shoub acted with the intent to deprive Lanalex of its funds deposited as the Bond.

229. At all times material hereto, Shoub acted with the intent to cause financial harm to Lanalex.

230. At all times material hereto, Shoub acted with the intent to harass Lanalex.

231. At all times material hereto, McVicker and CEA acted willfully, intentionally, and with malice.

232. At all times material hereto, McVicker and CEA acted with the intent to interfere with Lanalex's use of its Property.

233. At all times material hereto, McVicker and CEA acted with the intent to deprive Lanalex of its Property.

234. At all times material hereto, McVicker and CEA acted with the intent to deprive Lanalex of its funds deposited as the Bond.

235. At all times material hereto, McVicker and CEA acted with the intent to cause financial harm to Lanalex.

236. At all times material hereto, McVicker and CEA acted with the intent to harass Lanalex.

237. Because Sahar, Stack, McVicker, Hockenberry, Shoub, and CEA acted willfully, intentionally, and with malice, Sahar, Stack, McVicker, Hockenberry, Shoub, and CEA do not enjoy immunity under the Political Subdivision Tort Claims Act. 42 Pa. C.S. § 8550.

## COUNT I – VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO PROCEDURAL DUE PROCESS PURSUANT TO 42 U.S.C. § 1983

*Lanalex Cloyd, Inc.*

*v.*

*Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency*

238. Lanalex incorporates the preceding paragraphs as though set forth herein at length.

239. At all times material hereto, Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA acted under color of state law.

240. Lanalex has a right to own, use, and possess its Property.

241. Lanalex has a right to own, use, and possess its Bond.

242. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's improper retention of Lanalex's Bond has deprived Lanalex of its ownership, use, and possession of its funds.

243. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's actions deprived Lanalex of its ownership, use, and possession of the Property.

244. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's failure and refusal to issue Lanalex the permits it required to address Trafford's concerns deprived Lanalex of its rights to the Property.

245. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's actions and/or inactions deprived Lanalex of its use and enjoyment of its Property up to and including a total loss of the Building.

246. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA deprived Lanalex of its ownership, use, and possession of the Property without affording Lanalex adequate procedure.

247. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA refused to process Lanalex's permit applications.

248. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA refused to communicate with Lanalex regarding the status of its permit applications.

249. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA refused to provide Lanalex with notice of any issues that Trafford required to be resolved with Lanalex's permit applications in order to process the applications thereby depriving Lanalex of the opportunity to remedy such issues.

250. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA refused to communicate with Lanalex except for sending violation notices and notice of the Defendants' intent to proceed with motions practice before the Court.

251. Defendants' violation notices only contained quoted language from Trafford's Code and did not provide any explanation or details of the issues with the Property.

252. Additionally, Defendants' motions contained only incorrect allegations and conclusory statements.

253. Defendants failed and refused to respond to Lanalex's requests for information and detail to better understand Defendants' position set forth in the violation notices and motions.

254. Trafford, Stack, McVicker, and CEA arbitrarily made the decision to deny Lanalex's permit Application upon receipt of the Application without even reviewing or considering the Application.

255. Trafford, Sahar, Stack, Hockenberry, McVicker, Shoub, and CEA's failure to respond to or communicate with Lanalex deprived Lanalex of due process.

256. Trafford, Stack, McVicker, and CEA's failure to review or consider Lanalex's Application deprived Lanalex of due process.

257. Pursuant to 42 U.S.C. § 1988, Lanalex respectfully requests an award of its attorney's fees.

WHEREFORE, Plaintiff Lanalex Cloyd, Inc. respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Lanalex Cloyd, Inc. and against Defendants Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenbery, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency in an amount in excess of the jurisdictional limits of compulsory arbitration, plus costs, attorney fees, interest and such other relief as this Honorable Court deems fair and just.

### COUNT II – VIOLATION OF FOURTEENTH AMENDMENT RIGHT TO SUBSTANTIVE DUE PROCESS PURSUANT TO 42 U.S.C. § 1983

*Lanalex Cloyd, Inc.*

*v.*

*Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenbery, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency*

258. Lanalex incorporates the preceding paragraphs as though set forth herein at length.

259. At all times material hereto, Trafford, Sahar, Stack, Hockenbery, Shoub, McVicker, and CEA acted under color of state law.

260. Lanalex has a right to own, use, and possess its Bond.

261. Lanalex has a right to own, use, and possess its Property.

262. Trafford, Sahar, Stack, Hockenbery, Shoub, McVicker, and CEA's improper retention of Lanalex's Bond has deprived Lanalex of its ownership, use, and possession of its funds.

263. Trafford, Sahar, Stack, Hockenbery, Shoub, McVicker, and CEA's actions deprived Lanalex of its ownership, use, and possession of the Property.

264.     Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's refusal to issue Lanalex's the permits it required to address Trafford's concerns and to repair the condition of the Property deprived Lanalex of its rights to its Property.

265.     Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's actions and/or inactions ultimately caused the condition of the Building to deteriorate such that the Building needed to be demolished.

266.     Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's actions and/or inactions deprived Lanalex's Property of economic value.

267.     Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's actions were arbitrary and capricious.

268.     Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's actions constitute an egregious abuse of governmental power.

269.     Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's actions shock the conscience.

270.     Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's actions and/or inactions deprived Lanalex of due process.

271.     Pursuant to 42 U.S.C. § 1988, Lanalex respectfully requests an award of its attorney's fees.

WHEREFORE, Plaintiff Lanalex Cloyd, Inc. respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Lanalex Cloyd, Inc. and against Defendants Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency in an amount in excess of the jurisdictional limits of

compulsory arbitration, plus costs, attorney fees, interest and such other relief as this Honorable Court deems fair and just.

## COUNT III – VIOLATION OF FIFTH AMENDMENT TAKINGS CLAUSE PURSUANT TO 42 U.S.C. § 1983

*Lanalex Cloyd, Inc.*
*v.*
*Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency*

272. Lanalex incorporates the preceding paragraphs as though set forth herein at length.

273. At all times material hereto, Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA acted under color of state law.

274. At all times material hereto, Lanalex owned the Property.

275. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's actions deprived Lanalex of its ownership, use, and possession of the Property.

276. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's actions and/or inactions ultimately caused the condition of the Building to deteriorate such that the Building needed to be demolished.

277. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's actions and/or inactions deprived Lanalex's Property of economic value.

278. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's actions amounted to a taking of Lanalex's property.

279. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA did not provide Lanalex with just compensation for its property.

280. Pursuant to 42 U.S.C. § 1988, Lanalex respectfully requests an award of its attorney's fees.

WHEREFORE, Plaintiff Lanalex Cloyd, Inc. respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Lanalex Cloyd, Inc. and against Defendants Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency in an amount in excess of the jurisdictional limits of compulsory arbitration, plus costs, attorney fees, interest and such other relief as this Honorable Court deems fair and just.

## COUNT IV – FAILURE TO TRAIN AND SUPERVISE
## PURSUANT TO 42 U.S.C. § 1983

### *Lanalex Cloyd, Inc. v. Trafford Borough*

281.    Lanalex incorporates the preceding paragraphs as though set forth herein at length.

282.    Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA hold positions in which they have the power to take actions that have a substantial likelihood of affecting Trafford property owners' constitutional rights.

283.    Trafford failed to train Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA with respect to Trafford property owners' constitutional rights and, specifically, how to not interfere with such constitutional rights in the exercise of their authority and performance of their duties.

284.    Trafford failed to supervise Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA to ensure that Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA were not interfering with Trafford property owners' constitutional rights.

285.    In this matter alone, Trafford was repeatedly notified of Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's interference with Lanalex's constitutional rights.

286. Trafford failed to take any action to remedy Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's deprivation of Lanalex's rights.

287. In fact, Trafford ratified Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's conduct.

288. Pursuant to 42 U.S.C. § 1988, Lanalex respectfully requests an award of its attorney's fees.

WHEREFORE, Plaintiff Lanalex Cloyd, Inc. respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Lanalex Cloyd, Inc. and against Defendant Trafford Borough in an amount in excess of the jurisdictional limits of compulsory arbitration, plus costs, attorney fees, interest and such other relief as this Honorable Court deems fair and just.

## COUNT V – DEPRIVATION OF RIGHTS UNDER THE PENNSYLVANIA CONSTITUTION

### *Lanalex Cloyd, Inc.*
*v.*
### *Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency*

289. Lanalex incorporates the preceding paragraphs as though set forth herein at length.

290. The Pennsylvania Constitution confers the following rights:

   a. "All men are born equally free and independent, and have certain inherent and indefeasible rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing and protecting property and reputation, and of pursuing their own happiness," Pa. Const. Art. I, § 1;

   b. "All power is inherent in the people, and all free governments are founded on their authority and instituted for their peace, safety and happiness. For the advancement of these ends they have at all times an inalienable and indefeasible right to alter, reform or abolish their government in such manner as they may think proper," Pa. Const. Art. I, § 2;

c.  "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures, and no warrant to search any place or to seize any person or things shall issue without describing them as nearly as may be, nor without probable cause, supported by oath or affirmation subscribed to by the affiant." Pa. Const. Art. I, § 8;

d.  "All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct," Pa. Const. Art. I, § 11;

e.  "To guard against transgressions of the high powers which we have delegated, we declare that everything in this article is excepted out of the general powers of government and shall forever remain inviolate," Pa. Const. Art. I, § 25; and,

f.  "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right," Pa. Const. Art. I, § 26.

291.  The Pennsylvania Constitution also includes the right to receive just compensation for the taking of property by local governments, as follows:

> Municipal and other corporations invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements and compensation shall be paid or secured before the taking, injury or destruction.

Pa. Const. Art. X, § 4.

292.  Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's conduct deprived Lanalex of its rights conferred by the Pennsylvania Constitution.

293.  Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's conduct deprived Lanalex of its rights to its property including its Bond and Property.

294.  Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's conduct deprived Lanalex of its right to due process.

295. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's conduct deprived Lanalex of its right to be free from unreasonable searches and seizures.

296. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's conduct deprived Lanalex of its right to have Trafford act within the powers conferred upon it by the Pennsylvania Constitution.

297. Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's conduct deprived Lanalex of its right to not have Trafford discriminate against Lanalex in the exercise of its rights to its property.

298. As a result of Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's conduct, Lanalex was deprived of its ownership, use, and possession of its Bond and its Property.

299. Trafford's actions amounted to a taking of Lanalex's property.

300. Trafford deprived Lanalex of its right to just compensation for the taking of Lanalex's property.

WHEREFORE, Plaintiff Lanalex Cloyd, Inc. respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Lanalex Cloyd, Inc. and against Defendants Trafford Borough, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency in an amount in excess of the jurisdictional limits of compulsory arbitration, plus costs, attorney fees, interest and such other relief as this Honorable Court deems fair and just.

## COUNT VI – NEGLIGENCE

### *Lanalex Cloyd, Inc.*
*v.*
### *Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency*

301.    Lanalex incorporates the preceding paragraphs as though set forth herein at length.

302.    Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA owed a duty to Lanalex to conform to a certain standard of conduct, which, in this case was to refrain from engaging in conduct that deprived Lanalex of the ownership, use, and possession of its property.

303.    Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA breached the duty owed to Lanalex by engaging in conduct that deprived Lanalex of the ownership, use, and possession of its property.

304.    Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA's actions and/or inactions ultimately caused the condition of the Building to deteriorate such that the Building needed to be demolished.

305.    As a result of Trafford, Sahar, Stack, Shoub, Hockenberry, McVicker, and CEA's actions and/or inactions, Lanalex suffered the damages set forth above.

WHEREFORE, Plaintiff Lanalex Cloyd, Inc. respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Lanalex Cloyd, Inc. and against Defendants Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency in an amount in excess of the jurisdictional limits of compulsory arbitration, plus costs, attorney fees, interest and such other relief as this Honorable Court deems fair and just.

## COUNT VII – INTENTIONAL INTERFERENCE WITH PROPERTY RIGHTS

*Lanalex Cloyd, Inc.*
*v.*
*Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency*

306.    Lanalex incorporates the preceding paragraphs as though set forth herein at length.

307.    Sahar used his position as Borough Manager to intentionally interfere with Lanalex's rights to its Bond and its Property.

308.    Sahar used his position as Borough Manager to improperly withhold Lanalex's Bond.

309.    Sahar used his position as Borough Manager to withhold the permits that Lanalex required to make the repairs necessary to its Property to address Trafford's concerns.

310.    Sahar used his position as Borough Manager to simultaneously prosecute Lanalex for the very code violations that Lanalex was seeking the permits to remedy.

311.    Sahar's conduct interfered with Lanalex's use and enjoyment of its Property up to and including a total loss of the Building.

312.    Stack used her position as Borough Manager to intentionally interfere with Lanalex's rights to its Bond and its Property.

313.    Stack used her position as Borough Manager to improperly withhold Lanalex's Bond.

314.    Stack used her position as Borough Manager to withhold the permits that Lanalex required to make the repairs necessary to its Property to address Trafford's concerns.

315.    Stack used her position as Borough Manager to simultaneously prosecute Lanalex for the very code violations that Lanalex was seeking the permits to remedy.

- 45 -

316. Stack's conduct interfered with Lanalex's use and enjoyment of its Property up to and including a total loss of the Building.

317. Hockenberry used his position as Council Member to intentionally interfere with Lanalex's rights to its Bond and its Property.

318. Hockenberry used his position as Council Member to improperly withhold Lanalex's Bond.

319. Hockenberry used his position as Council Member to withhold the permits that Lanalex required to make the repairs necessary to its Property to address Trafford's concerns.

320. Hockenberry used his position as Council Member to simultaneously prosecute Lanalex for the very code violations that Lanalex was seeking the permits to remedy.

321. Hockenberry's conduct interfered with Lanalex's use and enjoyment of its Property up to and including a total loss of the Building.

322. Shoub used his position as Council Member to intentionally interfere with Lanalex's rights to its Bond and its Property.

323. Shoub used his position as Council Member to improperly withhold Lanalex's Bond.

324. Shoub used his position as Council Member to withhold the permits that Lanalex required to make the repairs necessary to its Property to address Trafford's concerns.

325. Shoub used his position as Council Member to simultaneously prosecute Lanalex for the very code violations that Lanalex was seeking the permits to remedy.

326. Shoub's conduct interfered with Lanalex's use and enjoyment of its Property up to and including a total loss of the Building.

327. McVicker and CEA used the position of Code Enforcement Officer to intentionally interfere with Lanalex's rights to its Bond and its Property.

328. McVicker and CEA used the position of Code Enforcement Officer to cause Trafford to improperly withhold Lanalex's Bond.

329. McVicker and CEA used the position of Code Enforcement Officer to withhold the permits that Lanalex required to make the repairs necessary to its Property to address Trafford's concerns.

330. McVicker and CEA used the position of Code Enforcement Officer to simultaneously prosecute Lanalex for the very code violations that Lanalex was seeking the permits to remedy.

331. McVicker and CEA's conduct interfered with Lanalex's use and enjoyment of its Property up to and including a total loss of the Building.

WHEREFORE, Plaintiff Lanalex Cloyd, Inc. respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Lanalex Cloyd, Inc. and against Defendants Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency in an amount in excess of the jurisdictional limits of compulsory arbitration, plus costs, attorney fees, interest and such other relief as this Honorable Court deems fair and just.

## COUNT VIII – CONVERSION

*Lanalex Cloyd, Inc.*
*v.*
*Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency*

332.   Lanalex incorporates the preceding paragraphs as though set forth herein at length.

333.   Trafford collected Lanalex's funds as the Bond.

334.   Trafford became obligated to release the Bond upon Lanalex's completion of the Sewer.

335.   Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA continually imposed previously unidentified conditions on Trafford's release of the Bond.

336.   Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA have failed and refused to release Lanalex's Bond.

337.   Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA's improper withholding of the Bond has interfered with Lanalex's right to its funds deposited as the Bond to the extent that Lanalex has been completely deprived of its funds.

338.   Lanalex did not consent to Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA's improper withholding of the Bond.

339.   Rather, Lanalex has repeatedly demanded the release of the Bond.

340.   Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA are not justified in improperly withholding the Bond as Lanalex completed the repairs to the Sewer and is entitled to the return of its Bond.

WHEREFORE, Plaintiff Lanalex Cloyd, Inc. respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Lanalex Cloyd, Inc. and against Defendants Trafford

Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency in an amount in excess of the jurisdictional limits of compulsory arbitration, plus costs, attorney fees, interest and such other relief as this Honorable Court deems fair and just.

## COUNT IX – ABUSE OF PROCESS

*Lanalex Cloyd, Inc.*

*v.*

*Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency*

341.     Lanalex incorporates the preceding paragraphs as though set forth herein at length.

342.     Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA issued Citations to Lanalex relating to code violations.

343.     Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA issued Citations to Lanalex knowing that Lanalex was attempting to secure a permit to address the code violations, which Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA deliberately and maliciously withheld.

344.     Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA issued Citations to Lanalex in bad faith for the improper purpose of harassing Lanalex and causing Lanalex to have to expend its already limited resources to fight on multiple fronts.

345.     Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker and/or CEA terminated the proceedings only because this Honorable Court directed that the Citations be withdrawn.

346.     Lanalex unnecessarily incurred legal fees associated with obtaining an order from this Honorable Court directing the withdrawal of the Citations.

347.    Lanalex unnecessarily incurred legal fees associated with defending the Citations until such time as Defendants withdrew the Citations.

WHEREFORE, Plaintiff Lanalex Cloyd, Inc. respectfully requests that this Honorable Court enter judgment in favor of Plaintiff Lanalex Cloyd, Inc. and against Defendants Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency in an amount in excess of the jurisdictional limits of compulsory arbitration, plus costs, attorney fees, interest and such other relief as this Honorable Court deems fair and just.

## COUNT X – DEMAND FOR COUNSEL FEES PURSUANT TO 42 PA.C.S. §§ 2503(7) AND (9)

*Lanalex Cloyd, Inc.*
*v.*
*Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency*

348.    Lanalex incorporates the preceding paragraphs as though set forth herein at length.

349.    At all times relevant hereto, Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA have failed and refused to deal with Lanalex in good faith.

350.    Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA consistently failed and refused to engage in meaningful discussion with Lanalex and its undersigned counsel regarding the basis of Trafford's concerns with the Property.

351.    Rather, Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA consistently utterly ignored Lanalex's requests to confer to resolve matters amicably and without the need for the Court's involvement and repeatedly chose to engage in unnecessary motions

practice before this Honorable Court, thereby causing Lanalex to unnecessarily incur a significant amount of counsel fees associated with responding to and opposing Defendants' motions.

352.  Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA deliberately withheld the permits that Lanalex required to make repairs to the Property and to address Trafford's concerns, thereby deliberately delaying Lanalex's progress and the resolution of the legal proceedings.

353.  Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA arbitrarily repeatedly rejected Lanalex's good faith, proposed plans to address Trafford's concerns either without providing an explanation or for wholly improper reasons such as Lanalex's engineer's use of commonly used engineering terms.

354.  Defendants defied this Honorable Court's direction to "give every deference [Defendants] can to allow for the construction to proceed in an effort to resolve the matter" by denying Lanalex's Application purportedly pursuant to Act 90.

355.  Defendants continually imposed additional, arbitrary conditions on the release of Lanalex 's Bond.

356.  Throughout the course of Lanalex's ownership of the Property and specifically throughout the course of this litigation, Trafford, Sahar, Stack, Hockenberry, Shoub, McVicker, and CEA have engaged in a pattern of conduct that is totally at odds with resolving the matter.

357.  Throughout the course of Lanalex's ownership of the Property and specifically throughout the course of this litigation, Trafford, Sahar, Stack, Shoub, Hockenberry, McVicker, and CEA have engaged in a pattern of arbitrary, dilatory, obdurate, and vexatious conduct which has caused Lanalex to unnecessarily incur a significant amount of counsel fees and costs.

358.    Pursuant to 42 Pa. C.S. § 2503(7) and (9), Lanalex is entitled to recover its reasonable counsel fees.

WHEREFORE, Plaintiff Lanalex Cloyd, Inc. respectfully requests that this Honorable Court:

      a. Find that Defendants Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency engaged in dilatory, obdurate, and vexatious conduct;

      b. Find that Defendants' conduct in dealing with Lanalex Cloyd, Inc. throughout the pendency of this litigation is arbitrary, vexatious, and in bad faith;

      c. Award Plaintiff Lanalex Cloyd, Inc. its counsel fees as part of the taxable costs of this matter;

      d. enter judgment in favor of Plaintiff Lanalex Cloyd, Inc. and against Defendants Trafford Borough, Richard Sahar, Ashley Stack, Dennis Hockenberry, Casey Shoub, Craig I. McVicker, individually and d/b/a CEA Code Enforcement Agency, and CEA Code Enforcement Associates, LLC d/b/a CEA Code Enforcement Agency in an amount in excess of the jurisdictional limits of compulsory arbitration, plus costs, attorney fees, interest and such other relief as this Honorable Court deems fair and just.

Respectfully Submitted,

CREENAN & BACZKOWSKI, PC

BY:

James W. Creenan, Esquire
Pa. Id. No. 79213

## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions of the *Public Access Policy of the Unified Judicial System of Pennsylvania: Case Records of the Appellate and Trial Courts* that require filing confidential information and documents differently than non-confidential information and documents.

Respectfully Submitted,

CREENAN & BACZKOWSKI, PC

BY: _____

  James W. Creenan, Esquire
  Pa. Id. No. 79213

Case 2:20-cv-03625-WSH Document 6-32 Filed 09/09/20 Page 55 of 223

## § 170-19. Issuance of permit; bond.

[Amended 7-11-2000 by Ord. No. 675]
Permits for the opening of any street shall only be granted upon compliance with the following express provisions:

A.  A written application shall be filed for each and every opening and signed by the person desiring such permit from the Code Enforcement Officer, which shall be granted upon depositing with the borough the amount as set forth from time to time by resolution of the Borough Council. The application shall set forth the purpose of the opening, extent, size, location of same, date or dates and time such opening is to be permitted, and the date and time such opening shall be refilled and temporarily resurfaced in the manner hereinafter provided and shall provide that the applicant shall faithfully comply with every provision of this article. All applications shall be accompanied by a plan or sketch showing the exact location, character and dimensions of the proposed opening for the installation of new work or the location of the alteration involving changes in the location of pipes, conduct, wires or structures incidental thereto.

B.  Prior to the issuing of such permit, every applicant shall pay the borough the amount hereinafter required and for the purposes provided. No permit shall be granted to any applicant unless the applicant has paid all moneys then due the borough for prior excavations made or for any loss, damages or expenses in any manner occasioned by or arising from the work done by the applicant under the provisions of this article.

C.  No permits shall be granted in any case until the applicant shall have executed and delivered to the borough a bond in the amount hereinafter fixed, with good surety shall be either an approved surety or trust company or an individual who shall be the owner of real estate in Westmoreland County and/or Allegheny County, reasonable worth over and above all debts and encumbrances at least double the amount of such bond. The amount of the bond shall be viz: $1,000 for each opening, $10,000 for an indefinite number of openings and bond shall be given up to the condition that the principal will indemnify and save harmless the borough from any loss, damage or expense whatsoever, in any manner occasioned by or arising from the opening of any street or work done in consequence thereof or the manner of doing such work; and the bond shall remain in force for a period of 24 months after the permanent resurfacing of each opening.

## § 170-20. Insurance.

An applicant shall file a properly executed certificate of insurance with the borough and verify that the applicant is insured against claims for personal injury as well as against claims for property damaged which may arise from or out of the performance of the excavation work, whether such performance be by the applicant or by anyone directly or indirectly employed by such. Such insurance shall include protection against a liability arising from completed operations, underground utility damage and collapse of any property. Liability insurance for bodily injury shall be in an amount not less than $300,000 for each accident and for property damages an amount not less than $100,000. Failure of an applicant to file a certificate if insurance shall be sufficient reason for denying said permit. The applicant shall save harmless the borough from any and all damages and liability by reason of personal injury or property damage arising from work done by the applicant under the provisions of this article.

## § 170-21. Fees.



EXHIBIT
1

**Joanne Parise**

| | |
|---|---|
| **From:** | Craig McVicker <c.mcvicker@cea-code.com> |
| **Sent:** | Thursday, May 19, 2016 11:24 AM |
| **To:** | Jim Creenan; boroughmanager@traffordborough.com |
| **Subject:** | RE: Yeager Property Violations |

Mr. Creenan

Trafford Borough will agree to release the bond provided the work being performed passes the sanitary final inspections. Additionally, we need the information and schedule of work efforts by an approved contractor. This should include the sidewalk repair as well.

Get Outlook for Android

On Thu, May 19, 2016 at 6:52 AM -0700, "Jim Creenan" <jcreenan@cbattorneys.com> wrote:

**Obviously, we need the Borough's agreement on the manner to proceed before we can commit the contractor to a schedule. Is the concept acceptable? If so, we can provide further details.**

**From:** Craig McVicker [mailto:c.mcvicker@cea-code.com]
**Sent:** Thursday, May 19, 2016 9:47 AM
**To:** Jim Creenan; boroughmanager@traffordborough.com
**Subject:** RE: Yeager Property Violations

Mr. Creenan,

On behalf of the Borough of Trafford, what is Mr. Yeager's timeline for completion, contractor name and information including proof of Workman's Compensation providing the services as well.
Craig I. McVicker, BCO

**From:** Jim Creenan [mailto:jcreenan@cbattorneys.com]
**Sent:** Thursday, May 19, 2016 7:54 AM
**To:** boroughmanager@traffordborough.com; Craig McVicker <c.mcvicker@cea-code.com>
**Subject:** RE: Yeager Property Violations

Mr. Sahar and Mr. McVicker,

I wish to confirm and obtain your agreement on a plan of action.

In short, Mr. Yeager will contract to have the sewer line lined and then backfill any prior excavations. At that time, the Borough will release his bond. Mr. Yeager will then repair the the 25 foot section of sidewalk, enabling the removal of he fencing/barriers.

Please advise if this is accetaple.

Separately, Mr. Yeager has a need to meet about a sewer bill, but I do not believe my assistance is necessary.



EXHIBIT
**2**

1

I look forward to your response.

Thank you,

Jim

---

**From:** boroughmanager@traffordborough.com [mailto:boroughmanager@traffordborough.com]
**Sent:** Tuesday, May 10, 2016 11:52 AM
**To:** Craig McVicker; Jim Creenan
**Subject:** RE: Yeager Property Violations

Mr Yeager canceled a meeting to be held last Friday May 6th. He has not rescheduled a meeting at this time.

Rich Sahar, Manager
Trafford Borough
412.646.1721
boroughmanager@traffordborough.com

-------- Original Message --------
Subject: RE: Yeager Property Violations
From: Craig McVicker <c.mcvicker@cea-code.com>
Date: Tue, May 10, 2016 11:28 am
To: Jim Creenan <jcreenan@cbattorneys.com>
Cc: "boroughmanager@traffordborough.com"
<boroughmanager@traffordborough.com>

Mr. Creenan,

Noted and accepted.

Craig

**From:** Jim Creenan [mailto:jcreenan@cbattorneys.com]
**Sent:** Tuesday, May 10, 2016 11:27 AM
**To:** Craig McVicker <c.mcvicker@cea-code.com>
**Cc:** boroughmanager@traffordborough.com
**Subject:** RE: Yeager Property Violations

Sir-

Mr. Yeager has asked me to meet with him in advance of a meeting with borough. I plan to meet later this week. I understand The meeting with the borough manager will take place within the next week or so.

I request that no action be taken until we've all had an opportunity to review and discuss these issues.

Thanks,

Jim

---

**From:** Craig McVicker [mailto:c.mcvicker@cea-code.com]
**Sent:** Tuesday, May 10, 2016 11:11 AM
**To:** Jim Creenan
**Cc:** boroughmanager@traffordborough.com
**Subject:** Yeager Property Violations

Dear Attorney Creenan,

As per your request, I resubmitted additional evidence of the Violations located at 501 Cavitt Avenue in Trafford on April 28, 2016. I still have heard no response from Mr. Yeager or any party as to the acceptance of violation and course of action to this date. I am preparing the issuance of Citation under the Commonwealth pursuant to the code. In an effort to avoid the Citation, please respond with a course of action for this matter.

**Craig I. McVicker, BCO**
        Frgh#Iqirufhp hqw#Djhqf|
    1633 Route 51 – Suite 100
    Jefferson Hills, PA 15025
    (412) 405-8231
www.cea-code.com

# Trafford

## Borough

---

## Public Hearing
## May 5, 2015
## 6:00 PM

**I**   **Call To Order 6:00pm**
Council president Jay Race called the Public Hearing to order on Tuesday, May 5, 2015 at 6:00pm.

**II**  **Moment Silence & Pledge Of Allegiance**
The group participated in a Moment of Silence and the Pledge of Allegiance.

**III** **Roll Call**
Borough Secretary Nina Solivan took roll: Councilmen in attendance were, Councilman Cardiff, Councilman Hockenberry, Councilman Ledwich, Councilman Race, and Councilman Shoub. Absent were Councilman Mellon and, Councilman Schultz. Others in attendance were Mayor Rey Peduzzi, and Solicitor Craig Alexander of Bruce Dice & Associates.

**With reference to property and/or structures located upon the property that have been declared abandoned, dilapidated and/or nuisance structures. The said properties in Trafford, PA are as follows:**

| | | |
|---|---|---|
| Lanalex Cloyd Inc. | 501 Cavitt Ave | Map #: 36-03-03-0-490-00-000 |
| Robert J Cromer | 315-317 5th St. | Map #: 36-03-03-0-162-00-000 |
| Lucas Mina ETAL | 635 6th St. | Map #: 36-01-16-0-120-00-000 |
| James Bruno | 90 1st St. | Map #: 36-03-03-0-498-00-000 |

**Public Comment:**
Rose Frolini 505 Duquesne Avenue: Both buildings 501 Cavitt and 315-317 5th street  In the winter the down spouts cause a public hazard  the water pours onto the sidewalk and it freezes causing the sidewalk to become a sheet of ice and impassable. The windows on the bank building are falling out, it's an eye sore. There is a tree growing out of the chimney. The purchaser has done nothing to restore the structure. It is a historical building and hate to say tear it down but as far as renovations go it is probably to the point where it is cost prohibiting, if something isn't done soon it needs to be torn down.

Jim Bruno 307 Edgewood Avenue: Owner of 90 1st Street, states he has buyers interested in purchasing the property as is. States the property looks the way it does due to the fire department going into the home and practicing drills without Mr. Bruno's permission and destroyed the interior and exterior.

Mayor Peduzzi: Born in Trafford over the years these properties have deteriorated and nothing has been done to correct the issues. In order for the community to move forward we have to take the direction and tear down these dilapidated buildings.

Councilman Ledwich made a motion to adjourn seconded by Councilman Hockenberry. MC Adjourned at 6:23pm.



**EXHIBIT**
**3**

P.O. Box 196          412.372.7652 (p)     traffordborough@comcast.net
Trafford, PA 15085    412.372.7654 (f)     www.traffordpa.com

# Trafford
### Borough

---

## Regular Monthly Meeting
## May 5, 2015
## 7:00pm

**I.  Call To Order 7:00pm**
Council President Jay Race called the regular monthly meeting to order at 7:00pm on Tuesday, May 5, 2015.

**II.  Moment Silence & Pledge Of Allegiance**
The group participated in a moment of Silence and the Pledge of Allegiance.

**III.  Roll Call**
Borough Secretary Nina Solivan took roll: Councilmen in attendance were, Councilman Cardiff, Councilman Hockenberry, Councilman Ledwich, Councilman Mellon, Councilman Race, and Councilman Shoub. Absent Councilman Schultz. Others in attendance were Mayor Rey Peduzzi, Borough Solicitor Craig Alexander of Bruce Dice & Associates, Borough Engineer Don Glenn of Glenn Engineering, Public Works Foreman Bill Sadler, and Emergency Management Coordinator Frank Turoczy.

**IV  Notice of Executive Session held May 2, 2015 in Borough Conference Room for matters of personnel**

**V  Minutes from Regular Monthly Meeting held April 7, 2015**
- A  First: Councilman Cardiff
- B  Second: Councilman Ledwich
- C  Public Comment
  No Comment.
- D  Motion Pass [X] YES or NO

**VI  Minutes from Special Meeting  April 16, 2015**
- A  First: Councilman Hockenberry
- B  Second: Councilman Cardiff
- C  Public Comment
  No Comment.
- D  Motion Pass [X] YES or NO

**VII  Payment of Bills**
- A  First: Councilman Shoub
- B  Second: Councilman Mellon
- C  Public Comment
  No Comment.
- D  Motion Pass [X]YES or NO

**VIII Motion to hire Richard Sahar, contingent upon criminal background check**
- A  First: Councilman Ledwich
- B  Second: Councilman Cardiff
- C  Public Comment
  No comment
- D  Motion Pass [X] YES or NO
  - Craig Alexander mentioned Mr. Sahar was capable of starting on 5/6/15, will the background check prohibit that. Council's response, it takes two minutes for a background check that will not prohibit his start time.



**EXHIBIT**
**4**

P.O. Box 196                412.372.7652 (p)        traffordborough@comcast.net
Trafford, PA 15085          412.372.7654 (f)              www.traffordpa.com

# Trafford
## Borough

**IX Motion to advertise for Full Time & Part Time police, with approval of ad by Chief Carmen Disso**
- A   First: Councilman Shoub
- B   Second: Councilman Ledwich
- C   Public Comment
- D   Motion Pass [X]YES or NO

**X   Report from Borough Engineer, Glenn Engineering**
- A   Report Submitted

   -On May 1, 2015 Glenn Engineering went and inspected a building located at 501 Cavitt Avenue the sidewalk along 5th street line collapsed. The support beams are severely rusted and are being held up with temporary jacks. The sidewalk has shifted down about 4'inches and is falling into the basement. It is Dons recommendation to have the sidewalk be suspended of pedestrian traffic, have the sidewalk torn out and the basement support structure be rebuilt with new support beams where the void be filled in before the new sidewalk is built.

   -Don stated he attended a meeting with the Wet Weather Association during that meeting there was discussion on AlCOSAN taking over our municipal interceptors, the 10' line that connects 2 municipalities. The borough has received preliminary paperwork for this plan, Don will meet with Casey and Bill to discuss the matter.

   -Consent order 2: Gives you 18 months to come up with a plan on the reduction of storm water.

   -Consent order 3: gives you 18 months to implement that plan.

   -7[th] Street Road Conditions: PennDot has seen all the patch work and has put a halt on the paving project. PennDot is looking for a new plan and a new sub base to sustain the traffic flow.

- B   Public Comment
- C   Glenn Engineering dismissed from meeting

**XI  Public Comment**
- A   Public Comment for all matters which the public has concern. No public comment or questions on agenda items will be received after this point.

   -**Marylyn Chiprinko 106 Belleau woods Blvd**: Expressed concerns for off street parking in Belleauwoods area. Ms. Chiprinko brought in a diagram and showed council, and made the statement "if it isn't broke don't fix it, it's worked for 50 years why change it now?' It is a giant mud pit.

   -**Shannon Koschik 236 E Fairmont Ave**: Expressed concerns that there has been damage to her property from the sewage project. April 20, 2015 side yard caved in, at that moment all construction stopped, contractors had to reroute anew way for the pipe to be laid. Lawson left Ms. Koschik a note on her door that stated to call him ASAP. Lawson explained to Ms. Koschik that this is a serious situation and they have it under control. As the construction continued Ms. Koschik noticed cracks within the foundation and her basement wall was separated from the joint to the adjoining wall. Ms. Koschik passed around pictures to council. Contractor is not returning calls and is avoiding homeowner.

   -**Carol Richardson 225 1st Street**: Thanks council for use of Manchester Room for the TECDC Bingo was a big success, also Thanks to the Public Works Department for their cooperation during this year's cleanup day.

   **Gillian Graber 110 Belleauwoods Blvd**: Formed a petition for the parking issue within Belleauwoods. Provided council with a copy of the letter and those in support of the petition. Some residents within the area were unaware that they were no longer going to be able to have permission to park there. Ms. Graber asks council to please consider this petition. Also the drainage and grates were not working properly, the middle looked like a giant mud river.

   -**Mike Lambert 293 E Edgewood Ave**: Has a 90ft treated timber side wall that runs along his property, with the construction Mr. Lambert's side wall is beginning to push. Mr. Lawson claims his wall was like this prior to the construction. If it happened prior it happened during the winter, Mr. Lambert replaced all the tops on the wall last year and was not leaning then. Also had property surveyed and have not replaced pins.

   -**Dana Vankirk 516 Cavitt Ave**: Property owner of 516 Cavitt Avenue, does not understand why she has to replace a sewer line under the street about 18ft in order to sell her property. Why is it her responsibility if it is under the Boroughs Street?

P.O. Box 196
Trafford, PA 15085

412.372.7652 (p)
412.372.7654 (f)

traffordborough@comcast.net
www.traffordpa.com

# Trafford

## Borough

-**Brian Vankirk 741 ½ 7th Street:** Commented on the communication within the Borough, it is hard to get a hold of people doing inspections. Mr. Vankrik is a real estate agent and he doesn't have nearly as much trouble on a closing than he does in Trafford.

B    Only public comment for motions not listed on the agenda will be received when called for.

C    This is allowable under state law. See attached.

D    Response

-**Ms. Chaprinko:** Council will review the current ordinances and see what the best solution to the problem.

-**Ms. Koschik:** Bill was called to the sight by Shane Lawson to explain what was happening, before Lawson made it to the property the ground was giving way. The trench box was falling into the ditch. Immediately Bill called Don Glenn Borough Engineer. Bill stated Ms. Koschik's porch is extremely close to where the digging was taking place. There is an existing storm and sanitary sewer that runs through the easement on the property. Looked and assessed the situation and had Lawson stop all construction. Saw substantial cracks in the foundation, Lawson sated they were there prior to construction. Bill stated he has not yet had the chance to review the pre-construction photos or video. Bill stated he will look at the photos we have but Ms. Koschik is correct by stating we do not have photos from the inside of the home.

-**Ms. Graber:** Catch basins have silt bags and are to catch sediment around the basin. The ground is still settling, if this continues to be a problem please report it to the Borough.

-**Mr. Lambert:** We will review the pictures. If you can provide proof of the survey prior to the property that would greatly appreciated.

-**Dana Vankirk:** The Ordinance in regards to sewer laterals and taps being the responsibility of the property owner is not unique to the borough of Trafford of the 26 municipalities that Don Glenn represents all have the same ordinance.

XII   **Update on Zoning Changes for unconventional gas well drilling, by Craig Alexander**

- Craig and Pete met and formed an ordinance that would be most beneficial to the Borough, Pete is still looking over the changes. Still progressing will need some input form the Borough engineer. Once the ordinance is complete Craig will send it to the county view it within 45 days provide their comments, then the planning commission they too have 45 days and provide their comments. If there are no changes with those whom need to review we will then have a public hearing on the ordinance, we can then adopt the ordinance. If any of the two entities have changes we will then have to start over and resubmit with those changes.

XIII   **Update on Road paving by PennDot**

XIV   **Update on Trafford Motors**

XV   **Update on 501 Cavitt, Bank Building**

XVI   **Update on 2hr Parking Ordinance**

- Will be holding a special meeting for this matter.

XVII   **Update on oversized vehicles**

-Will be holding a special meeting for this matter.

Wednesday May 20 2015 at 7pm in the Manchester Room there will be a special meeting for public comment on the 2 hr parking ordinance and the oversized vehicle ordinance and any other business that may come before council.

XVIII   **Resolution by Trafford Borough acknowledging joining the Westmoreland County Land Bank**

A    First: Councilman Shoub

B    Second: Councilman Cardiff

C    Motion Pass [X]YES or NO

The purpose is to get rid of dilapidated structures and get the land back on the tax rolls, fairly new program but very beneficial.

P.O. Box 196
Trafford, PA 15085

412.372.7652 (p)
412.372.7654 (f)

traffordborough@comcast.net
www.traffordpa.com

# Trafford
## Borough

---

**XIX** Resolution by Trafford Borough requesting the Greenways, Trails, & Recreation Grant for improvements at Fairmont Street Playground. The Trafford Recreation Board will pay for the portion of the money responsible for the borough, as required by the grant.

    A   First: Councilman Ledwich

    B   Second: Councilman Cardiff

    C   Motion Pass [X]YES or No

    -If the rec board was capable of getting the grant the Borough would be responsible for $1500.00 for replacing the inlet in the ally way behind Fairmont Playground. Rec Board will cover all cost except for the portion be paid by the Borough.

**XX** Adoption of Code of ethics for email and computer use.

    A   First:

    B   Second:

    C   Motion Pass YES or[X] NO

    Councilman Ledwich requested this motion be tabled due to a discrepancy within the text of the code of ethics seconded by Councilman Shoub. MC

**XXI** Motion to adopt the shareable calendar, as provided by the website licensee company (GoDaddy), as the calendar to be used for official business of the Borough of Trafford.

    A   First: Councilman Cardiff

    B   Second: Councilman Mellon

    C   Motion Pass [X] YES or NO

**XXII** Trafford Community Public Library would like to reserve the Manchester Room for Middle School Poetry meetings on Mondays in June, July and August from 9:00am to 12:00pm.

    A. First: Councilman Shoub

    B. Second: Councilman Ledwich

    C. Motion Pass [X] YES or No

**XXIII** Penn-Trafford Soccer Club is requesting free use of the Manchester Room on June 20, 2015 to hold a Trivia night fundraiser.

    A.   First:

    B.   Second:

    C.   Motion Pass Yes or [X] No

    - Mike Mellon, Jay Race abstain from any comment or motion to this. Motion was turned down.

**XXIV** Administrative Reports

    **a**   **Code Enforcement**

       -Report provided within packet

    **b**   **Borough Manager**

       -No report

    **c**   **Borough Solicitor**

       -Public Hearing

       Immediately preceding tonight's council meeting there was a Public hearing for matters of nuisance/ dilapidated properties:

| | | |
|---|---|---|
| Lanalex Cloyd Inc. | 501 Cavitt Ave | Map #: 36-03-03-0-490-00-000 |
| Robert J Cromer | 315-317 5th St. | Map #: 36-03-03-0-162-00-000 |
| Lucas Mina ETAL | 635 6th St. | Map #: 36-01-16-0-120-00-000 |
| James Bruno | 90 1st St. | Map #: 36-03-03-0-498-00-000 |

P.O. Box 196.
Trafford, PA 15085

412.372.7652 (p)
412.372.7654 (f)

traffordborough@comcast.net
www.traffordpa.com

# Trafford

## Borough

Mr. Yeager owner of the 501 Cavitt Avenue questioned council as to why he has not received any notice in regards to a public hearing or possible demolition to his building. Council stated it was advertised within the penn Trafford star. Mr. Yeager stated he does not receive this paper. He is in the process of receiving bids, has spoken to Don Glenn and Mr. Sadler regarding sewer line. Working on bids for the sidewalk and the roof. Mr. Yeager is planning on renovating the building into apartments and commercial stores on the main street. Craig stated Mr. Yeager will receive a letter contingent council declares the properties public nesciences and authorize demolition. The property owners will then have 30 days to appeal the decision with the court of common pleas, the court will then declare if council's decision was arbitrary or capricious.

-Councilman Hockenberry made a motion to condemn and authorize demolition the above mentioned properties seconded by Councilman Ledwich. MC

**d TEMS**

- 28 total calls for the month of April with 9 transfers. TEMS is willing to purchase another fryer for the borough to have, this would benefit TEMS during their fish fry.

**e Trafford VFD**

–Hoagie sale was great sold out before noon. Craig questioned Brian on an accusation made by Jim Bruno; "The Trafford fire department went on to the property of 90 1st street with no permission and performed fire drills and practice exercises". Brian stated he has a signed letter from Mr. Bruno that the fire department was able to go onto the property and do so, being that the structures were going to be torn down anyways.

**f EMC**

–No report

**g Rec board**

- Fishing Derby is on June 6, 2015 at the BY Park starts at 9 am. Woodlawn, Terrace and Fairmont Park are the designated parks this year for the playground program.

-Councilman Ledwich made a motion to approve Woodlawn, Terrace and Fairmont Park as the designated parks this year for the playground program seconded by Councilman Shoub. MC

- Councilman Ledwich made a motion to approve Emily Bippus, Cristina lander, Brian Mcdonna, Mark Tressler, Claire Mervous, and Crista Hankinson as the playground supervisors at a rate of $8.00 per hour seconded by Councilman Hockenberry. MC

**h Mayor Peduzzi**

-Councilman Shoub made a motion to allow Trafford Beautification Committee to use the library parking lot to hold their annual flower sale on May 16 2015 from 8am-1pm seconded by Councilman Cardiff. MC

## XXV Committee Reports

### A. Finance

-Submitted within the packet there are p&l statements.

### B. Community Development

- Thanked Public Works and the TEDCD for their participation with Clean-up day. Westmoreland Park Grand Reopening Ceremony Will be held on Saturday May 30 2015 at 10:30.

Councilman Ledwich made a motion to donate 200.00 to the PT community band for playing during the ceremony seconded by Councilman Cardiff.

-Thanked Councilman Hockenberry and mayor Peduzzi for taking the initiative to review the Parking ordinance and the oversized vehicle.

-Councilman Ledwich made a motion to repair the linden nozzle for the by park fountain in the amount of $106.73 seconded by Councilman Cardiff. MC

P.O. Box 196
Trafford, PA 15085

412.372.7652 (p)
412.372.7654 (f)

traffordborough@comcast.net
www.traffordpa.com

# Trafford
## Borough

### C. Public Works

- Bill Sadler proposed a Motion to hire Chris Jurich, and Joe Giacomin at the rate of 8.50 per hour for part time summer help within the public works department seconded by Councilman Mellon.

- Mayor Peduzzi commended the public works for the participation with the cleanup and their day to day work.

### D. Sewage

-Restorations will begin to take place weather permitting.

### E. Public Safety

- Police contract is finally settled and in effect. Commended Mayor Peduzzi for his hard work on the two ordinances. Thanked Kris and Craig for getting the new borough manger Richard Sahar, hired and getting the contract done in record time.

### F. General Government

-Thanked the public works and the TECDC with the cleanup. Manchester Room Committee members are Kris Cardiff, Mike Mellon and Pete Ledwich.

Councilman Cardiff made a motion to approve the job description of the Manchester Room manager seconded by Councilman Mellon.

Councilman Cardiff made a motion to table an advertisement for the position on social media seconded by Pete Ledwich. Mc.

Councilman Cardiff made a motion to table the permission for Digital Trafford to print 5 ½ by 8 ½ with general information on the Manchester room in the amount of $250.00 seconded by Councilman Hockenberry. MC

Councilman Cardiff made a motion to allow Matt of Mastro Signs to donate a sign for the Manchester Room and placing the sign on the corner next to the police station contingent upon consulting the chief of police, public works and the chief of the fire department seconded by Councilman Hockenberry. MC

## XXVI  New Business

- Councilman Shoub stated he had spoken with Bert Ghetto in regards to CDBG money Bert advises us to have surveys done sooner than later for any projects we are requesting money for so we can have them in before the deadline and see if we qualify.

## XXVII  Adjournment

-Councilman Ledwich made a motion to adjourn seconded by Councilman Hockenberry

P.O. Box 196            412.372.7652 (p)        traffordborough@comcast.net
Trafford, PA 15085      412.372.7654 (f)        www.traffordpa.com



# CODE ENFORCEMENT AGENCY
1633 Route 51, Suite 100, Jefferson Hills, PA 15025
1-866-410-4952      www.cea-code.com

## NOTICE OF VIOLATION

**April 19, 2016**

**RE: Frank Yeager – Property 501 Cavitt Avenue, Trafford, PA 15085**

C/O Creenan & Baczkowski, PC
Mr. James W. Creenan, Attorney
3007 Old William Penn Highway
Murrysville, PA 15068

Dear Attorney Creenan,

On behalf of the Borough of Trafford, I have been requested to follow up on a previous action located at 501 Cavitt Avenue in Trafford. The owner of record is Mr. Frank Yeager and according to information on the file, you have been established as legal counsel representing Mr. Yeager. I am writing this letter directly to you as official legal counsel of record on your client's behalf.

The property located in the above reference is in violation of the International Property Maintenance Code (IPMC) established under Borough Ordinance and is hereby being requested that you bring this property into conformity of the codes specified.

On April 18, 2016, I was present at the above referenced and acknowledged the following violations:

**[A] 108.2 Closing of vacant structures.**
If the structure is vacant and unfit for human habitation and *occupancy*, and is not in danger of structural collapse, the *code official* is authorized to post a placard of condemnation on the *premises* and order the structure closed up so as not to be an attractive nuisance. Upon failure of the *owner* or owner's authorized agent to close up the *premises* within the time specified in the order, the *code official* shall cause the *premises* to be closed and secured through any available public agency or by contract or arrangement by private persons and the cost thereof shall be charged against the real estate upon which the structure is located and shall be a lien upon such real estate and shall be collected by any other legal resource.

**It is determined by myself as the Building Code Official on behalf of the Borough of Trafford to require the sidewalk located along the street side of the building be repaired and maintained in proper order for public use. This sidewalk has been gated off and restricted for public access for a period of time and no present information is on file for the continuum of progress of this matter. Additionally, the barrier devices offered by the Borough of Trafford must be removed and a written plan of action should be conveyed to the Building Code Official for the safe repair of the sidewalk.**

**EXHIBIT**

**5**

### 306.1.1 Unsafe conditions.

Where any of the following conditions cause the component or system to be beyond its limit state, the component or system shall be determined as unsafe and shall be repaired or replaced to comply with the *International Building Code* or the International Existing Building Code as required for existing buildings:

1. Soils that have been subjected to any of the following conditions:

1.1. Collapse of footing or foundation system;

1.2. Damage to footing, foundation, concrete or other structural element due to soil expansion;

1.3. Adverse effects to the design strength of footing, foundation, concrete or other structural element due to a chemical reaction from the soil;

1.4. Inadequate soil as determined by a geotechnical investigation;

1.5. Where the allowable bearing capacity of the soil is in doubt; or

1.6. Adverse effects to the footing, foundation, concrete or other structural element due to the ground water table.

### [P] 506.2 Maintenance.

Every plumbing stack, vent, waste and sewer line shall function properly and be kept free from obstructions, leaks and defects.

### [A] 108.6 Abatement methods.

The *owner*, owner's authorized agent, *operator* or *occupant* of a building, *premises* or equipment deemed unsafe by the *code official* shall abate or cause to be abated or corrected such unsafe conditions either by repair, rehabilitation, demolition or other *approved* corrective action.

**It is determined by myself as the Building Code Official on behalf of the Borough of Trafford to require the owner of the existing structure to fill in all voided areas where excavating efforts have taken place. (rear of building) Additionally, the barrier devices in place are meant for temporary use during an active construction permit, our records indicate there is no permit filed for commercial repairs or replacements of any sanitary lines or waste drains.**

I am requesting an official response within **10** business days of this letter to the actions necessary to remove the violation notice. Failure to comply with this action shall result in the issuance of a Citation on behalf of the Commonwealth of Pennsylvania and would require you to appear before the local Magistrate in this jurisdiction. An appeal of this decision or matter maybe officially applied for through the local Magistrate office as well.

Sincerely,

Craig I. McVicker, BCO
Building Code Official
Borough of Trafford

CC: Borough Manager, Code Enforcement Office, Borough Solicitor

**Murrysville Office**
Town Square Professional Building
Suite 304
3007 Old William Penn Highway
Murrysville, PA 15668

(724) 733-8832

WALTER F. BACZKOWSKI
JAMES W. CREENAN
MOLLY M. CREENAN
ELIZABETH BAILEY (OF COUNSEL)
FRANK W. JONES (OF COUNSEL)



# Creenan & Baczkowski, PC
### A T T O R N E Y S

www.cbattorneys.com

**McKeesport Office**
City Hall Building
Suite 305
502 Fifth Avenue
McKeesport, PA 15132

(412) 675-0940

Writer's Email:
jcreenan@cbattorneys.com

January 7, 2015

**Via Fax - 412-372-7654**
Trafford Borough
P.O. Box 196
Trafford, PA 15085

      Re:    *Yeager, Frank – Property at 501 Cavitt*
               Our File No. 15732

Dear Sir or Madam:

This office represents the above property owner. I request that all further correspondence on this matter be sent to my attention. Additionally, upon your receipt of this letter, I request that you provide to me all records, documents, letters, notices, emails, photos, reports, or the like, pertaining to the above property.

As you know, Mr. Yeager is taking steps to address the Borough's stated concerns.

Thank you for your attention to this matter.

Very truly yours,

James W. Creenan

JWC/
Enclosure

cc:

## Joanne Parise

| | |
|---|---|
| **From:** | Jim Creenan |
| **Sent:** | Thursday, May 19, 2016 7:52 AM |
| **To:** | 'boroughmanager@traffordborough.com'; Craig McVicker |
| **Subject:** | RE: Yeager Property Violations |

Mr. Sahar and Mr. McVicker,

I wish to confirm and obtain your agreement on a plan of action.

In short, Mr. Yeager will contract to have the sewer line lined and then backfill any prior excavations. At that time, the Borough will release his bond. Mr. Yeager will then repair the the 25 foot section of sidewalk, enabling the removal of he fencing/barriers.

Please advise if this is accetapble.

Separately, Mr. Yeager has a need to meet about a sewer bill, but I do not believe my assistance is necessary.

I look forward to your response.

Thank you,

Jim

---

**From:** boroughmanager@traffordborough.com [mailto:boroughmanager@traffordborough.com]
**Sent:** Tuesday, May 10, 2016 11:52 AM
**To:** Craig McVicker; Jim Creenan
**Subject:** RE: Yeager Property Violations

Mr Yeager canceled a meeting to be held last Friday May 6th. He has not rescheduled a meeting at this time.

Rich Sahar, Manager
Trafford Borough
412.646.1721
boroughmanager@traffordborough.com


-------- Original Message --------
Subject: RE: Yeager Property Violations
From: Craig McVicker <c.mcvicker@cea-code.com>
Date: Tue, May 10, 2016 11:28 am
To: Jim Creenan <jcreenan@cbattorneys.com>
Cc: "boroughmanager@traffordborough.com"
<boroughmanager@traffordborough.com>

Mr. Creenan,

Noted and accepted.

**EXHIBIT**
**6**

1

Craig

**From:** Jim Creenan [mailto:jcreenan@cbattorneys.com]
**Sent:** Tuesday, May 10, 2016 11:27 AM
**To:** Craig McVicker <c.mcvicker@cea-code.com>
**Cc:** boroughmanager@traffordborough.com
**Subject:** RE: Yeager Property Violations

Sir-

Mr. Yeager has asked me to meet with him in advance of a meeting with borough. I plan to meet later this week. I understand The meeting with the borough manager will take place within the next week or so.

I request that no action be taken until we've all had an opportunity to review and discuss these issues.

Thanks,

Jim

**From:** Craig McVicker [mailto:c.mcvicker@cea-code.com]
**Sent:** Tuesday, May 10, 2016 11:11 AM
**To:** Jim Creenan
**Cc:** boroughmanager@traffordborough.com
**Subject:** Yeager Property Violations

Dear Attorney Creenan,

As per your request, I resubmitted additional evidence of the Violations located at 501 Cavitt Avenue in Trafford on April 28, 2016. I still have heard no response from Mr. Yeager or any party as to the acceptance of violation and course of action to this date. I am preparing the issuance of Citation under the Commonwealth pursuant to the code. In an effort to avoid the Citation, please respond with a course of action for this matter.

**Craig I. McVicker, BCO**
   Frgh#Iqirufhp hqw#Djhqf|
1633 Route 51 – Suite 100
Jefferson Hills, PA 15025
(412) 405-8231
www.cea-code.com

**Murrysville Office**
Town Square Professional Building
Suite 304
3907 Old William Penn Highway
Murrysville, PA 15668

(724) 733-8832

WALTER F. BACZKOWSKI
JAMES W. CREENAN
MOLLY M. CREENAN
JUSTIN D. DELECKI
FRANK W. JONES (OF COUNSEL)

# Creenan & Baczkowski, PC
### A T T O R N E Y S

www.cbattorneys.com

**McKeesport Office**
City Hall Building
Suite 305
502 Fifth Avenue
McKeesport, PA 15132

(412) 675-0940

ELIZABETH BAILEY (1920–2016)

Writer's Email:
jcreenan@cbattorneys.com

September 8, 2016

Craig I. McVicker, BCO
CEA Code Enforcement
1633 Route 51
Suite 100
Clairton, PA 15025

Re:  *Yeager, Frank – 501 Cavitt Avenue, Trafford, PA 15085*
      Our File No. 16885

Dear Mr. McVicker:

Please find enclosed photographic evidence of the repairs Frank Yeager has completed at the property.

Please note that Mr. Yeager has requested, but not received, the return of his bond from the Borough of Trafford relating to the sewer line work.

The Borough's failure to return the bond is impeding Mr. Yeager's financial ability to complete the repairs to the sidewalk.

Under separate cover, I am requesting that the Borough address this issue.

I trust that this correspondence satisfactorily resolves any current concerns and I ask that you provide me with written confirmation of the same.

Thank you for your attention to this matter.

Very truly yours,

James W. Creenan

JWC/jlp
Enclosure

cc:    Frank Yeager

**EXHIBIT
7**







# Trafford
## Borough

September 30, 2016

Frank Yeager
**LANALEX CLOYD, INC.**
5204 Faulk Drive
Export, PA 15632

*RE: 501-503 Cavitt Avenue*
  *Trafford, PA*

Mr. Yeager –

The Borough of Trafford is committed to maintaining quality neighborhoods and an excellent community environment. Our citizens expect us to do everything we can in this regard. We know that this can only be achieved through the cooperation of everyone involved. The Code Enforcement office has received repeated complaints regarding the high grass and weeds on the property located at 501-503 Cavitt Avenue. Upon inspecting the property in question, I have discovered it to be in violation of the Code of the Borough of Trafford, PA, as follows:

### *Chapter 75, BRUSH, GRASS AND WEEDS*

**§ 75-1. Prohibited growths.**
*No person or persons, partnership, firm or corporation owning or occupying any property within the Borough of Trafford shall permit any grass or weeds or any vegetation whatsoever, not edible or planted for some useful or ornamental purpose, to grow or remain upon such premises so as to exceed a height of six (6) inches or to throw off any unpleasant or noxious odor or to conceal any filthy deposit or to create or produce pollen or to create a fire hazard.*

**§ 75-2. Responsibility for removal.**
*The owner of any premises, as to vacant premises or premises occupied by the owner, and the occupant thereof, as to premises occupied by other than the owner thereof, shall remove, trim or cut all grass, weeds or other vegetation growing or remaining upon such premises in violation of § 75-1.*

**EXHIBIT**
**8**



P.O. Box 196          412.372.7652 (p)          traffordborough@comcast.net
Trafford, PA 15085          412.372.7654 (f)          www.traffordpa.com

**§ 75-3. Notice of violation; failure to comply.**

The Borough Council or any officer or employee of the borough designated thereby for the purpose is hereby authorized to give notice, by **personal service** or by United States Mail, to the owner or occupant, as the case may be, of any premises whereon grass, weeds or other vegetation is growing or remaining in violation of §75-1, directing and requiring such owner or occupant to remove, trim or cut such grass, weeds or vegetation so as to conform to the requirements of this chapter **within five (5) days after the issuance of such notice**. In case any person, partnership, firm or corporation shall neglect, fail or refuse to comply with such notice within the period of time stated therein, the borough authorities may remove, trim or cut such grass, weeds or vegetation; and the cost thereof, together with any additional penalty authorized by the law, may be collected by the borough from such person, partnership, firm or corporation in the manner provided by law.

**§ 75-4. Violations and penalties.  [Amended 5-10-2005 by Ord. No. 702]**

Any person, partnership, firm or corporation who or which shall violate or fail, neglect or refuse to comply with any of the provisions of this chapter shall, upon conviction, be sentenced to pay a fine of not less than $100 nor more than $1,000, and costs of prosecution, or to imprisonment for a term not to exceed 30 days, or both; provided that each day's continuance of a violation of any of the provisions of this chapter, after notice thereof as provided in § 75-3 hereof, shall constitute a separate offense.

Failure to remediate this issue with **five (5) days** of receipt of this letter shall result in the issuance of non-traffic citations for violations of the listed sections.  Feel free to contact my office with any questions you have regarding this lawful order.  A copy of this correspondence has also been sent to your attorney, James W. Creenan of Creenan & Baczkowski, PC.  Thank you in advance for your cooperation with this matter.

Ptlm. Richard M. Adams/47
Trafford Borough Police Department – Ordinance Officer
PH: 412-372-7653, FX: 412-372-7654
traffordcodeenforcement@comcast.net

cc: James W. Creenan
    Creenan & Baczkowski, PC

# Trafford
Borough

Print | Close Window

Subject: RE: 501 Cavitt Ave.

From: dhockenberry@traffordborough.com

Date: Thu, Aug 03, 2017 8:22 am

To: "Craig Alexander" <CAlexander@dicelaw.com>, "cmorrow@traffordborough.com" <cmorrow@traffordborough.com>

Cc: "Code Enforcement" <CodeEnforcement@TraffordBorough.com>, "boroughmanager@traffordborough.com" <boroughmanager@traffordborough.com>, "Kris Cardiff" <kcardiff@traffordborough.com>, "pete ledwich" <pledwich@traffordborough.com>

i tried for a year to get the two rich's to do something up there and could not even get them to have him cut the weeds. i know dom's has complained to me on several occasions that it effects his business. hopefully now that we have joe, CEA and Ashley working together, we can get things done. i think we have to get as aggressive as possible and hit him in his wallet. that is how we got landlords to clean up their properties in Pitcairn. landlords hate spending money

-------- Original Message --------
Subject: Re: 501 Cavitt Ave.
From: Craig Alexander <CAlexander@dicelaw.com>
Date: Wed, August 02, 2017 4:48 pm
To: "cmorrow@traffordborough.com" <cmorrow@traffordborough.com>
Cc: "dhockenberry@traffordborough.com" <dhockenberry@traffordborough.com>, Code Enforcement <CodeEnforcement@TraffordBorough.com>, "boroughmanager@traffordborough.com" <boroughmanager@traffordborough.com>, Kris Cardiff <kcardiff@traffordborough.com>, pete ledwich <pledwich@traffordborough.com>

Sorry Joe. I missed this earlier email. I agree with carol. We were faced with this same condition but much worse with the Trafford motor company building. Finally got it torn down with westmoreland county grant funds. Let's see what cea recommends.

Sent from my iPhone

On Aug 2, 2017, at 7:30 PM, "cmorrow@traffordborough.com" <cmorrow@traffordborough.com> wrote:

I have to agree with Dennis, we should have CEA come out and make it to where it is safe for those within the perimeter.

Hoping this eye sore is removed sooner then later.

thanks

-------- Original Message --------
Subject: RE: 501 Cavitt Ave.
From: <dhockenberry@traffordborough.com>
Date: Wed, August 02, 2017 12:33 pm
To: "Code Enforcement" <CodeEnforcement@TraffordBorough.com>, calexander@dicelaw.com
Cc: "Carol Morrow" <cmorrow@traffordborough.com>, "Kris Cardiff" <kcardiff@traffordborough.com>, "pete ledwich"

**EXHIBIT 9**

Case 2:20-cv-01252-WSH Document 136-32 Filed 09/09/20 Page 78 of 223

<pledwich@traffordborough.com>

i would say that we call cea and get them out here immediately to survey the problem and block the sidewalk off now as a precaution. better to be safe than sorry.

-------- Original Message --------
Subject: 501 Cavitt Ave.
From: "Code Enforcement" <CodeEnforcement@TraffordBorough.com>
Date: Wed, August 02, 2017 10:22 am
To: <calexander@dicelaw.com>
Cc: "Carol Morrow" <cmorrow@traffordborough.com>, ""Borough Manager""
<TraffordManager@comcast.net>, "Kris Cardiff"
<kcardiff@traffordborough.com>

Craig,

In regards to 501 Cavitt Ave. (the old bank building),across from Dom's Pizza, I noticed a couple red brick pieces on the ground that match the building so I took several pic's of the building. It appears that the very top of the structure is losing the bricks and shows bowing that it might fall.
Also several windows are missing, a lot of glass on the ground from the front windows broken out and front doors now unsecured.
Can you tell me where we stand on this structure, I believe if measures are not taken soon to secure or remove it, gravity will take hold and God help anyone or thing below.


Joseph Probo
Traffod Code Enforcement
414 Brinton Ave
Trafford PA 15085
412.372.7653

Copyright © 2003-2019. All rights reserved.



# CODE ENFORCEMENT AGENCY
1633 Route 51, Suite 100, Jefferson Hills, PA 15025
1-866-410-4952    www.cea-code.com

# NOTICE OF VIOLATION
# CAUSE FOR EMERGENCY ACTION

**August 8, 2017**

Creenan & Baczkowski, PC
Mr. James W. Creenan, Esquire
3007 Old William Penn Highway
Murrysville, PA 15068

RE: **Mr. Frank Yeager- Property 501 Cavitt Avenue, Trafford, PA 15085**

Dear Attorney Creenan,

On behalf of Trafford Borough, I have been requested to follow up on a previous action located at 501 Cavitt Avenue in the Borough of Trafford owned by a Mr. Frank Yeager which is represented by your firm. The last attention on this matter I have on file denoted a conversation needed to be had between the Borough Manager and yourself on issues relating to the above addressed.

Since such time has passed, the integrity of the structure continues to decline and is now in need of immediate attention. There are copious signs of neglect and dilapidation of this structure which have now lead to the brick veneer elements to protrude from the top sections of the exterior front. These bricks are now projecting downward into the street and common walkway areas of the general public's right of ways. I have ordered the Borough of Trafford to restrict the access of the walkways and areas surrounding the building for safety purposes. Additionally, the front entryways on ground level are again opened and exposed to entry due to neglect of the boarding materials.

## § 403.84. Unsafe building, structure or equipment.

(a) A building code official may determine that a building, structure or equipment is unsafe because of inadequate means of egress, inadequate light and ventilation, fire hazard, other dangers to human life or the public welfare, illegal or improper occupancy or inadequate maintenance. A vacant building or structure that is not secured against entry is unsafe under this section.

(b) When a building code official determines the existence of an unsafe condition, the building code official shall order the vacating of the building or structure.

(c) A building code official shall serve a written notice on the owner or owner's agent of the building, structure or equipment that is unsafe under this section. The notice shall contain the order to vacate the building, structure or seal the equipment out of service and state the unsafe conditions, required repairs or improvements. The order shall be served by certified mail or personal service to the owner or to the owner's agent's last known address or on the owner, agent or person in control of the building, structure or equipment. A building code official shall post the written notice at the entrance of the structure or on the equipment if service cannot be accomplished by certified mail or personal service.

**EXHIBIT**
**10**

(d) When a building or structure is ordered vacated under this section, the building code official shall post a notice at each entrance stating that the structure is unsafe and its occupancy is prohibited.

(e) A building code official may not rescind the order to vacate until the owner abates or corrects the unsafe condition.

**Due to the general unsafe conditions of the brick edges, sidewalls and roof concept of this structure being compromised by infiltration and neglect, I am requiring a report sealed by a Pennsylvania Architect or Engineer to be submitted to my attention outlining the integrity of the structure in its entirety. I am also treating this as an emergency action under the Commonwealth due to the location of the structure and proximity to public streets, sidewalks and other structures.**

Please notify my office immediately to the receipt of this letter and the intended next steps of your client.

Sincerely,

Craig I. McVicker, BCO
Building Code Official
Borough of Trafford

CC: Borough Council, Solicitor, Code Enforcement Officer, Public Works

# BRUCE E. DICE & ASSOCIATES, PC.

ATTORNEYS AT LAW

787 PINE VALLEY DRIVE, SUITE E
PITTSBURGH, PENNSYLVANIA 15239-2842

TEL: 724-733-3080

FAX: 724-327-9659

November 20, 2017

**Via email to jcreenan@cbattorneys.com**
James W. Creenan, Esquire
Creenan & Baczkowski, PC
3007 Old William Penn Highway
Murrysville, PA 15068

RE: Yeager property, 501 Cavitt Avenue, Trafford

Dear Mr. Creenan:

As you are aware, I am the Solicitor for Trafford Borough. This letter is in regard to the Yeager property located at 501 Cavitt Avenue in Trafford. As you know, there are a number of code violations at the subject property, which present a very dangerous condition to the community. Craig McVicker, the Trafford Code Enforcement Officer has attempted to work with you in good faith in an effort to cure the violations and return the property to a safe and habitable condition.

Recently, however, Mr. McVicker has reported that he has received no response from you since September. Accordingly, I have been directed to provide Mr. Yeager with one last opportunity to submit a plan documenting to rectify the code violation and dangerous condition at the property, and a concise timeline for completion of same. I understand Thanksgiving is next week and will likely be a short work week. As such, I have been directed to provide Mr. Yeager until close of business on Friday, December 1, 2017 to submit such a plan.

I thank you in advance for your prompt attention to this matter.

Very truly yours,
BRUCE E. DICE & ASSOCIATES, P.C.

Craig H. Alexander, Esquire
Solicitor, the Borough of Trafford

Cc: Ashley Stack, Borough Manager
Craig McVicker, Code Enforcement

**EXHIBIT**
**11**

## Joanne Parise

| | |
|---|---|
| **From:** | Jim Creenan |
| **Sent:** | Monday, November 20, 2017 7:38 PM |
| **To:** | 'Craig Alexander' |
| **Cc:** | Trafford Borough Manager |
| **Subject:** | RE: Yeager Property |

Thank you Craig.

To date, I have not received confirmation of the Borough's release of the sewer bond. Has this happened? If not, why not? This has been holding up needed funds to address other issues. I appreciate any assistance you might be able to provide.

Jim

JAMES W. CREENAN, ESQUIRE
CREENAN & BACZKOWSKI, PC
TOWN SQUARE PROFESSIONAL BUILDING
SUITE 304
3907 OLD WILLIAM PENN HIGHWAY
MURRYSVILLE, PA 15668
(724) 733-8832
(724) 733-8834 (FAX)
JCREENAN@CBATTORNEYS.COM
WWW.CBATTORNEYS.COM

IMPORTANT NOTICE. THE E-MAIL COMMUNICATION, TOGETHER WITH ANY ATTACHMENTS, IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN CONFIDENTIAL INFORMATION THAT IS PRIVILEGED AND/OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU RECEIVED THIS COMMUNICATION IN ERROR. ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU RECEIVE THIS COMMUNICATION IN ERROR PLEASE CALL THE TELEPHONE NUMBER LISTED ABOVE, OR SEND A RETURN E-MAIL, AND THEN DELETE THIS MESSAGE, TOGETHER WITH ANY ATTACHMENTS.

**From:** Craig Alexander [mailto:CAlexander@dicelaw.com]
**Sent:** Monday, November 20, 2017 7:15 PM
**To:** Jim Creenan <jcreenan@cbattorneys.com>
**Cc:** Trafford Borough Manager <BoroughManager@TraffordBorough.com>
**Subject:** Yeager Property

Jim.....please see attached correspondence on the Yeager property. Any help would be greatly appreciated.

Craig.

Craig H. Alexander, Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA 15239
Office: 724-733-3080
Mobile: 412-310-1599.



**EXHIBIT 12**

1

**Joanne Parise**

| | |
|---|---|
| **From:** | Craig Alexander <CAlexander@dicelaw.com> |
| **Sent:** | Tuesday, November 21, 2017 4:36 PM |
| **To:** | Jim Creenan |
| **Cc:** | boroughmanager@traffordborough.com |
| **Subject:** | Fwd: Yeager Property |

Jim....see below in response to your query.

Craig.

Sent from my iPhone

Begin forwarded message:

> **From:** Trafford Borough Manager <BoroughManager@TraffordBorough.com>
> **Date:** November 21, 2017 at 3:50:09 PM EST
> **To:** 'Craig Alexander' <CAlexander@dicelaw.com>
> **Subject:** RE: Yeager Property
>
> Hi Craig,
>
> The sewer bond has not been released because the cut Mr. Yeager made in the road was not repaired. The road needs to be filled with concrete then inspected by either the borough engineer or Public Works. Due to safety concerns and lack of action on Mr. Yeager's part, Public Works temporarily filled the area with patch but it must be filled with concrete.
>
> Please call with any questions.
>
> Thank you,
>
> Ashley
>
>
> **From:** Craig Alexander [mailto:CAlexander@dicelaw.com]
> **Sent:** Monday, November 20, 2017 8:12 PM
> **To:** Jim Creenan <jcreenan@cbattorneys.com>
> **Cc:** Trafford Borough Manager <BoroughManager@TraffordBorough.com>
> **Subject:** RE: Yeager Property
>
> I am unaware but will follow up and provide you a response tomorrow.
>
> Craig.
>
> Craig H. Alexander, Esquire
> Bruce E. Dice & Associates P.C.
> 787 Pine Valley Drive, Suite E
> Pittsburgh, PA 15239
> Office: 724-733-3080



**EXHIBIT**

**13**

1

Mobile: 412-310-1599.

**From:** Jim Creenan [mailto:jcreenan@cbattorneys.com]
**Sent:** Monday, November 20, 2017 7:38 PM
**To:** Craig Alexander <CAlexander@dicelaw.com>
**Cc:** Trafford Borough Manager <BoroughManager@TraffordBorough.com>
**Subject:** RE: Yeager Property

Thank you Craig.

To date, I have not received confirmation of the Borough's release of the sewer bond. Has this happened? If not, why not? This has been holding up needed funds to address other issues. I appreciate any assistance you might be able to provide.

Jim

JAMES W. CREENAN, ESQUIRE
CREENAN & BACZKOWSKI, PC
TOWN SQUARE PROFESSIONAL BUILDING
Suite 304
3907 Old William Penn Highway
Murrysville, PA 15668
(724) 733-8832
(724) 733-8834 (FAX)
JCREENAN@CBATTORNEYS.COM
WWW.CBATTORNEYS.COM

IMPORTANT NOTICE. THE E-MAIL COMMUNICATION, TOGETHER WITH ANY ATTACHMENTS, IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN CONFIDENTIAL INFORMATION THAT IS PRIVILEGED AND/OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU RECEIVED THIS COMMUNICATION IN ERROR. ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU RECEIVE THIS COMMUNICATION IN ERROR PLEASE CALL THE TELEPHONE NUMBER LISTED ABOVE, OR SEND A RETURN E-MAIL, AND THEN DELETE THIS MESSAGE, TOGETHER WITH ANY ATTACHMENTS.

**From:** Craig Alexander [mailto:CAlexander@dicelaw.com]
**Sent:** Monday, November 20, 2017 7:15 PM
**To:** Jim Creenan <jcreenan@cbattorneys.com>
**Cc:** Trafford Borough Manager <BoroughManager@TraffordBorough.com>
**Subject:** Yeager Property

Jim.....please see attached correspondence on the Yeager property. Any help would be greatly appreciated.

Craig.

Craig H. Alexander,Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA 15239
Office: 724-733-3080
Mobile: 412-310-1599.

## Joanne Parise

| From: | Jim Creenan |
|---|---|
| Sent: | Monday, December 11, 2017 5:52 PM |
| To: | 'Craig Alexander' |
| Cc: | boroughmanager@traffordborough.com |
| Subject: | RE: Yeager Property |

Craig –

Please accept this as Mr. Yeager's proposed plant to address the Borough's concerns. As you are aware, he has already committed substantial resrouces to this property and we request your cooperation in addressing the steps required for the completion of his plan. Ifyou have any question or concern, we invite you to meet to address them.

First, the borough must release Mr. Yeager's bond. This has been a cause for preventing him from doing more work. Until your recent email, we had no information that the borough now condiutioned the release on filling the road with concrete. This work is being planned or performed as conditions allow. We will expect the bond as soon as the concrete is completed.

Second, we proposed the following outline of work:

**Demolition –**



1

**To begin no later than 31 January 2018. Solicitation of contractors has already commenced.**
- Removal of all interior elements except intact wood framing, stairways, and subfloors.
- Removal of roofing membrane and all roof penetrations. Remove and replace damaged roof sheeting. Install titanium roofing underlayment as temporary roofing treatment.
- Remove and replace entry doors at front and rear stairway and basement locations with commercial steel doors.
- Removal of all windows on second and third floors as well as selected windows on first floor. Installation of painted wood sheeting on all window openings.

**Sidewalk Replacement –**

**To begin no later than 31 May 2018. Design has already commenced and solicitation of contractors will follow.**
- Removal and replacement of steel beams and concrete on the Fifth Street side of the building will be done per engineer's specifications.
- Area to be removed and replaced will begin at the recently replaced corner section at the intersection of Fifth St. and Cavitt Ave and proceed continuously to the portion of sidewalk maintained by Trafford Stop n Go.

**Exterior Masonry –**

**To begin no later than 31 July 2018.**
- Removal and replacement of parapet wall per engineer's specifications.
- Repair and pointing of all building exterior walls.

I trust this meets the needs of the borough as Mr. Yeager works hard to complete this project. As indicated, please contact me to discuss or to arrange a meeting.

Would you please confirm whether the above is acceptable to the Borough, and, if not, please give full guidance with reference to adopted standards.

Thank you in advance,

Jim

**From:** Craig Alexander [mailto:CAlexander@dicelaw.com]
**Sent:** Monday, December 4, 2017 7:22 AM
**To:** Jim Creenan <jcreenan@cbattorneys.com>
**Cc:** boroughmanager@traffordborough.com
**Subject:** Re: Yeager Property

No problem.

Sent from my iPhone

On Dec 3, 2017, at 11:20 PM, Jim Creenan <jcreenan@cbattorneys.com> wrote:

Probably Friday.

2

**From:** Craig Alexander [mailto:CAlexander@dicelaw.com]
**Sent:** Friday, December 1, 2017 3:07 PM
**To:** Jim Creenan <jcreenan@cbattorneys.com>
**Cc:** boroughmanager@traffordborough.com
**Subject:** Re: Yeager Property

How much time do you think you will need?

Sent from my iPhone

On Dec 1, 2017, at 2:57 PM, Jim Creenan <jcreenan@cbattorneys.com> wrote:

> Good afternoon Craig —
> I have talked with the client and he has had an engineer to review the building. We are
> working on a plan to address the borough's concerns, but I have not been able to
> schedule a meeting so that I can understand some of the detail. I hope to be able to do
> so within the week. Can we have a short additional time to respond to your request?
> Thanks, Jim
>
> **From:** Craig Alexander [mailto:CAlexander@dicelaw.com]
> **Sent:** Tuesday, November 21, 2017 4:36 PM
> **To:** Jim Creenan <jcreenan@cbattorneys.com>
> **Cc:** boroughmanager@traffordborough.com
> **Subject:** Fwd: Yeager Property
>
> Jim....see below in response to your query.
>
> Craig.
>
> Sent from my iPhone
>
> Begin forwarded message:
>
> > **From:** Trafford Borough Manager
> > <BoroughManager@TraffordBorough.com>
> > **Date:** November 21, 2017 at 3:50:09 PM EST
> > **To:** 'Craig Alexander' <CAlexander@dicelaw.com>
> > **Subject:** RE: Yeager Property
> >
> > Hi Craig,
> >
> > The sewer bond has not been released because the cut Mr. Yeager
> > made in the road was not repaired. The road needs to be filled with
> > concrete then inspected by either the borough engineer or Public
> > Works. Due to safety concerns and lack of action on Mr. Yeager's part,
> > Public Works temporarily filled the area with patch but it must be filled
> > with concrete.
> >
> > Please call with any questions.
> >
> > Thank you,

3

Ashley

**From:** Craig Alexander [mailto:CAlexander@dicelaw.com]
**Sent:** Monday, November 20, 2017 8:12 PM
**To:** Jim Creenan <jcreenan@cbattorneys.com>
**Cc:** Trafford Borough Manager
<BoroughManager@TraffordBorough.com>
**Subject:** RE: Yeager Property

I am unaware but will follow up and provide you a response tomorrow.

Craig.

Craig H. Alexander,Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA 15239
Office: 724-733-3080
Mobile: 412-310-1599.

**From:** Jim Creenan [mailto:jcreenan@cbattorneys.com]
**Sent:** Monday, November 20, 2017 7:38 PM
**To:** Craig Alexander <CAlexander@dicelaw.com>
**Cc:** Trafford Borough Manager
<BoroughManager@TraffordBorough.com>
**Subject:** RE: Yeager Property

Thank you Craig.

To date, I have not received confirmation of the Borough's release of
the sewer bond. Has this happened? If not, why not? This has been
holding up needed funds to address other issues. I appreciate any
assistance you might be able to provide.

Jim

JAMES W. CREENAN, ESQUIRE
CREENAN & BACZKOWSKI, PC
TOWN SQUARE PROFESSIONAL BUILDING
Suite 304
3907 Old William Penn Highway
Murrysville, PA 15668
(724) 733-8832
(724) 733-8834 (FAX)
JCREENAN@CBATTORNEYS.COM
WWW.CBATTORNEYS.COM

IMPORTANT NOTICE. THE E-MAIL COMMUNICATION, TOGETHER WITH ANY
ATTACHMENTS, IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS
ADDRESSED AND MAY CONTAIN CONFIDENTIAL INFORMATION THAT IS PRIVILEGED AND/OR
CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF YOU ARE NOT
THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING
THIS MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU

RECEIVED THIS COMMUNICATION IN ERROR. ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU RECEIVE THIS COMMUNICATION IN ERROR PLEASE CALL THE TELEPHONE NUMBER LISTED ABOVE, OR SEND A RETURN E-MAIL, AND THEN DELETE THIS MESSAGE, TOGETHER WITH ANY ATTACHMENTS.

**From:** Craig Alexander [mailto:CAlexander@dicelaw.com]
**Sent:** Monday, November 20, 2017 7:15 PM
**To:** Jim Creenan <jcreenan@cbattorneys.com>
**Cc:** Trafford Borough Manager
<BoroughManager@TraffordBorough.com>
**Subject:** Yeager Property

Jim…..please see attached correspondence on the Yeager property.  Any help would be greatly appreciated.

Craig.

Craig H. Alexander, Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA  15239
Office:  724-733-3080
Mobile: 412-310-1599.

# Creenan & Baczkowski, PC
## A T T O R N E Y S

**Murrysville Office**
Town Square Professional Building
Suite 304
3907 Old William Penn Highway
Murrysville, PA 15668

(724) 733-8832

JAMES W. CREENAN
MOLLY M. CREENAN
MICHAEL P. GAETANI
FRANK W. JONES (OF COUNSEL)

www.cbattorneys.com

**McKeesport Office**
City Hall Building
Suite 305
502 Fifth Avenue
McKeesport, PA 15132

(412) 675-0940

WALTER F. BACZKOWSKI (1942-2017)
ELIZABETH BAILEY (1920-2016)

**Writer's Email:**
jcreenan@cbattorneys.com

January 4, 2018

Craig H. Alexander, Esquire
Bruce Dice & Associates PC
787 Pine Valley Dr. Ste E
Pittsburgh, PA 15239

Re:   *501 Cavitt Avenue*
      Our File No. 16885

Dear Mr. Alexander:

Please allow this to confirm that I submitted Mr. Yeager's proposed plan (**"Plan"**) to address the Borough's concerns relating to 501 Cavitt Avenue, Trafford, Pennsylvania to you by email on December 11, 2017.

As I have not received any response from you, I assume that the Plan is acceptable to the Borough. Accordingly, Mr. Yeager will proceed with completing the Plan as proposed.

In the meantime, the Borough should refrain from taking any further action relating to Mr. Yeager's property.

If you have any questions or concerns, please feel free to contact me to discuss or to arrange a meeting.

Thank you for your anticipated cooperation in resolving this matter.

Very truly yours,

James W. Creenan

JWC/jlp

cc:   Frank Yeager

**EXHIBIT**
**15**

## Joanne Parise

| | |
|---|---|
| **From:** | Craig Alexander <CAlexander@dicelaw.com> |
| **Sent:** | Saturday, January 20, 2018 4:14 PM |
| **To:** | Joanne Parise |
| **Cc:** | Jim Creenan |
| **Subject:** | RE: 501 Cavitt Avenue |

Mr. Creenan....i forwarded your client's "plan" to the Borough for review and consideration.  Be advised that it has NOT been accepted at this time and there is no understanding or agreement between your client and Trafford Borough.  I am meeting with Craig McVicker on this and other issues next week.  If anything changes, I will let you know.

Craig H. Alexander, Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA  15239
Office:  724-733-3080
Mobile: 412-310-1599.

**From:** Joanne Pototsky [mailto:jpototsky@cbattorneys.com]
**Sent:** Friday, January 05, 2018 9:08 AM
**To:** Craig Alexander <CAlexander@dicelaw.com>
**Cc:** Jim Creenan <jcreenan@cbattorneys.com>
**Subject:** 501 Cavitt Avenue

Mr. Alexander,

Please see attached.  The original will follow by U.S. Mail.

Joanne L. Pototsky
*Paralegal*
Creenan & Baczkowski, PC
3907 Old William Penn Highway
Suite 304
Murrysville, PA 15668
(724) 733-8832
(724) 733-8834 (fax)

**EXHIBIT**
**16**

1

**Murrysville Office**
Town Square Professional Building
Suite 304
3907 Old William Penn Highway
Murrysville, PA 15668

(724) 733-8832

JAMES W. CREENAN
MOLLY M. CREENAN
MICHAEL P. GAETANI
FRANK W. JONES (OF COUNSEL)

# Creenan & Baczkowski, PC
### A T T O R N E Y S

www.cbattorneys.com

**McKeesport Office**
City Hall Building
Suite 305
502 Fifth Avenue
McKeesport, PA 15132

(412) 675-0940

WALTER F. BACZKOWSKI (1942-2017)
ELIZABETH BAILEY (1920-2016)

Writer's Email:
jcreenan@cbattorneys.com

January 26, 2018

Craig H. Alexander, Esquire
Bruce Dice & Associates PC
787 Pine Valley Dr. Ste E
Pittsburgh, PA 15239

Re:     *501 Cavitt Avenue*
        Our File No. 16885

Dear Mr. Alexander:

I am in receipt of your email correspondence of January 20, 2018.

First, I wish to confirm that I provided Frank Yeager's Plan to address the Borough's concerns regarding 501 Cavitt Avenue to you on December 11, 2017, to which I did not receive a response. By my letter of January 4, 2018, I subsequently confirmed that as we did not receive a response from you, Mr. Yeager would proceed with the Plan as proposed, to which, again, I did not receive a response.

Accordingly, after over five weeks of not receiving any response or objection, I am somewhat perplexed by your January 20, 2018 communication that the Plan is not acceptable.

In any event, I ask that you advise me why Mr. Yeager's Plan is not acceptable to the Borough. Additionally, I request that we schedule a meeting to discuss the Borough's concerns and, moreover, what is within its authority to be concerned about.

In the meantime, the Borough should refrain from taking any further action relating to Mr. Yeager's property.

Please contact me upon your receipt to discuss.

Thank you for your attention to this matter.

Very truly yours,

James W. Creenan

JWC/jlp

cc:    Frank Yeager

**EXHIBIT**
**17**



# CODE ENFORCEMENT AGENCY
1633 Route 51, Suite 100, Jefferson Hills, PA 15025
1-866-410-4952    www.cea-code.com

**January 31, 2018**

Creenan & Baczkowski, PC
Towne Square Professional Bldg.
3907 Old William Penn Highway
Murrysville, PA 15688

### RE: <u>501 CAVITT AVENUE, TRAFFORD, PA</u>

## <u>NOTICE OF CONDEMNATION</u>

Dear Attorney Creenan,

Pennsylvania Uniform Construction Code Administrative regulation 403.84 states that:

(a) A building code official may determine that a building, structure or equipment is unsafe because of inadequate means of egress, inadequate light and ventilation, fire hazard, other dangers to human life or the public welfare, illegal or improper occupancy or inadequate maintenance. A vacant building or structure that is not secured against entry is unsafe under this section.

(b) When a building code official determines the existence of an unsafe condition, the building code official shall order the vacating of the building or structure.

(c) A building code official shall serve a written notice on the owner or owner's agent of the building, structure or equipment that is unsafe under this section. The notice shall contain the order to vacate the building, structure or seal the equipment out of service and state the unsafe conditions, required repairs or improvements. The order shall be served by certified mail or personal service to the owner or to the owner's agent's last known address or on the owner, agent or person in control of the building, structure or equipment. A building code official shall post the written notice at the entrance of the structure or on the equipment if service cannot be accomplished by certified mail or personal service.

(d) When a building or structure is ordered vacated under this section, the building code official shall post a notice at each entrance stating that the structure is unsafe and its occupancy is prohibited.

(e) A building code official may not rescind the order to vacate until the owner abates or corrects the unsafe condition.

**A sealed report by a Pennsylvania Architect or Engineer is now required to be presented to the Building Code Official prior to any persons entering into or onto the property or prior to any additional work or constructive efforts made the property.**



**EXHIBIT**
**18**

**DETERMINATION:**

**I.** It is my determination as Building Code Official the structure know as:
501 Cavitt Avenue, Trafford, PA, is unsafe and unfit for human habitation or use (Title 34 Part XIV Section 403.84). It is my further determination that portions of the premises constitute a hazard, a threat to human occupancy, and show copious evidence of neglect and inadequate maintenance; specifically as stated in the findings. The structure presents a clear and present danger to life and property. Occupancy of the structure above is denied and may not continue until all code related issues are addressed to the satisfaction of the Building Code Official in accordance with the Pennsylvania Uniform Construction Code (35PA Code 7210.101 et seq.) and a valid Certificate of Occupancy is granted as provided under Title 34 part XIV section 403.65 or 403.46 of the Pennsylvania Code. Further Occupancy of these portions of the structure without a valid Certificate of Occupancy is a criminal offence in Pennsylvania and subject to severe penalty.

**II.** You are ordered to immediately vacate the affected portions of the structure and secure this structure and site against unauthorized entry. You are further directed to make immediate application for and obtain a Building Permit to remove, repair or replace many areas of the findings that exhibit outward signs of structural failure or otherwise unsafe conditions. Your application must include at the minimum a narrative or drawing prepared, signed and sealed by a Registered Design Professional licensed to work in the State of Pennsylvania. You must upon receipt of the appropriate permits and approvals make immediate repairs and/or removal of all unsafe conditions. All Structural repairs must be inspected and approved in accordance with Title 34 Part XIV Section 403.42 & 403.45 or 403.62 & 403.64 of the Pennsylvania Code. The Order to Show Cause allows up to 30 days for a written response or resolution/repair of the problems. The Order does not relieve your responsibility to immediately vacate the affected portions of your structure and secure them against unlawful entry. Failure to comply with the Order to Show Cause within 30 days or failure to immediately vacate the affected portions of the structure could result in severe actions being taken against you and the property. Please be further advised that under 35PA Code 7210.903 violations are occurring daily and that each day is viewed as a new violation. Violations of the Uniform Construction code are criminal in nature and carry severe penalty.

**III.** Citing various prior contacts with the Municipal Officials it seems obvious that you do not intend to further comply with the requests to repair and protect.

**IV.** Be advised that I have ordered this structure and associated site Vacated and declared it Unsafe as per Title 34 part XIV Section 403.84. I have asked the Municipality to seek Court approval to remove the hazards and mitigate damages, which could include court costs. This could affect your property rights. You should contact legal counsel at once.

Further occupancy of use of this facility without the necessary approvals and permits is a violation of state and local law and ordinance. This includes the use of the structure or site as a storage facility of any kind.

If you do not intend to comply with this order you are advised to contact an attorney at once. You have the right to legal counsel. If you do not intend to fully comply with this Order to Vacate you should take this letter to your attorney at once. If you do not have an attorney or if you cannot afford one please contact legal aid. Pennsylvania Legal Aid Network, Inc., The Louise Brooking Building, 118 Locus Street, Harrisburg, PA 17101-1414, Phone 711-236-9486 or 800-322-7572, Fax 717-233-4088.

You have the right to appeal decisions of the Building Code Official. Your appeal must be on a form provided by the municipality; this may be obtained by contacting the office initiating this correspondence. Under Title 34 part XIV Section 403.122 (f) A board of appeals shall only consider the following factors when deciding an appeal under section 501(c)(2) of the act:

(1) The true intent of the act or Uniform Construction Code was incorrectly interpreted.

(2) The provisions of the act do not apply.

(3) An equivalent form of construction is to be used.

(g) A board of appeals may consider the following factors when ruling upon a request for extension of time or the request for variance:

(1) The reasonableness of the Uniform Construction Code's application in a particular case.

(2) The extent to which the granting of a variance or an extension of time will pose a violation of the Uniform Construction Code or an unsafe condition.

(3) The availability of professional or technical personnel needed to come into compliance.

(4) The availability of materials and equipment needed to come into compliance.

(5) The efforts being made to come into compliance as quickly as possible.

(6) Compensatory features that will provide an equivalent degree of protection of the Uniform Construction Code.

Sincerely,

Craig I. McVicker, BCO
Building Code Official
Trafford Borough

CC: Borough Manager, Solicitor



# CODE ENFORCEMENT AGENCY
1633 Route 51, Suite 100, Jefferson Hills, PA 15025
1-866-410-4952    www.cea-code.com

# CONDEMNED

AS

# DANGEROUS AND UNSAFE

**This Structure known as:** *501 Covitt, Trafford, PA*

# DANGER – KEEP OUT or AWAY

**All persons are notified to keep out as long as this notice remains posted by the Building Code Official. Any person willfully destroying, mutilating or removing this card will be CRIMINALLY PROSECUTED to the fullest extent of the Law. ANY PERSONS entering into or onto the premises shall be PROSECUTED just the same.**

**\*\*Under the authority of the Pennsylvania Uniform Construction Code (35PA Code 7210.101 et seq.)**

_____11/30/18_____
Date Posted

_____
Building Code Official

```
 1    IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY, PA.
 2                        CIVIL DIVISION
 3                          * * *
 4    LANALEX CLOYD, INC,                 )
 5                  Plaintiff,            )
 6         vs.                            )   No. 807 of 2018
 7    TRAFFORD BOROUGH,                   )
 8                  Defendant.            )
 9                          * * *
10
11              HEARD:  May 21, 2018
12         BEFORE:  HONORABLE HARRY F. SMAIL, JR.
13                          * * *
14              INJUNCTIVE RELIEF HEARING
15                          * * *
16                   A P P E A R A N C E S
17    On behalf of the Plaintiff:
18        James Creenan, Esquire
          Michael Gaetani, Esquire
19    On behalf of the Defendant:
20        Craig Alexander, Esquire
21
22
23
24
25
```

1

```
 1    I N D E X
 2    WITNESS:                              PAGE:
 3
 4    CRAIG McVICKER
      Cross-Examination by Mr. Creenan         5
 5    Direct Examination by Mr. Alexander      37
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

2

**EXHIBIT 19**

```
 1              May 21, 2018 - 9:20 a.m.
 2              P R O C E E D I N G S
 3                       * * *
 4         THE COURT:  Call the case of Lanalex
 5    Cloyd Incorporated, Plaintiff, versus Trafford Borough,
 6    Defendant, at Case No. 807 of 2018.
 7         Will counsel please enter their
 8    appearance for the record?
 9         MR. CREENAN:  James Creenan for Lanalex
10    Cloyd Incorporated, Plaintiff.
11         MR. GAETANI:  Michael Gaetani also for
12    the Plaintiff.
13         MR. ALEXANDER:  Attorney Craig Alexander
14    for the Defendant, Trafford Borough.
15         THE COURT:  Counsel, are you ready to
16    call your first witness?
17         MR. CREENAN:  Your Honor, before we
18    proceed with the evidence, I think it would streamline
19    today's process.  We have had many discussions with the
20    Borough and we believe we have complied with everything
21    the Borough has asked for, and we have provided sealed
22    engineers' reports.  There were two issues that we have
23    that our engineer indicates that if we're permitted to
24    apply for a building permit, those repairs would address
25    any possible concerns that the condemnation order
      raised.  So, I think that's probably the quickest issue.
```

3

```
 1    But before we get into the evidence, the condemnation
 2    notice we believe is facially defective for procedural
 3    and substantive due process reasons.
 4         THE COURT:  Would you like to respond,
 5    Mr. Alexander?
 6         MR. ALEXANDER:  Thank you, Your Honor.
 7    We wouldn't be here today if we agreed that they
 8    complied with everything that Trafford Borough has
 9    requested.  Mr. McVicker is here; he is our commercial
10    code inspector.  They haven't provided an engineering
11    report.  It's not a report as we requested; it's more of
12    an observation, doesn't come with any plans, no detail,
13    no anything.  We still don't have any permits, nothing
14    sealed.  Your Honor, with regard to substantive and
15    procedural due process arguments, I'm not aware of any.
16    We can address this as we go.
17         THE COURT:  So, it appears, Mr. Creenan,
18    that they are still not in agreement that this should
19    not proceed or move forward.
20         MR. CREENAN:  Your Honor, I suppose I'm
21    not surprised because we have done everything they have
22    asked over the last three years, and every time we have
23    done that, we have always been told there's still
24    something else.  So, I'm still at a loss.  We did
25    provide a sealed engineering drawing, and they have not
```

4

identified in their condemnation notice any other issues
that are addressed by that report.

    MR. ALEXANDER:  We have our expert here
to address those.

    MR. CREENAN:  Your Honor, if -- that
being the case, our first witness is Craig McVicker.

    THE COURT:  Okay.  If you will come
around that way and we will swear you in.

CRAIG McVICKER, having been
first duly sworn, was examined
and testified as follows:

    THE COURT:  Okay.  You may take the
witness stand.  You can just the microphone as you need
to.

    THE WITNESS:  Thank you.

    * * *

    CROSS-EXAMINATION

BY MR. CREENAN:

Q.    Good morning, sir.

A.    Good morning.

Q.    Could you please identify yourself for the
record?

A.    Certainly.  Craig McVicker, M-c-V-i-c-k-e-r.

5

---

I am the building code official for the Borough of
Trafford representing the Commonwealth of Pennsylvania.

Q.    Sir, how long have you been the building code
official for the Borough of Trafford?

A.    I was retained under a contract through our
company, CEA, Code Enforcement Agency, and I believe we
were voted in by counsel in January of 2016.

Q.    Mr. McVicker, did you cause or did you
provide, or prepare I should say, a notice of
condemnation relating to the property at 501 Cavitt
Avenue in the Borough of Trafford?

A.    Yes, sir.

Q.    Prior to preparing the document, did you
visually observe the interior of the structure?

A.    No, sir.

Q.    Did you observe the exterior of the
structure?

A.    Yes, sir.

Q.    What visual observation did you make, and who
were you with, if anyone?

A.    At the time of the visual of the exterior
proportions, I was with a gentleman by the name of
Joseph Probo, P-r-o-b-o.  Joe Probo was, at the time,
the code enforcement officer and zoning officer with the
Borough of Trafford.  I was called out by his attention

6

---

to come to 501 Cavitt Avenue with the report that there
were bricks from a parapet wall that were falling on to
the street side of Cavitt Avenue in the Borough of
Trafford.

    I responded to his request to which point I
did observe that there were bricks that were falling
from the building on to the main road in Trafford
Borough.  So, an exterior perspective at that point had
begun to where we did an evaluation by line of sight to
take a look at all of the exterior portions of the
building as best we can from the street side keeping
from a safe perspective.

    I notified the Borough subsequent to my
observation that it was necessary to put up a gated
fence area or perimeter, if you will, to keep the
traffic and pedestrian patterns around the said building
safe from anybody being hit from any obstructions that
may potentially fall in or around the area.

Q.    Sir, at that time were you aware that
Mr. Yeager had initiated, if not completed, work
required by the Borough on the sewer line for the
building?

    MR. ALEXANDER:  I'm going to object to
that as to relevance with regard to whether a structure
is an unsafe structure.  I believe that question goes to

7

---

their complaint in mandamus that they recently filed
with regard to the issue of whether the bond to that
work needs to be replaced.  I don't believe it's
relevant in any manner with regard to this motion for
preliminary injunction.

    THE COURT:  Response?

    MR. CREENAN:  Your Honor, the relevance
is that the -- not only did we plead that in our motion,
and not only have they not filed a response to our
motion, that initial action was a requirement of the
borough.

    Our problem with the Borough here has
been we've done with the Borough requires, and then they
don't do what their supposed to do, which is why this
building has been sitting for three years without any
real activity.  The bond should have been released upon
completion of this substantial portion of the work,
which was done years ago.  $20,000 is sitting in the
borough that has to be released, that they refuse to
release, and as part of a lot of the predicate prior
factual basis before this notice of condemnation was
issued, we informed the Borough that if those funds were
released, we would immediately apply for a building
permit.

    The building permit has a time limit, and

9

```
 1    we didn't want to apply for a building permit and have
 2    it expire, especially when the Borough is being
 3    uncooperative.  I believe it is relevant.
 4                THE COURT:  I'm going to overrule the
 5    objection.  It is relevant.  Answer the question.  Do
 6    you recall it?
 7                THE WITNESS:  Could you repeat the
 8    question?
 9    BY MR. CREENAN:
10    Q.        Sir, at the time you issued the Notice of
11    Condemnation, were you aware that there was an issue
12    with the bond for the sewer for the property?
13    A.        Yes, sir.
14    Q.        Had you mentioned that anywhere in your
15    Notice of Condemnation?
16    A.        No, sir.
17    Q.        What was the issue with the work of the
18    sewer?  What needed to be done to complete the sewer
19    line, if anything?
20    A.        That preceded my presence at the Borough of
21    Trafford.
22    Q.        Can you speak to what was required at all,
23    sir?
24    A.        No, sir.  I wasn't involved with that
25    project.
```

```
 1    A.        Yes, sir.
 2    Q.        Is there a reason you didn't incorporate that
 3    into your letter, the Notice of Condemnation?
 4    A.        It's my belief as the building code official
 5    that one is not related to the other.
 6    Q.        Sir, what are the issues with the building
 7    that required you or caused you to write the January 31
 8    Notice of Condemnation?
 9    A.        The building as we have --
10    Q.        Sir, if I can just ask you, can you identify
11    a particular part of the structure that required you to
12    write this notice?
13    A.        Certainly.  Dilapidated hazard of the
14    structural integrity of the building.
15    Q.        What part of the building was dilapidated?
16    A.        Specifically the parapet wall and the
17    functionality of the roof, which we could clearly
18    observe that it was day-lighted from street level
19    looking up through the windows.
20    Q.        Did you take any measure to examine the
21    parapet wall closer?
22    A.        No, sir.  I requested an engineer from your
23    client.
24    Q.        So between the time of your first observation
25    with Mr. Pro...
```

```
 1    Q.        Sir, I'd like to point your attention to the
 2    timeframe of May 2016.  At that time, do you recall that
 3    I was involved on behalf of the property owner?
 4    A.        Yes, sir.
 5    Q.        Okay.  Sir, did you provide to me an e-mail
 6    that indicated that the bond would be released once the
 7    work being performed passes the sanitary final
 8    inspection?
 9    A.        That was the information that was given to
10    me.  Yes, sir.
11    Q.        And that's the information you passed along
12    to me?
13    A.        Yes, sir.
14    Q.        And at that time you also were asking for a
15    schedule; is that correct?
16    A.        Yes, sir.
17    Q.        So, you would agree with me that you did have
18    knowledge of the issue with the sanitary sewer line
19    prior to issuing this report?
20    A.        As a project, yes, sir.
21    Q.        Were you aware that the building owner was
22    requesting release of the bond for the sewer work?
23    A.        Yes, sir.
24    Q.        And you were aware of that before you wrote
25    this letter?
```

```
 1    A.        Probo.
 2    Q.        Mr. Probo?
 3    A.        Yes.
 4    Q.        Did he ever go back to the building to see it
 5    again before you wrote this letter?
 6    A.        Yes.  I went back to the building on two
 7    occasions.  One, would have been in September of 2017,
 8    and one would have been January of 2018.
 9    Q.        Did you do anything at that time to closer
10    examine the parapet wall?
11    A.        No, sir.
12    Q.        For the purposes of the record, would you
13    please tell the Court your understanding of the parapet
14    wall?
15    A.        My understanding of the parapet wall was that
16    there was brick fascia or brick objects that were
17    falling -- protruding from the parapet wall on to the
18    street side from a four-level elevation.
19    Q.        Is the parapet wall at the roof level?
20    A.        Yes, sir.
21    Q.        In this particular structure there, that is a
22    brick facade on the parapet; correct?
23    A.        It's been established as a brick facade.
24    Yes, sir.
25    Q.        And the brick facade, did you have any
```

examination of all sides of the building and all of the
bricks on the parapet wall?

A.     No, sir.  As a building code official, I ask
for an engineer's report.

Q.     Did you photograph any of the bricks?

A.     Yes, sir.

Q.     How many bricks fell from there?

A.     I did not count them.  There were several.

Q.     Where do you see the bricks?

A.     On the street.

Q.     Were you able to compare those bricks with
those that were on this particular building?

A.     No forensic pattern was made on that
observation.

Q.     Are you aware that there are other buildings
on the street that are in worse condition than 501
Cavitt?

A.     No, I did not.

Q.     Has the Borough called you to look at any
other surrounding structures that may be in worse
condition?

A.     Yes, sir.

Q.     Are those brick structures?

A.     Yes, sir.

Q.     Thank you.  Sir, I am going to hand you what

13

---

issue with as the basis for your condemnation notice?

A.     I believe in Subsection A.

Q.     Where are you pointing to, sir?

A.     In Subsection A.

Q.     What page, sir?

A.     On the first page of the cover page under
inadequate maintenance.  Structural integrity of the
building would be covered under inadequate maintenance.
I asked for an engineer's report due to the stability
and integrity of the building.

Q.     Would you agree with me that no where in this
report do you identify a particular structural component
or building component or part of the building that you
are taking issue with?

A.     A condemnation of the building as a whole,
sir.  It wouldn't be in particular.  I'm deeming the
building as a whole condemned.

Q.     Based upon the --

A.     My observation of the components.  Yes, sir.

Q.     Sir, no where in here do you identify your
observations, do you?

A.     No, sir.  It's the building as a whole.

Q.     How would anyone know what you're complaining
about by looking at this particular notice?

A.     In communication I would suppose.  I don't

15

---

we will mark as Plaintiff's 1, the Notice of
Condemnation.

               May I approach, Your Honor?

               THE COURT:  You may.  Are you requesting
to move this into evidence now?

               MR. CREENAN:  Not yet?

               THE COURT:  Okay.

BY MR. CREENAN:

Q.     Mr. McVicker, is this the Notice of
Condemnation you referenced in your answer to my
question?

A.     Yes, sir.

Q.     You agree with me it's a four-page document
here?

A.     Yes, sir.

Q.     Let's take a look at that a little closer.
Can you tell me where in this notice you mention the
parapet wall?

A.     I don't believe that it's cited inside.

Q.     Can you point out where anywhere in this
notice you reference the roof?

A.     I don't believe it's cited anywhere in
inside.

Q.     Can you point out anywhere where you talk
about a particular building component that you're taking

14

---

know how to answer that.

Q.     If we're just looking at your notice, and
this -- you say this is a legal notice at the end;
right?

A.     Yes, sir.

Q.     If we are looking just at this notice, how
would someone in the Borough, or someone who reads this,
know what you're talking about that needs to be done by
the property owner?

A.     There's in bold a sealed report by a
Pennsylvania architect is now required to be presented
to building code official.  So, I'm asking for an
engineer to enter into and on to the property to inform
me as to the integrity of the building.  Yes.

Q.     If you were to broad this notice to the
engineer, how would the engineer know what you're
concerned about?

A.     The engineer would call me directly and ask
me as to what my issues were regarding this.

Q.     Is there any reason you did not or could not
put into this report the findings that you were
concerned with?

A.     Yes, sir.

Q.     What's that?

A.     The building as a whole, the entire building,

16

**Page 17**

```
1   is condemned, not a particular section.  If I called out
2   a particular section, it would be germane to that
3   section being that something inside of the there because
4   it is condemnable if they found many other factors.  I
5   would also have to go back and re-include several of
6   those other factors.
7           We condemn the building allowing an engineer
8   to observe it for structural integrity to call out all
9   the issues of the building to us so that way we can work
10  on it as an unsafe structure.  I don't do a forensic
11  pattern -- investigation pattern to the details of the
12  integrity.  That's up to a licensed architect engineer,
13  which is what we requested here.  We specifically stated
14  out inadequate maintenance the building as a whole, not
15  a particular end of the building.
16  Q.      And you are referencing the Uniform
17  Construction Code; correct?
18  A.      The uniform -- a condemnation pattern works
19  directly in conjunction with the Uniform Construction
20  Code.  Yes, sir.
21  Q.      Is there anything under the Uniform
22  Construction Code that allows you or prevents you from
23  identifying, for the benefit of the property owner or
24  his hired engineer, the exact problem that you are
25  concerned with?
```

**Page 18**

```
1   A.      If there's one specific detail, the building
2   code official has an opportunity to cite out the
3   specific detail.  If there are multiple specific
4   details, or too many specific details, then the building
5   code official can call out the building as a whole.
6   Q.      And you told us there were three things;
7   right, that you were concerned about?
8   A.      There were three things that moved me from an
9   unsafe structure to a condemnation at that time.  Yes,
10  sir.
11  Q.      Let's look at Page 2, if you will.  It
12  appears as though you have structured the rest of this
13  in Roman numerals.  The first Roman numeral on Page 2 is
14  part of a determination; is that correct?
15  A.      Yes, sir.
16  Q.      What is a determination under the UCC?
17  A.      What is a determination?
18  Q.      Yes.
19  A.      It's a building code official's opinion.
20  Q.      Are you a licensed engineer?
21  A.      I am not.
22  Q.      Are you a structural engineer?
23  A.      I am not.
24  Q.      Civil engineer?
25  A.      No, sir.
```

**Page 19**

```
1   Q.      Do you have technical engineer?
2   A.      No, sir.
3   Q.      Mechanical engineer?
4   A.      No, sir.
5   Q.      You are not licensed or trained in any of
6   those areas of engineering?
7   A.      No, sir.
8   Q.      Let's look at determination number one.  You
9   are saying it's unsafe and unfit for human habitation.
10  Did you -- before I ask you the question, did you write
11  this up specifically for the Cavitt property, or did you
12  pull this from some other building --
13  A.      This is an excerpt from a main file that is
14  commonly used across the Commonwealth.
15  Q.      In here the second sentence begins, it is by
16  further determination that portions; right?  Do you see
17  that?
18  A.      Yes, sir.
19  Q.      And you don't say what portions?
20          THE COURT:  That's a question, sir.
21  Q.      You don't say what portions anywhere?
22  A.      No, sir.
23  Q.      Of the premises constituting hazard -- I
24  don't know by reading this what is a hazard in your
25  opinion; correct, just by reading this notice?
```

**Page 20**

```
1   A.      The building as a whole.
2   Q.      Sir, you say portions of the premises.  Which
3   portions constitute a premises according to your letter,
4   not according to your words here today?
5   A.      It's not spelled out.
6   Q.      Okay.  Then you say and show copious evidence
7   of neglect and inadequate maintenance.  You don't
8   describe what that is in here, do you?
9   A.      No, sir.
10  Q.      Then, semicolon, specifically as stated in
11  the findings.  But there are no findings in here, are
12  there, sir?
13  A.      They were in the previous letter with regard
14  to the unsafe notice when we were talking about the
15  bricks falling.
16  Q.      They're not in here?
17  A.      No, sir.
18  Q.      There's no other document that is referenced
19  in this letter; correct?
20  A.      No, sir.
21  Q.      So, there are no findings that are
22  incorporated in here or that are specifically mentioned?
23  A.      Other than the opinion of the building code
24  official.
25  Q.      Which you don't express what your opinion is
```

```
 1   other than your conclusion?
 2   A.        The opinion is a condemnation.
 3   Q.        Sir, the next sentence -- the sentence that
 4   begins occupancy of the structure.  Do you see that?
 5   A.        Yes, sir.
 6   Q.        Had anyone applied for a occupancy --
 7   A.        No, sir.
 8   Q.        Why is it relevant as to the occupancy of the
 9   structure?
10   A.        Again, it's an excerpt from a widely used
11   format that's used in condemnation processes in
12   municipalities across the Commonwealth.  It covers a
13   specific section of that code.
14   Q.        You then go on to say that they may not --
15   the building may not be occupied or the structure may
16   not be occupied until a valid certificate of occupancy
17   is granted; correct?
18   A.        Yes, sir.
19   Q.        In the normal building and development
20   process, the certificate of occupancy comes at the end
21   of the process; correct?
22   A.        In new construction?
23   Q.        Yes.
24   A.        Yes, sir.
25   Q.        And this is a -- 501 Cavitt was an unoccupied
```

21

```
 1   with Trafford.
 2   Q.        Was there a valid certificate of occupancy
 3   existing at the time you wrote this?
 4   A.        Yes, sir.
 5   Q.        There was?
 6   A.        There would be a valid -- yes.
 7   Q.        Who was the owner of occupancy permit?
 8   A.        Of the certificate -- I do not know, sir.  I
 9   don't have it.
10   Q.        Did you bring it with you?
11   A.        No, sir.
12   Q.        Does the Borough have that?
13   A.        I don't have that.  I would assume so, yes.
14   The Borough is the holder of these certificates of
15   occupancy.
16   Q.        Was it the current building owner that had
17   the certificate of occupancy?
18   A.        I don't know that, sir.  It preceded my onset
19   at Borough of Trafford.
20   Q.        Let's look at the last sentence of Roman
21   numeral 1 determination.  It says further occupancy of
22   these portions of the structure.  Again, we don't know
23   which portions; correct?
24   A.        Yes, sir.
25   Q.        Without a valid certificate of occupancy is a
```

23

```
 1   structure?
 2   A.        Yes, sir.
 3   Q.        So, there's no one occupying the building
 4   then; right?
 5   A.        Yes, sir.
 6   Q.        But in order for someone to occupy that, they
 7   would need to comply with the UCC?
 8   A.        That's correct.
 9   Q.        All aspects of it; correct?
10   A.        Yes, sir.
11   Q.        Not just the hazard things you tried to
12   identify?
13   A.        Yes, sir.
14   Q.        And that certificate of occupancy, again,
15   comes at the end of that commercial building process?
16   A.        Yes, sir.
17   Q.        So, as of today, if mister owner of the
18   property says I'm not going to occupy the property,
19   there's no need for a certificate of occupancy, is
20   there?
21   A.        No, sir.
22   Q.        Was there restrictive occupancy that you had
23   to revoke?
24   A.        The building was already posted prior to my
25   onset, so it was unoccupied at the time that I came on
```

22

```
 1   criminal offense in Pennsylvania and subject to severe
 2   penalty; correct?
 3   A.        Yes, sir.
 4   Q.        Would you agree with me after you've answered
 5   these questions that your determination, one, has
 6   absolutely no bearing on the issue before the Court, or
 7   that is relevant to a condemnation?
 8   A.        No, sir.  It's still unfit for human
 9   occupancy.
10   Q.        Okay.  But as far as the occupancy, that does
11   not apply; correct?
12   A.        There is no occupancy.
13   Q.        There was none?
14   A.        Correct.  Yes, sir.
15   Q.        So, that section of your determination
16   doesn't apply?  It's irrelevant?
17   A.        It did not apply to the specific.
18   Q.        Your last statement, which includes a try of
19   criminal prosecution, doesn't apply also because there's
20   no one occupying it?
21   A.        That's correct.
22   Q.        Why did you include that if it didn't apply?
23   A.        Again, it's a generally widely used format
24   that we used in condemnation processes throughout the
25   Commonwealth.
```

24

Q. Does that say -- what you just said about the
widely used, et cetera, is that stated anywhere to the
property owner in your notice of determination?

A. No, sir.

Q. Let's look at Roman numeral 2. Again, you
are saying that someone should vacate the affected
portions of the structure -- we've gone through that --
and secure the structure and site against unauthorized
entry; is that correct?

A. Yes, sir.

Q. Now, at this time in January of 2018, the
structure had already been secured; correct?

A. Yes, sir.

Q. So that does not apply. Sir, the rest of
number 2 talks about a process -- can you tell us why
you generally, without reading it, tell us what's the
purpose of the second determination?

A. Again, I'm directing him to get in touch
with -- the property owner to get in touch with us to
obtain a permit or to otherwise help fix the structure.
You know, your application should -- it's all relevant.
It should include a minimum narrative of drawings
prepared or still by registered design professional,
which the Commonwealth requires under the UCC.
Structural repair -- I mean, it's just citing different

25

---

confused by your question.

Q. Before you wrote this report?

A. Before I wrote that report?

Q. Yes.

A. I would say, no, sir.

Q. You were not aware of that?

A. No, sir.

Q. Would you be surprised to learn that the
property owner did, in fact, provide a plan of
correction to the Borough prior to you writing this
Notice of Condemnation?

A. We have a difference in our opinion with the
word plan.

THE COURT: Be responsive to the
question.

A. No, sir.

Q. Sir, let's take the word plans -- and I don't
want the record to be unclear in any way. If you think
I'm describing the word plan or using the word plan as a
blueprint or drawing, is that what you meant?

A. Yes, sir.

Q. How about a several paragraph description of
work to be performed on the property by the property
owner?

A. Yes, sir.

27

---

potions of the code to specify in the proceedings of the
this.

Q. Very well. Are you intending to say -- I
don't want to put words in your mouth -- you want the
engineer to provide a drawing of the area that you are
concerned with?

A. Yes, sir, and among other things.

Q. And that would be through an application for
a building permit?

A. Yes, sir.

Q. Are you aware of the efforts that the
property owner made to address the concerns of the
Borough prior to you providing this letter?

A. Yes, sir. I have limited awareness.

Q. Were you aware that the property owner
provided a plan to correct the very things that you were
concerned about, provided that to the Borough toward the
end of 2017?

A. I'm sorry. Can you repeat that question
again? I'm sorry.

Q. Were you aware that the property owner
provided to the Borough a plan to correct the very
things you were concerned with and provided that plan by
the end of 2017?

A. Prior to me or you're saying in 2017? I'm

26

---

Q. Was that provided to you before you wrote
this notice?

A. Yes, sir.

Q. When was it provided to you?

A. I believe in -- I don't have -- without my
materials, I don't have a specific date, but I believe
in 2017.

Q. You don't reference that in here, do you?

A. No, sir.

Q. Did you provide any written response to the
property owner's plan to perform remedial work on the
things that you identified?

A. No, sir.

Q. Why not?

A. The burden of the information would have to
come from the building owner back to the Borough to
submit the plan in proper manner so the Borough would be
able to review those plans in conjunction with his
request. Nothing had been officially filed.

Q. Sir, how hard would it have been for you to
say I need to see building plans before I can comment on
your plan of correction?

A. I had stated that on several occasions.

Q. Did you provide that in response to the
property owner's plan submitted to the Borough?

28

A.      Yes, sir.  I believe that there was an e-mail
exchanged.
Q.      Did you bring that with you, sir?
A.      I may have, yes, in my materials.
Q.      Let's get the record clear.  I'll hand you
what we'll mark as Exhibit 2.  Sir, when did you first
see the contents of this e-mail, which is from myself to
Mr. Alexander here, copied to Borough manager on
December 11, 2017.
A.      I do not know.  Specifically, I do not know.
You're asking me for specific -- I do not know.
Q.      Can you show the Court anything in writing
that you provided back to the property owner as to your
comments on any aspect of the work that's identified
here?
A.      Yes, sir.
Q.      What's that?
A.      I believe that the condemnation notice
clearly spells out the information -- on the face sheet
on the condemnation clearly spells out a directive of
how to correct the action, specifically, for what's
being requested in this e-mail.
Q.      So, between December 11th, you had no writing
to the property owner other than the Notice of
Condemnation?

we had here in the courtroom just outside with regard to
the procedural aspects and plans of what were required.
Q.      Sir, if that was in March -- middle of
March -- when we filed our motion, that was the first
conversation you had about your observations of this
December 2017 plan?
A.      Yes, sir.  The plan that was filed in
December -- that you're referring to in December of 2017
is what, as a building official, I would take an excerpt
of being a suggestion.  It's not a formal plan and it's
not something that has formally been given to the
Borough of Trafford.  It's a suggestion.  A formal plan
or something would be something that would be applied
for in conjunction with the procedures of the UCC.
        I expressed that in the face page of my
condemnation notice by relevance of bringing a sealed
engineered drawing along with a designed set of plans
and an application could work out this process on the
building of 501 Cavitt.  So, in my mind, this is
relevant; this was given back in January as a portion to
your question of did we respond.  This is the response
from the Borough.
Q.      Just to be clear, you had no conversations
with the property owner about the plan after December
11th until you wrote this --

A.      On December the 11th?
Q.      Between December 11th, when this was sent to
the Borough, and you don't know when you got it, did you
provide any writing back to the property owner?
A.      No, sir.
Q.      Sir, do you agree that the attachment here in
this e-mail includes statements indicating when certain
work would be performed?
A.      Yes, sir.
Q.      And when -- what work would be performed?
A.      Yes, sir.
Q.      And design and contractors had been
consulted, and this is our plan; right?
A.      Yes, sir.
Q.      Wasn't it true that the Borough required the
property owner to have a plan before he would be
permitted to do work?
A.      Yes, sir.
Q.      Why didn't the Borough provide a response to
his plan prior to issuing the condemnation notice?
A.      I believe that we did.  I believe that we had
the conversation.
Q.      When?
A.      I believe that there were a couple of
conversations.  One was preceding the first hearing that

A.      No, sir.
Q.      Thank you.  And any discussions that have
occurred, occurred subsequent to or the same date
following the time we presented a motion where you came
to court with Mr. Alexander and Mr. Gaetani?
A.      Yes, sir.
Q.      You have had discussions since that date;
correct?
A.      Yes, sir.
Q.      What remains to be done, in your opinion as
the code enforcement officer in Trafford, for mister
property owner to be able to go forward and complete
repairs?
A.      That the structural engineer's opinion that's
been submitted to the Borough of Trafford be transferred
into a designed set of drawings along with an
application to the Borough of Trafford that can be
reviewed and a plan review and permitted to the
applicant so that inspections can take place for the
alterations of his commercial structure.
Q.      Mr. McVicker, after the May court argument
that you attended, right, we had a meeting at
Mr. Alexander's office; is that right?
A.      Yes, sir.
Q.      And one of the things mentioned was the

1  release of the bond for the sewer work?
2  A.      Yes, sir.
3  Q.      Did you have any understanding leaving that
4  meeting --
5            MR. ALEXANDER:  I just want to have a
6  standing objection on the release of the bond.  I think
7  it's completely irrelevant for these proceedings.  I
8  know you have already overruled that objection.  I just
9  want to note for the record my standing objection on
10  that.
11            THE COURT:  The Court will note the
12  standing objection, but it has been ruled on.  We made
13  proceed.
14  BY MR. CREENAN:
15  Q.      With respect to the release of the sewer
16  bond, have you determined what needs to be done to
17  release the sewer bond, if anything?
18  A.      No, sir, I have not.  It's not mine.
19  Q.      Are you aware of anyone in the borough who
20  has done anything to determine what needs to be done to
21  release the sewer --
22  A.      I am not aware.  No, sir.
23  Q.      Do you agree with me that a subject of the
24  discussion is ongoing and then that release of the sewer
25  bond would enable and help the property owner get this

33

1  Q.      Why?
2  A.      There are two different departments under two
3  different specifications.  One is of the street
4  department with the sewer that begins a project.  Mine
5  is of the building department as the building code
6  official.
7            So, wise in my end because, you know, I did
8  not instigate the sewer situation.  Wise in the fact
9  that to find out what needed to be done through the
10  street department and the sewer relevant to their -- to
11  bring forward to this should your client want to
12  continue with of progress of this commercial structure.
13  Q.      I think I understand what you're saying, sir.
14  That's not your department; is that correct, sir?
15  A.      Yes, sir.
16  Q.      You were aware that the other issue was
17  rolled into the discussions; correct, as of today?
18  A.      I was present at the discussions.  Yes, sir.
19  Q.      As of today you are not aware of anything the
20  Borough has said or requires to release the sewer bond?
21  A.      No, sir.
22  Q.      And additionally the only other thing you
23  need is a building permit; correct?
24  A.      No, sir.  I need a designed set of drawings
25  specifically stating out what the engineer's report

35

1  other work done?
2  A.      That the ongoing of the conversation, yes,
3  sir.
4  Q.      Sir, would it be foolish for the property
5  owner to continue to invest more money when the Borough
6  hasn't done what it needs to do to release --
7            MR. ALEXANDER:  Objection, Your Honor.
8  It calls for speculation.
9            THE COURT:  I am going to overrule that.
10  He's the building code enforcement officer and he can
11  indicate what his opinion is related to that, and that's
12  still not an expert opinion.  You can proceed to answer
13  the question.
14            THE WITNESS:  Can you repeat the
15  question?
16  BY MR. CREENAN:
17  Q.      Would it be wise or foolish, one or the
18  other, for the property owner to proceed and continue to
19  try and meet the Borough's unmet demands when they
20  haven't even told him what needs to be done to release
21  the sewer bond?
22  A.      I believe that in my -- you're asking for
23  my -- to give my opinion to this.
24  Q.      Wise or foolish?
25  A.      Wise.

34

1  mentions.
2  Q.      But isn't that required for the building
3  permit?
4  A.      Yes, sir.
5  Q.      So, the building permit process, correct, is
6  something that we're going to go through, and we told
7  you we will go through; correct?
8  A.      Yes, sir.
9  Q.      Are you satisfied with what you have seen up
10  to now provided you get an adequate code-compliant
11  application with prepared by the right kind of engineer?
12  A.      I am satisfied.  Yes, sir.
13  Q.      So, is Mr. Yeager applied for a building
14  permit tomorrow, and it complied with the issues in his
15  plan; right?
16  A.      (Nods head.)
17  Q.      You'd have to grant the permit?
18  A.      Yes, sir.
19  Q.      Okay.  And that's limited -- that could be
20  limited just to the things requiring immediate repair
21  addressed by the engineer?
22  A.      Yes, sir.
23            MR. CREENAN:  Your Honor, I have
24  identified two exhibits so far.  I'm not going to offer
25  them into evidence.

36

1   THE COURT: Okay. Thank you.
2   Mr. Alexander, as of -- this would be, I guess, as of
3   cross, but it's obviously your witness.
4                   MR. ALEXANDER: Thank you, Your Honor.
5                   MR. CREENAN: Are you going to have any
6   other witnesses?
7                   MR. ALEXANDER: Yes. So, am I proceeding
8   in my case, Your Honor?
9                   THE COURT: I think you can cross him as
10  of this direct. Well, this was as of cross, it was his.
11  Now it's in direct.
12                  MR. ALEXANDER: Now, it's my direct.
13                  THE COURT: Yes, it is.
14                  MR. ALEXANDER: Okay.
15                          * * *
16                  DIRECT EXAMINATION
17  BY MR. ALEXANDER:
18  Q.     Mr. McVicker, with regard to e-mail
19  communication from December 11, 2017, you would agree
20  that what Mr. Creenan referred to as a plan is not
21  actually a plan. It's never been submitted to the
22  Borough of Trafford for review?
23  A.     That is correct.
24                  MR. CREENAN: Objection. It's been asked
25  and answered. It was submitted to the Borough, he

37

1   Q.     And they indicated that they could adjust the
2   timelines on that to be more definitive; correct?
3   A.     Yes, sir.
4   Q.     What did you tell them you needed at that
5   time again?
6   A.     I needed a designed set of drawings sealed by
7   a Pennsylvania registered architect or engineer
8   specifically to the details in conjunction with the
9   building codes along with an application filed with the
10  Borough of Trafford for a UCC commercial alteration
11  permit.
12  Q.     To date, has that been done?
13  A.     No, sir.
14  Q.     I believe Mr. Creenan just asked you, if we
15  do that, will you grant the permit, and you said?
16  A.     Yes, sir.
17  Q.     But they haven't done it?
18  A.     No, sir.
19  Q.     Now, they indicated that they submitted an
20  engineering report?
21  A.     Yes, sir.
22                  MR. ALEXANDER: I'm going to mark this --
23  they were numbers, Your Honor. Do you want us to be
24  letters?
25                  THE COURT: Well, let me see here. You

39

1   acknowledged that it was. He knew about it, and it was
2   submitted for review.
3   BY MR. ALEXANDER:
4   Q.     This was submitted to the borough solicitor
5   with a copy to Trafford Borough?
6   A.     Yes, sir.
7   Q.     There's no sealed drawings that come along
8   with it?
9                   THE COURT: All right. So, I am going to
10  overrule the objection. You may proceed.
11  BY MR. ALEXANDER:
12  Q.     There's no sealed drawings that come along
13  with it?
14  A.     No, sir.
15  Q.     There's no detail that comes along with it?
16  A.     No, sir.
17  Q.     I think you referred to it as a suggestion?
18  A.     Yes, sir.
19  Q.     There's nothing we can grant with regard to
20  that suggestion for Borough of Trafford?
21  A.     No, sir.
22  Q.     When we met at my office following the
23  initial hearing here before this Court, in fact, they
24  showed this to us again. Do you remember that?
25  A.     Yes, sir.

38

1   are the Defendant. So, yes, you will do letters. This
2   will be A.
3                   MR. ALEXANDER: Should I have her --
4                   THE COURT: She can mark it, yes.
5                   In the end she will mark it anyway.
6                   MR. ALEXANDER: May I, Your Honor?
7                   THE COURT: You may. Sure.
8   BY MR. ALEXANDER:
9   Q.     Mr. McVicker, can you identify the drawing
10  that I placed in front of you?
11  A.     The drawing is a structural report submitted
12  to Mr. Frank Yeager by MR Structures, LLC, with regard
13  to 501 Cavitt Avenue. Trafford, PA 15085.
14  Q.     Mr. McVicker, does the structural report
15  provided by MR Structures, LLC, satisfy the
16  Commonwealth's requirements to lift the condemnation?
17  A.     No, sir.
18  Q.     Why does it not?
19  A.     The ending proportion of the letter
20  specifically states of the engineer that it is an --
21  that the structure was limited to general visual
22  inspection overall, and it's an opinion and he is
23  recommending that further details could convey how to
24  fix the structure. But it was his observation of the
25  integrity of the structure.

40

```
1   Q.      What did the engineer's report lack in your
2   opinion?
3                   MR. CREENAN: Objection. Lack of
4   qualification to comment on the engineer report.
5                   THE COURT: I will sustain the objection.
6   BY MR. ALEXANDER:
7   Q.      As a code enforcement officer -- commercial
8   code enforcement officer that reviews plans in
9   condemnation procedure, are you familiar with what is
10  required by the Commonwealth?
11  A.      Yes, sir.
12  Q.      And I believe you already testified that this
13  is not in compliance with what is required by the
14  Commonwealth?
15  A.      Yes, sir.
16  Q.      What is required by the Commonwealth?
17  A.      A designed set of stamped drawings.
18  Q.      And this report lacks that?
19  A.      Yes, sir.
20  Q.      I'm going to ask you to go back to the
21  condemnation notice. With regard to item number one,
22  occupancy of the structure, have you ever been involved
23  in a case where a structure has been occupied without
24  ever having obtained an occupancy permit?
25                  MR. CREENAN: Objection. Relevance.
```

41

```
1   testified that it's off-the-shelf.
2                   THE COURT: I am going to overrule the
3   objection anyway. You can proceed forward with it. If
4   it goes astray again, we can certainly address it as we
5   move forward.
6                   MR. ALEXANDER: Thank you.
7   BY MR. ALEXANDER:
8   Q.      Are you familiar with instances where people
9   occupy structures illegally?
10  A.      Yes, sir.
11  Q.      That wasn't the case in this particular case?
12  A.      No, sir.
13  Q.      But doesn't this particular provision give
14  notice that if you occupy, you could be criminally
15  prosecuted?
16  A.      Yes.
17  Q.      And that places Mr. Yeager on notice that if
18  he does that can happen?
19  A.      Yes, sir.
20  Q.      In the second provision, you ask him to make
21  immediate application for an obtainability permit to
22  remove, repair, replace, and so on and so forth. That
23  hasn't been done?
24  A.      No, sir.
25  Q.      That is what's been asked throughout the
```

43

```
1                   THE COURT: Want to respond?
2                   MR. ALEXANDER: Your Honor, I believe
3   that Mr. McVicker indicated that this is based off of a
4   form that's widely used throughout the Commonwealth.
5   While it doesn't specifically apply to the instance at
6   hand, I believe he can testify that the reason this is
7   in there is because there are instances where people go
8   in and occupy them. So, placing them on notice ahead of
9   time, if you occupy, this is what could happen.
10                  THE COURT: Do you want to respond that?
11  I am a little concerned -- I will give you some
12  latitude. I am going to overrule the objection, but you
13  have got to tie it to this case. You can't just utilize
14  what is a general pro forma Commonwealth form and try in
15  this particular case so it covers the issues before the
16  court.
17                  MR. ALEXANDER: I get that and I
18  understand that. I appreciate that. I'm just trying to
19  point out why it might be in there.
20                  MR. CREENAN: I would add that his prior
21  testimony is to restrictive occupancy, and he knew it
22  wasn't occupied. He's already answered those things and
23  acknowledged all of this form, this whole letter, is
24  off-the-shelf. Doesn't apply to this property.
25                  MR. ALEXANDER: I don't believe he ever
```

42

```
1   course of these proceedings?
2   A.      Yes, sir.
3   Q.      Even when we sat in my office a few weeks
4   ago?
5   A.      Yes, sir.
6                   MR. CREENAN: Objection. Leading.
7                   THE COURT: I will sustain the objection.
8   Again, you are on direct.
9                   MR. ALEXANDER: Thank you, Your Honor.
10  BY MR. ALEXANDER:
11  Q.      Now, you indicated that you did not do an
12  inventory of the bricks that had fallen in the roadway
13  in Trafford Borough?
14  A.      Yes, sir.
15  Q.      Were you able to see, from your visual
16  inspection, that bricks had fallen from the Yeager
17  structure at 501 Cavitt?
18  A.      Yes, sir.
19  Q.      Are there also windows that are broken out?
20  A.      Yes, sir.
21  Q.      I'm going to show you what you prepared, and
22  we're going to mark it as we go through. Do you have a
23  copy in front of you?
24  A.      No, sir. It's on top of the...
25  Q.      The first document dated January 4, 2013,
```

44

```
 1    let's mark that as Exhibit B.  Could you identify that
 2    drawing?
 3    A.        Yes, sir.  It's a letter --
 4    Q.        Not drawing, but a letter?  I'm sorry.
 5    A.        Yes, sir.
 6              MR. CREENAN:  Your Honor, the witness on
 7    the stand is neither the author nor the recipient of
 8    this particular document.  It is authored by someone
 9    else of the Borough, and it predates the property
10    owner's ownership of the property.  I'm going to move
11    to -- I would object to the entire line of questioning
12    about this packet.  I think we're limited to what are
13    the issues in the condemnation.  He identified during
14    his testimony, when I asked him the question, about
15    three things.
16              THE COURT:  I will sustain the objection.
17              MR. ALEXANDER:  Do we want to unmark
18    those as B, Your Honor?
19              THE COURT:  We will unmark the exhibit.
20    BY MR. ALEXANDER:
21    Q.        The next item, before we even mark it,
22    Mr. McVicker, what is that?  Starts with occupancy
23    permits.
24              THE COURT:  Let me narrow the scope here
25    because I think you objected to the entire packet?
```

```
 1    Q.        Let's mark that as Exhibit B.
 2              THE CLERK:  I'm really confused.  What is
 3    going to be B?
 4              THE COURT:  Why don't we do this, as
 5    you're getting to the exhibits that's going to be
 6    presented, can you set it aside and maybe she will know
 7    then.
 8              MR. ALEXANDER:  Want me to take that back
 9    and I will just hand you them as we go?
10              THE COURT:  I think that would work
11    better because she has to mark them as you go and they
12    may be subject to objection.
13              MR. ALEXANDER:  What we're going to mark,
14    Your Honor, as Exhibit B is an April 22nd, 2016
15    communication from Mr. Creenan to Mr. McVicker.
16              MR. CREENAN:  Proffer as to the relevance
17    of this particular letter?
18              THE COURT:  He's saying it's irrelevant.
19    Do you want to respond?
20              MR. ALEXANDER:  Yes.  I believe that
21    Mr. McVicker put this packet together so that the Court
22    could have an outline of the entire process that's
23    occurred here.  It's a letter from Mr. Creenan to
24    Mr. McVicker regarding what we are talking about right
25    now.
```

```
 1              MR. CREENAN:  Yes, Your Honor.  I
 2    think --
 3              THE COURT:  Mr. Alexander, I will allow
 4    you to go through so that each item can be addressed
 5    separately if there is an objection.
 6              MR. ALEXANDER:  Well, they are individual
 7    exhibits.
 8              THE COURT:  I'm not sure if Mr. Creenan
 9    knew --
10              MR. CREENAN:  Your Honor, this occupancy
11    permit is attached to the letter that you just sustained
12    an objection to.
13              MR. ALEXANDER:  Mine aren't stapled.
14              MR. CREENAN:  Well, that's what I was
15    handed, Mr. Alexander.  I'm sorry.  I still don't see
16    the relevance of those items.
17              THE COURT:  Well, the letter has been
18    ruled upon as far as it's sustained.  But with the
19    separate items, I am going to allow Mr. Alexander to
20    present.  If you should have an objection, we will
21    address each one.
22    BY MR. ALEXANDER:
23    Q.        Let's move ahead to the April 22, 2016
24    letter.  That's when your tenure began?
25    A.        Yes, sir.
```

```
 1              THE COURT:  I am going to overrule the
 2    objection.  It is relevant and you may pursue it.
 3              MR. CREENAN:  Withdrawn objection.
 4    BY MR. ALEXANDER:
 5    Q.        Go ahead, Mr. McVicker.
 6    A.        The letter dated April 22nd is a response
 7    from a letter that preceded to me stating that he was in
 8    receipt of my notice of violation dated April 19th,
 9    2016, which was the first letter I had sent out on
10    behalf of the Borough of Trafford on my behalf as the
11    building code official for the Borough.
12    Q.        So, the next -- in the paper-clipped portion
13    of the documents, Mr. McVicker, is a September 8, 2016
14    letter?
15    A.        Yes, sir.
16              MR. ALEXANDER:  One second.  Mine are
17    aren't paper clipped so it might take a second.
18              They go all the way up to the notice of
19    violation cause for emergency action.  That's the
20    paper-clipped portion that you have in the second
21    portion of the exhibit.
22              THE COURT:  Is that what you're seeing,
23    Mr. Creenan?
24              MR. CREENAN:  No.
25              THE COURT:  All right.  Well, let's get
```

**Page 49**

```
 1    it clear so that we can --
 2              MR. ALEXANDER:  September 8, 2016.
 3              MR. CREENAN:  Yes.  How many pages?
 4              MR. ALEXANDER:  One, two, three, four,
 5    five.
 6              MR. CREENAN:  Stop.  Everything after
 7    that is not from us.  There is a return receipt
 8    addressed to our office and signed by our office, and we
 9    wouldn't have sent a letter to ourself like that.
10              MR. ALEXANDER:  Okay.  Mr. McVicker,
11    let's just look at the first --
12              THE WITNESS:  It's out of order, but
13    there is an August 8th letter, and the September 8th is
14    the response.
15              MR. ALEXANDER:  So, let's mark the
16    September 8th as --
17              THE COURT:  C.
18              MR. ALEXANDER:  -- as the next exhibit.
19    That would be Exhibit C.
20    BY MR. ALEXANDER:
21    Q.   So, Exhibit C is the September 8th, 2016
22    letter and three drawings -- three pictures.  Can you
23    identify that?
24    A.        Yes, sir.
25    Q.        What are those?
```

49

**Page 51**

```
 1              THE COURT:  Is that cleared up?
 2              MR. CREENAN:  Now he answered it
 3    correctly, yes.
 4              Your Honor, if I may, I believe he
 5    mentioned condemnation in '16.  There was no
 6    condemnation in '16.  I want to make sure the record is
 7    clear.
 8              THE COURT:  The Court is a little
 9    confused too.  My understanding is that there is only a
10    sewer bond issue in '16; is that correct?
11              MR. ALEXANDER:  In '16.
12              MR. CREENAN:  Right.  I think they --
13              THE COURT:  Mr. Alexander, I guess for
14    purposes of clarifying the record, we're only talking
15    about the sewer bond issue in the fall of 2016; is that
16    correct?
17    BY MR. ALEXANDER:
18    Q.   There was a notice of violation issued August
19    29th, 2016; is that right?
20    A.        Yes, sir.
21    Q.        And that's what Mr. Creenan responded to?
22    A.        Yes, sir.
23              MR. ALEXANDER:  Now it seems to be going
24    a little bit out of order.  List the notice of violation
25    as Exhibit --
```

51

**Page 50**

```
 1    A.        It's a letter from Mr. Creenan on behalf of
 2    Mr. Yeager specifying that the enclosed photographic
 3    evidence of the repairs done by Mr. Yeager had been
 4    completed and, furthermore, that Mr. Yeager has not
 5    received his bond.
 6    Q.        Upon receipt of Mr. Creenan's letter, did you
 7    go out and inspect the property?
 8    A.        Yes, sir.
 9    Q.        Did you find that he did, in fact, make the
10    remediations necessary in order to lift the
11    condemnation?
12    A.        No, sir.
13    Q.        What did you determine?
14    A.        That there were still additional -- that the
15    information received there was specific to the sanitary
16    issue and not the building issue.
17              MR. CREENAN:  Your Honor, I believe he
18    indicated he did not go out to the property after that
19    and then answered a question about what he found.  I
20    heard no to that question.
21    BY MR. ALEXANDER:
22    Q.        Did you go out and visually inspect the
23    property?
24    A.        After this letter.  Yes, sir.  Visual
25    inspection was performed on the issues that was here.
```

50

**Page 52**

```
 1              THE COURT:  You are on D.
 2              MR. ALEXANDER:  -- D.
 3              THE COURT:  Is that subsequent to the
 4    September 8 letter that was marked as Defendant's
 5    Exhibit C?
 6              MR. ALEXANDER:  It is.
 7              THE COURT:  Okay.
 8              MR. ALEXANDER:  I'll mark this as Exhibit
 9    D and give him my copy.
10              MR. CREENAN:  Can we see what you have?
11    August 29 of 2016, okay.
12              MR. ALEXANDER:  Yes.  The packet is a
13    little bit out of order.
14    BY MR. ALEXANDER:
15    Q.        Could you identify that exhibit,
16    Mr. McVicker?
17    A.        The letter dated August 29th, 2016 is the
18    notice of violation being sent to Mr. Creenan on behalf
19    of Mr. Yeager from me notifying him that -- in the first
20    part, I was unaware of any meeting taking place at the
21    Borough of Trafford to progress any matters of this
22    nature.  I continued to show forth the code
23    demonstrations as to why the building is still unsafe.
24    Q.        Was there any response to that letter, if you
25    can recall?
```

52

A.      No, sir.
Q.      I'm going to show you what I'm going to mark
as Exhibit E.  Is the notice of violation cause for
emergency action -- can you identify that document?
A.      Yes, sir.  This is a letter written from
myself, the CEA, to Mr. Creenan on behalf of Frank
Yeager dated August 8th, 2017.  It's another notice of
violation in addition to it's a cause for emergency
action.
       I spelled out the particulars and specifics
with regard to my visual aspects of the building with
regard to the bricks.  I cited the code under Section
403.84 the Uniform Construction Code standard of the
Commonwealth.  Also, placed in bold a directive that due
to general unsafe conditions of the brick edges, side
walls and roof concept, the structure being compromised
by infiltration and neglect, which could be seen out of
line of sight.  That I was requiring a sealed report by
a Pennsylvanian architect or engineer to be submitted to
my attention aligning the integrity of the structure in
its entirety.  And that, you know, I did put them on
notice that this was under the Commonwealth being put as
an emergency action because we had to close down a
public street.
Q.      When Mr. Creenan stated to you on his cross

that there were no findings enclosed and he had no idea
what needed to be done, is that a correct statement?
       MR. CREENAN:  Objection.  It's
argumentative.  Leading.
       THE COURT:  I will sustain the objection.
BY MR. ALEXANDER:
Q.      Did you provide findings with regard to what
needed to be done?
A.      Yes, sir.
Q.      Then I'm going to mark as Exhibit F the
Notice of Condemnation, which we previously discussed
earlier but was not entered into evidence.
Mr. McVicker, in your Notice of Condemnation, you
reference findings.  What findings were you referencing?
       MR. CREENAN:  Objection.  Asked and
answered.
       MR. ALEXANDER:  What was the answer?
       THE COURT:  I will overrule the
objection.  Go ahead and answer.
       THE WITNESS:  The finding that I found,
it's my determination that the building continued to be
in dilapidation causing continued hazard in the Borough
of Trafford.
BY MR. ALEXANDER:
Q.      What were the findings you were referencing?

A.      The findings that -- where are you?
Q.      The Notice of Condemnation, does it refer to
anything earlier that you had given -- were you
referring to anything earlier?
       MR. CREENAN:  Objection.  Asked and
answered.
       THE COURT:  I will sustain that
objection.
BY MR. ALEXANDER:
Q.      Mr. McVicker, there are a series of 15
pictures that start with the picture of the building?
A.      Yes, sir.
Q.      I'm going to mark that as exhibit --
       THE COURT:  It will be G.  We will do it
cumulatively so we have them all together.
Q.      I'm going to ask you to identify these
pictures for the Judge, because my packet does not
contain them and I think that's because I gave them at
the last hearing.
A.      Certainly.  The first picture --
       THE COURT:  Do you want to use these,
Mr. Alexander, while you are going through?
       MR. ALEXANDER:  That would be great.
       THE COURT:  Sure.
BY MR. ALEXANDER:

Q.      First picture?
A.      First picture is an outward look of the side
angle of 501 Cavitt Avenue in Trafford, PA.
Q.      What does that depict?
A.      Depicts a four-story structure with windows
being missing on the second and third floors.  The front
gate coming off of the -- where the gate comes off is
actually the main street and considered the front of the
building.
Q.      And the second picture?
A.      The second picture is the first posting of my
condemnation notice, which would be considered on the
front side of the building.
Q.      Next to the roadwork construction sign?
A.      Yes, sir.
Q.      The third picture?
A.      The third picture is a front view of the
building standing on Cavitt Avenue looking directly at
the building.  Again, to show a perspective of the
building along with the parapet wall at the roof line.
Q.      Are there bricks missing from the parapet
wall?
A.      There are bricks missing.  Yes, sir.
Q.      Are there windows that are broken out on the
second and third floor like on the other side?

1  A.    Yes, sir.
2  Q.    And the next picture?
3  A.    The next picture is a side angle, again, of
4  the structure side of 501 Cavitt.
5  Q.    And the next picture?
6  A.    Next picture is a demonstration -- it's a
7  picture that we take as building inspectors and
8  officials of the electrical panel.  This is a
9  demonstration for legal purposes that there's no meter
10  at the building, no electricity is established at the
11  building, which would otherwise be required for
12  occupancy.
13  Q.    Nice, snowy March pictures.
14  A.    Yes.
15  Q.    What's the next picture?
16  A.    Next picture is a side angle of the building
17  in its kept condition at the time of the photograph,
18  which includes, you know, the side angle going down
19  towards the Borough of Trafford.
20  Q.    What does it show with regard to the windows?
21  A.    They are boarded up on the first floor.
22  Again, from other views and perspectives, they are not
23  boarded up on the second or third floor.
24  Q.    And if you turn the page, that's the picture
25  that depicts what you just --

1  condition.
2         THE WITNESS:  Yes, sir.
3         THE COURT:  It was the emergency notice
4  that indicated that and a follow up with a Notice of
5  Condemnation?
6         MR. ALEXANDER:  That's correct.
7         THE COURT:  It is overruled.  The
8  objection is overruled, and they will continue to be
9  permitted.
10  BY MR. ALEXANDER:
11  Q.    Next picture, Mr. McVicker?
12  A.    Next picture is an open entry into the ground
13  floor where the door has -- you know, I found during my
14  visual aspect that the door is open and that the
15  perspective of this as we do when we do these
16  parallels -- it is a fresh snow pack that is in front of
17  it.  This was not a door that was opened up.  It's a
18  door that has been opened.
19  Q.    And the next picture?
20  A.    Next picture is an entryway that shows that.
21  I took a picture of the lab box on there just to
22  demonstrate that it was once occupied or previously
23  occupied, but it is not at this time.
24  Q.    And the next picture?
25  A.    Next picture is a side angle, again, of the

1  A.    Yes, sir.  Standing at the same angle taking
2  a picture directly upward.
3  Q.    What would you call the bricks that are right
4  above the windows?  Does that have any particular name,
5  the angled bricks?
6  A.    The ledger bricks?
7  Q.    Is that what that part is called, ledger
8  bricks?
9  A.    Yes.
10  Q.    Can you tell us if any of those have fallen?
11  A.    I can't make a determination.  It does look
12  like maybe one on the third floor there.  Certainly, it
13  does show signs of dilapidation for work -- I'm sorry --
14  excuse me.  On this first floor, I am seeing where this
15  is one missing.
16  Q.    And others --
17         MR. CREENAN:  Objection, Your Honor.  I'm
18  going to object to the photographs.  The witness has
19  testified to what he thought the condition was.  These
20  photographs are not of those areas of the condition
21  previously identified, and I think they're irrelevant to
22  the case proceedings other than to try to inflame the
23  Court into thinking it is worse than what it is.
24         MR. ALEXANDER:  I think that he testified
25  this building as a whole that is in a dilapidated

1  structure.  This particular portion of this picture is
2  showing that there is vegetative vine growth growing up
3  through the side of the building, which at this time
4  wasn't in season.
5  Q.    Turn the page once again.
6  A.    I believe it's a duplicative picture with a
7  little wider of an angle showing the voided windows and
8  cracked windows on the second and third floors of the
9  building.
10  Q.    What does it show with regard to the parapet
11  wall above?
12  A.    Some demonstration of wear and tear and
13  dilapidation of the parapet wall from my visualization.
14  Q.    Next picture?
15  A.    This is an up-close picture of the
16  condemnation notice.  It's just a secondary photograph
17  of it next to the door showing that we posted it and
18  that it's proper manner.
19  Q.    Next two pictures are the same thing?
20  A.    They are the same things just closer angles
21  for description in case anybody would ask if it was
22  specifically at the address that we stated it was at.
23  Q.    And the final picture?
24  A.    The final picture is just a posting of the
25  picture itself and the closest angle of it showing the

1  description of the address being labeled.
2  Q.      Mr. McVicker, how long have you been a code
3  enforcement officer?
4  A.      I have been a building code official in the
5  Commonwealth since February of 2009.
6  Q.      In your course in that capacity, how long
7  have you been required to issue condemnation notices?
8                  MR. CREENAN:  Objection.  Relevance.
9                  MR. ALEXANDER:  Just getting some
10 background.
11                 THE COURT:  I am going to overrule the
12 objection.  Go ahead and answer the question.
13                 THE WITNESS:  Roughly 20 times.  On or
14 about -- more than -- greater than 15 to 20 times.  I
15 don't have a specific number.
16 BY MR. ALEXANDER:
17 Q.      Have you testified in court proceedings such
18 as this in the past?
19 A.      Yes, sir.
20 Q.      Based on your knowledge of the requirement --
21 let me go back for a minute.  I don't know if I should
22 mark this as an exhibit or just try  to -- Mr. McVicker,
23 you brought me a copy of Section 403.84 of the
24 Pennsylvania Code?
25 A.      Yes, sir.

1  at this time just for the court reporter.  We will
2  return back in just ten minutes, and then you can pick
3  up on your cross.
4                  MR. CREENAN:  Your Honor, if I may before
5  we do that, let me just --
6                  THE COURT:  Unless you have a short
7  cross?
8                  MR. CREENAN:  No, I don't have a cross.
9  I just have a short request for the Court.  We heard
10 today that if we submit a building application, it would
11 be granted as long as it's compliant.  I think that's
12 what we intend to do.  That's the answer I've been
13 looking for for three years.  I'd like to put the
14 proceedings on hold to give us 30 days to do that.
15                 THE COURT:  Do you have an objection?
16                 MR. ALEXANDER:  I don't.  That's what we
17 asked for in the meeting at my office.  To say that we
18 haven't said that in three years, we just said that
19 three weeks ago.
20                 MR. CREENAN:  They never said what would
21 be adequate, and that's been the problem.  We have heard
22 it today.  I'm glad we have heard it today.  That's what
23 we are willing to do if the Court would -- with the
24 Court's indulgence, if we can reschedule this for
25 sometime 30 days after, we will get our application in.

1  Q.      What is that section?
2  A.      Under Act 45 of the Statute of the
3  Commonwealth establishing Uniform Construction Code
4  standard, this is Subsection 403.84 having to deal with
5  unsafe building structures or equipment in the outline
6  in this specific statute.
7  Q.      In your opinion, does the subject property
8  meet the definition of unsafe building structure or
9  equipment as identified in Section 403.84?
10 A.      Yes, sir.
11 Q.      Has the plaintiff submitted any information
12 to the Borough of Trafford that would warrant lifting
13 the condemnation at this time?
14 A.      They have prepared, yes, sir -- they have
15 prepared an engineer's opinion based upon the structural
16 integrity of the building, which is a portion of the
17 standard required to lift the condemnation.
18 Q.      A portion of the standard?
19 A.      Yes, sir.
20 Q.      Have they submitted any documentation that
21 would, as a whole, allow you to lift the condemnation?
22 A.      No, sir.
23                 MR. ALEXANDER:  I have no further
24 questions at this time, Your Honor.
25                 THE COURT:  We are going to take a break

1                  MR. ALEXANDER:  It has to be complete.
2  As we sit here today, Craig, can you tell them what they
3  need?
4                  THE WITNESS:  A set -- excuse me -- the
5  structural engineer has made specific citations in
6  there.  Whether it is this engineer or any engineer or
7  architect of your choice, it has to be a Pennsylvania
8  registered architect or engineer to put together a
9  designed set of drawings based upon the information
10 received on the structural integrity report to a
11 building permit application and filed at the Borough of
12 Trafford.  Once the designed set of drawings -- sealed
13 and stamped drawings are received with the application
14 at the borough, the Borough will review the designed
15 drawings in accordance with the UCC.  If they are
16 approved with that under the plan review process, which
17 is under the commercial code section, a permit will be
18 issued and the work can commence way under a building
19 permit.
20                 MR. ALEXANDER:  And you'll be directly
21 involved in that review process?
22                 THE WITNESS:  Yes, sir.
23                 MR. CREENAN:  And to be clear that is the
24 items that we talked about today, the parapet wall, et
25 cetera?

```
 1              THE WITNESS:  Whatever the structural
 2   engineer laid out in his -- as far as the integrity of
 3   the structure to repair it to bring it to the minimum
 4   code standards of the Commonwealth fit for human
 5   habitation.  I want to be very clear that the engineer's
 6   report doesn't so specify that for you.
 7              MR. CREENAN:  Sir, just so I'm clear.  At
 8   this stage, you're not looking for drawings to show
 9   construction or build out drawings?
10              THE WITNESS:  No, sir.
11              MR. CREENAN:  All you're asking for is
12   drawings to indicate an application to fix those things
13   and no more?
14              THE WITNESS:  That's correct.
15              MR. CREENAN:  Okay.  Thank you.
16              THE COURT:  Okay.  Defendant's Exhibits A
17   through G, which go through the photographs, any
18   objection to them being moved into evidence?
19              MR. CREENAN:  I have no objections to
20   those, Your Honor.
21              THE COURT:  They are so moved into
22   evidence without objection and they are in.
23              The proceedings then will be in recess.
24   We will give you 30 days for your application to be
25   submitted in compliance with what is required under the
```

65

```
 1   C E R T I F I C A T E
 2
 3                    * * *
 4
 5              I hereby certify that the proceedings are
 6   contained fully and accurately in the notes taken by me
 7   at the hearing of the within cause and that this copy is
 8   a true and correct transcript of the same.
 9
10
11                    _Blake Schaum_
12              Blake Schaum, Court Reporter
13
14
15
16
17
18
19
20
21
22
23
24
25
```

67

```
 1   Commonwealth and also the municipality of Borough codes
 2   as well.  Once that is submitted, in good faith, the
 3   Borough is directed to give every deference it can to
 4   allow for the construction to proceed in an effort to
 5   resolve the matter.
 6              MR. ALEXANDER:  I appreciate that, Your
 7   Honor.
 8              THE COURT:  We will have counsel go into
 9   chambers and coordinate a date that you are both
10   available.  Considering we will be in the summer months,
11   I know everybody has vacations and everything coming up.
12              MR. CREENAN:  Thank you.
13              THE COURT:  Okay.  Thank you.  We are in
14   recess.
15          (PROCEEDINGS ADJOURNED - 10:43 A.M.)
16
17
18
19
20
21
22
23
24
25
```

66

## Joanne Parise

| | |
|---|---|
| **From:** | Jim Creenan |
| **Sent:** | Wednesday, June 20, 2018 3:57 PM |
| **To:** | Craig Alexander; Craig McVicker |
| **Subject:** | 501 Cavitt |
| **Attachments:** | Apit const PERMIT APPLICATION.pdf; 2018-06-19 CAVITT STRUC.pdf |
| **Importance:** | High |

Gentlemen –

I was able to meet today with the structural engineer to review the requirements for this project. He completed the drawings necessary for work discussed at the courthouse.

At the hearing last month, we requested the postponement so we can provide the attached to you. I have attached the demo application and the requested structural drawings. If acceptable to you, we will complete the submission (We need the insurance certificate) directly to Borough or as you otherwise direct. Please confirm.

Are you able to give your blessing now? Otherwise, please confirm your consent to the postponement of Monday's continuation of the hearing. I will prep the motion and consent order required by Judge Smail.

I look forward to your prompt response.

Thanks,

Jim

JAMES W. CREENAN, ESQUIRE
CREENAN & BACZKOWSKI, PC
TOWN SQUARE PROFESSIONAL BUILDING
SUITE 304
3907 OLD WILLIAM PENN HIGHWAY
MURRYSVILLE, PA 15668
(724) 733-8832
(724) 733-8834 (FAX)
JCREENAN@CBATTORNEYS.COM
WWW.CBATTORNEYS.COM

IMPORTANT NOTICE. THE E-MAIL COMMUNICATION, TOGETHER WITH ANY ATTACHMENTS, IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN CONFIDENTIAL INFORMATION THAT IS PRIVILEGED AND/OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU RECEIVED THIS COMMUNICATION IN ERROR. ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU RECEIVE THIS COMMUNICATION IN ERROR PLEASE CALL THE TELEPHONE NUMBER LISTED ABOVE, OR SEND A RETURN E-MAIL, AND THEN DELETE THIS MESSAGE, TOGETHER WITH ANY ATTACHMENTS.



**EXHIBIT
20**

1

**Date:** 06/18/2018

**Permit No:** _____

# BOROUGH OF TRAFFORD
## APPLICATION FOR DEMOLITION PERMIT

| **Application Type** (check all that apply) | ☐ FENCE  ☐ RETAINING WALL  ☐ DETACHED ACCESSORY STRUCTURE  ☑ INTERIOR SPACE REMODEL/ALTERATION | ☐ RESIDENTIAL STRUCTURE  ☑ COMMERCIAL STRUCTURE  ☐ INDUSTRIAL STRUCTURE  ☐ OTHER |
|---|---|---|

| **Site informtion** | **Owner information** |
|---|---|
| | Name    Lanalex Cloyd Inc. |
| | Address    501-503 Cavitt Ave |
| | County    Westmoreland |
| | Phone    724-461-7003      Email   frank.yeager@lanalexcloyd.com |
| | Subdivision _____    Lot _____    Block _____ |

| **Property is** | ☐ Owner occupied | ☐ Owner occupied with rental units | ☐ Rental only |
|---|---|---|---|

| **Construction Cost** | **Construction Cost $** 48,500 |
|---|---|

| **Complete description of work** | Removal of parapet wall, chimneys, and collapsed portion of building interior. |
|---|---|
| | Replacement of roof membrane, damaged roof elements, and Fifth St sidewalk |
| | Bracing of exterior wall in collapsed portion of the building. |
| | |
| | |
| | |

| **Documentation required** (minor repairs do not require site plans or construction documents) | ☑ Site plan showing the proposed work (including electrical, plumbing or mechanical systems) survey plan required. |
|---|---|
| | ☐ Owner 's drawings **may** be accepted by the code official, however, these drawings **must** show sufficient information to convey all required dimensions, size and type of materials, and details of materials used, and clearances. |
| | ☑ Insurance certificates of contractors must be filed with this application |

| **Applicant Signature** | X_____ Date: 06/18/2018 |
|---|---|

| **OFFICE USE ONLY** | APPLICATION      APPROVED      DENIED REASON: |
|---|---|
| **BCO SIGNATURE** | X_____ #003051 |

I:\TRAFFORD\FORMS\[DEMOLITION_Permit_Application_TRAFFORD_BOROUGH.xlsx]Page 2

| Contractor Information | | |
|---|---|---|
| | Company name    Apit Construction Group | |
| | Address    xxxx Somerset Pike | |
| |    Boswell, PA 15831 | |
| | Contact Person   David Lawing | Email   davidlawing4356@gmail.com |
| | Phone    301-388-6377 | Fax |

| Contractor Insurance Information | |
|---|---|
| | Insurer |
| | Police type |
| | Coverage   General liability     per Occur.   1,000,000    Agg.   2,000,000 |

| Signature | |
|---|---|
| | PRINT NAME |
| | SIGNATURE          DATE |

Note: All plumbing inspections and plumbing permitting in Allegheny County is conducted by the Allegheny County Health Department (plumbing division) and if applicable to your project, must be completed before final inspection can be approved.

Certain portions of Trafford Borough are located in Allegheny County

## - OFFICIAL USE ONLY

| Fee Schedule | | | |
|---|---|---|---|
| Residential | | Permit Issued | Permit Refused |
| Commercial | | Reason Revised | |
| Industrial | | Z.H..B. Case # | |
| Demolition | | Z.H.B. Decision: | |
| Signs _____ x _____ | | x. | |
| Other | | | |
| Other | | Building Code Official/Construction Code Official | |
| Total | | Certification No. | |

I:\TRAFFORD\FORMS\[DEMOLITION_Permit_Application_TRAFFORD_BOROUGH.xlsx]Page 2

# DIVISION 1 - GENERAL REQUIREMENTS

## GENERAL

1.1 THIS SET OF DRAWINGS IS FOR PERMANENT FLOOR FRAMING WHICH MAY BE USED AS PERMANENT FLOOR FRAMING IN THE COMPLETED BUILDING. THIS SET OF DRAWINGS IS NOT INTENDED FOR A COMPLETED OCCUPYABLE BUILDING, BUT SHALL PROVIDE GUIDANCE TO REPLACE AREAS WHERE EXISTING FRAMING HAS FAILED OR IS FAILING. WHERE FRAMING IS IN FAIR CONDITION IT MAY BE LEFT IN PLACE WITHOUT MODIFICATION AS TEMPORARY BRACING FOR THE FINISH FRAMING INSTALLED. THE FINAL BUILDING MODIFICATIONS ARE DESIGNED & THE FRAMING IS INSTALLED.

1.2 LOADS GREATER THAN THE DESIGN LIVE LOADS SHALL NOT BE PLACED ON THE STRUCTURE.

1.3 GENERAL CONTRACTOR SHALL VERIFY ADAPTED DIMENSIONS AND EXISTING CONDITIONS, IF FOUND TO VARY FROM THESE INDICATED IN THESE DOCUMENTS THE CONTRACTOR SHALL NOTIFY THE ENGINEER BEFORE PROCEEDING WITH WORK.

1.4 THE CONTRACTOR SHALL BE RESPONSIBLE FOR MEANS, METHODS, TECHNIQUES AND PROCEDURES EMPLOYED IN THE PERFORMANCE OF WORK IN, ON, OR ABOUT THE JOB SITE. THE CONTRACTOR SHALL COORDINATE AND VERIFY ALL WORK PERFORMED BY SUBCONTRACTORS.

1.5 THE STRUCTURE IS DESIGNED AS A STABLE UNIT AFTER ALL COMPONENTS ARE IN PLACE. THE CONTRACTOR SHALL PROVIDE ALL SHORING AND BRACING NECESSARY TO ENSURE THE STABILITY OF ANY AND ALL PARTS OF THE BUILDING AND EXCAVATIONS DURING CONSTRUCTION.

1.6 NO STRUCTURAL MEMBER SHALL BE CUT, NOTCHED, BORED, OR OTHERWISE MODIFIED EXCEPT AS PERMITTED BY CODE OR AS APPROVED BY THE ENGINEER.

## DESIGN DATA

1.7 THE BUILDING CODE USED FOR THE BASIS OF DESIGN IS THE INTERNATIONAL BUILDING CODE (IBC) 2009. ALL WORK SHALL CONFORM AS A MINIMUM TO THIS CODE.

1.8 FLOOR LIVE LOADS:
APARTMENT: 40 PSF
OFFICE: 65 PSF
COMMERCIAL: 100 PSF

1.9 SNOW LOADS:
GROUND SNOW LOAD: 30 PSF
SNOW EXPOSURE FACTOR (Ce): 1.0
SNOW THERMAL FACTOR (Ct): 1.1
SNOW IMPORTANCE FACTOR: 1.0
ROOF SLOPE FACTOR: 1.0
DESIGN SNOW: 30 PSF

## DIVISION 2 - BUILDING EARTHWORK

2.1 THE SUBGRADE SURFACE SHALL BE STRIPPED OF ALL VEGETATION, FROZEN, WET, SOFT OR LOOSE SOILS AND OTHER DELETERIOUS MATERIALS BEFORE PLACING ANY FILL MATERIAL.

2.2 BORING AND COMPACT THE TOP 6" OF THE EXPOSED SUBGRADE TO 95% OF MAXIMUM DENSITY (+/- 2%) AT 2% TO 3% ABOVE OPTIMUM MOISTURE CONTENT, IN ACCORDANCE WITH TEST METHOD ASTM D-698.

2.3 FILL SOIL SHALL NOT CONTAIN ANY ROCK OR GRAVEL LARGER THAN 6" IN ANY DIMENSION, DEBRIS, WASTE OR FROZEN MATERIAL, AND IT SHOULD CONTAIN LESS THAN 3% VEGETATION/ORGANIC MATERIAL BY WEIGHT. MATERIALS CLASSIFIED AS CH, MH, OL, OR PT ARE NOT SUITABLE FOR USE AS STRUCTURAL FILL.

2.4 SELECT FILL SHALL BE COMPACTED IN THE FIELD IN LIFTS NOT TO EXCEED 8" TO A MINIMUM OF 98% OF MAXIMUM DENSITY.

2.5 FOOTINGS ARE DESIGNED FOR AN ASSUMED BEARING CAPACITY OF 3000 PSF. FOOTINGS SHALL BEAR ON NATURAL UNDISTURBED SOIL, 7'-0" BELOW ORIGINAL GRADE AND BOTTOM OF EXTERIOR FOOTINGS SHALL BE 3'-0" BELOW FINISHED GRADE. CONTRACTOR SHALL VERIFY SOIL PRESSURE IN THE FIELD. IF FOUND TO BE LESS THAN 3000 PSF, THE FOOTINGS SHALL BE REDESIGNED.

2.6 SLABS-ON-GRADE SHALL BE 4" THICK, REINFORCED AT MID-DEPTH WITH 6" x 6" / W4.0 x W4.0 W.W.F. LAP MESH 12" IN EACH DIRECTION. SLABS SHALL BE CAST OVER A VAPOR RETARDER RESTING ASTM E-1745 CLASS C, CLASS B, CLASS C LAPPED 12" AT ALL EDGES OVER A 4" LAYER OF WASHED GRAVEL.

2.7 STEP ALL WALL FOOTINGS AS REQUIRED BELOW UNDERGROUND UTILITIES. COORDINATE UTILITY LOCATIONS AND ELEVATIONS WITH SITE, PLUMBING, ELECTRICAL AND MECHANICAL DRAWINGS.

# DIVISION 3 - CONCRETE/REINFORCING

## 03000 CAST-IN-PLACE CONCRETE

3.1 ALL CONCRETE WORK SHALL CONFORM TO THE AMERICAN CONCRETE INSTITUTE SPECIFICATION, A.C.I. FOR AND BUILDING CODE REQUIREMENTS, A.C.I. 318, LATEST EDITION. ALL CONCRETE IS NORMAL WEIGHT CONCRETE.

3.2 ALL DETAILING, FABRICATION AND ERECTION OF REINFORCING BARS, UNLESS OTHERWISE NOTED, MUST FOLLOW THE A.C.I. "DETAILING MANUAL" FOR DETAILING PRACTICES FOR DETAILING REINFORCED CONCRETE", A.C.I. 315, LATEST EDITION.

3.3 ALL CONCRETE SHALL HAVE A MINIMUM SLUMP OF 4" (UNLESS WATER REDUCING AGENTS ARE USED) AND SHALL HAVE A PROPER COMPRESSIVE STRENGTH AT 28 DAYS AS FOLLOWS:
3000 PSI FOR ALL CONCRETE, UNLESS NOTED OTHERWISE.
4000 PSI FOR GARAGE SLABS AND CONCRETE EXPOSED TO WEATHER. CONCRETE EXPOSED TO WEATHER SHALL HAVE A MAXIMUM WATER - CEMENT RATIO BY WEIGHT OF 0.45 AND SHALL BE AIR ENTRAINED WITH A MAXIMUM AIR CONTENT OF 6%.

BUT NOT LESS THAN 1 SACK OF CEMENT SHALL BE USED PER CUBIC YARD OF CONCRETE REGARDLESS OF 3/4 OF 28-DAY STRENGTH. NOT OVER 1-1/2 GALLONS OF WATER PER SACK OF CEMENT AND ADD MIX SHALL BE OBTAINED FROM ONE SOURCE AND OF CONCRETE. OBTAIN A QUALIFIED TESTING LABORATORY TO MAKE CONCRETE CYLINDERS AND PERFORM COMPRESSIVE TESTS. A MINIMUM OF THREE CYLINDERS SHALL BE TAKEN PER 50 CUBIC YARDS OF CONCRETE, WITH ONE TEST AT 7 DAYS AND TWO AT 28 DAYS.

3.4 REINFORCING BARS SHALL BE NEW BILLET STEEL CONFORMING TO ASTM A-615, GRADE 60.

3.5 STANDARD PROTECTIVE COVER OF REINFORCING BARS UNLESS OTHERWISE NOTED SHALL BE:
WHERE CAST AGAINST DIRT OR FILL: 3 IN.
EXPOSED TO EARTH OR WEATHER: 2 IN.
SLABS AND WALLS: 1 IN.
OTHER: 1-1/2 IN.

3.6 USE A NON-YELLOWING LIQUID CURING COMPOUND FOR ALL SURFACES NOT IN CONTACT WITH FORMS.

3.7 ALL ACCESSORIES SHALL BE IN ACCORDANCE WITH THE A.C.I. "MANUAL OF STANDARD PRACTICE FOR DETAILING REINFORCED CONCRETE", A.C.I. 315, LATEST EDITION. ACCESSORIES FOR EXPOSED CONCRETE SOFFITS SHALL HAVE PLASTIC COATED FEET.

3.8 VERTICAL CONSTRUCTION JOINTS IN FLOOR OR ROOF SLABS ARE TO BE AS SHOWN ON PLANS. NO HORIZONTAL JOINTS WILL BE PERMITTED IN SLABS OR BEAMS UNLESS OTHERWISE NOTED.

3.9 MAINTAIN A MINIMUM OF ONE BAR DIAMETER (BUT NOT LESS THAN 1") BETWEEN ALL REINFORCING BARS (INCLUDING LAPS) ON ALL SLABS. MAINTAIN A MINIMUM OF 1-1/2" BETWEEN BARS IN COLUMNS, AND A MINIMUM OF 1-1/2 TIMES THE MAXIMUM COARSE AGGREGATE SIZE IN ALL CASES.

3.10 BARS SCHEDULED AND DETAILED "CONT" SHALL BE LAPPED 40 BAR DIAMETERS.

3.11 CONCRETE PLACED BY PUMPING SHALL MEET THE FOLLOWING REQUIREMENTS:
a) COARSE AGGREGATE SHALL BE GRADED FROM A MAXIMUM OF 1" DOWN.
b) PARTIALLY ALLOWABLE INCREASE IN CEMENT FACTOR SHALL BE 1/2 SACK PER CUBIC YARD OVER NORMAL MIX DESIGN.
c) MAXIMUM WATER CEMENT RATIO SHALL BE 1-1/2 GALLONS PER SACK OF CEMENT. IF MORE WORKABILITY IS REQUIRED, AN ADMIXTURE MAY BE USED.
d) MAXIMUM WEIGHT RATIO OF FINE AGGREGATES TO COARSE AGGREGATES SHALL NOT EXCEED 2/3.
e) REFER TO A.C.I. FOR, LATEST EDITION, SECTION 800, FOR OTHER PUMPING REQUIREMENTS.
f) IN NO CASE SHALL CONCRETE BE PUMPED THROUGH AN ALUMINUM TUBE.

3.12 KEYING OF REINFORCING BARS SHALL NOT BE PERMITTED, UNLESS APPROVED BY ENGINEER.

3.13 ALL CONCRETE WORK SHALL CONFORM TO THE LATEST APPROVED (BY LOCAL GOVERNMENT) EDITIONS OF THE FOLLOWING ACI AND ASTM DOCUMENTS:
ACI - 318 CODE
ACI - 214 COMPRESSION TESTS
ACI - 305 - HOT WEATHER
ACI - 306 - COLD WEATHER
ACI - 315 - DETAILING
ACI - 347 - FORMWORK
ACI - 301 - SPECIFICATION OF CONCRETE
ACI - 304 PLACING CONCRETE
ASTM - C94 - READY-MIX CONCRETE

# DIVISION 3 - CONCRETE/REINFORCING

3.14 FIELD AND LAB TESTING SHALL CONFORM TO THE LATEST APPROVED (BY LOCAL GOVERNMENT) EDITIONS OF ASTM:
ASTM C-31 FIELD CYLINDER SPECIMENS
ASTM C-40 SLUMP TEST
ASTM C-173 OR C-231 AIR CONTENT
ASTM C-39 LAB TESTING CYLINDERS
ASTM C-172 SAMPLING FRESH CONCRETE
ASTM C-42 HARDENED CORES

UPON COMPLETION OF CONCRETE TESTING, THE AGENCY SHALL CERTIFY THEIR RESULTS AS FOLLOWS:

I CERTIFY THAT THE FIELD AND LAB TESTING CONFORMS TO THE ASTM DOCUMENTS AND GOOD PRACTICE.

SIGNED _____ P.E.
(AGENCY)

## 03500 CONCRETE ACCESSORIES

3.15 WHERE ADHESIVE ANCHORS ARE INDICATED, CAREFULLY FOLLOW ALL MANUFACTURER RECOMMENDATIONS, ESPECIALLY REGARDING HOLE PREPARATION, EDGE DISTANCES, AND LIMITS ON BASE MATERIAL TEMPERATURE.

# DIVISION 4 - MASONRY

## CONCRETE MASONRY

4.1 ALL CONCRETE MASONRY SHALL BE IN ACCORDANCE WITH THE REQUIREMENTS OF THE LOCAL BUILDING CODES AND THE BUILDING CODE REQUIREMENTS FOR MASONRY STRUCTURES (ACI 530/ASCE 5/TMS 402 LATEST EDITION) AND SPECIFICATIONS FOR MASONRY STRUCTURES (ACI 530.1/ASCE 6/TMS 602 LATEST EDITION).

4.2 HOLLOW-CONCRETE MASONRY UNITS SHALL BE MEDIUM WEIGHT GRADE N UNITS, CONFORMING TO ASTM C 90-01.

4.3 MASONRY UNITS SHALL HAVE A MINIMUM UNIT COMPRESSIVE STRENGTH OF 1900 PSI WHICH TESTED IN ACCORDANCE WITH ASTM C-140, METHODS OF SAMPLING AND TESTING CONCRETE MASONRY UNITS". (fm = 1500 PSI).

4.4 MORTAR FOR MASONRY SHALL BE IN ACCORDANCE WITH ASTM - 270 TYPE "N", EXCEPT ALL MORTAR BELOW GRADE SHALL BE TYPE "S".

4.5 REINFORCING STEEL SHALL CONFORM TO ASTM A-615, GRADE 60.

4.6 THE MINIMUM LAP SPLICE LENGTH FOR REBAR SHALL BE 48 TIMES THE BAR DIAMETER (U.N.O.

4.7 UNLESS OTHERWISE NOTED, ALL MASONRY WALLS SHALL BE REINFORCED WITH 9 GA., HOT-DIP GALVANIZED HORIZONTAL WIRE REINFORCEMENT (TRUSS TYPE) EMBEDDED IN MORTAR JOINTS AT 16" O.C. WIRE REINFORCEMENT SHALL CONFORM TO ASTM DESIGNATION A-82, AND SHALL BE LAPPED AT LEAST 6" WITH AT LEAST ONE CROSS WIRE WITHIN THE LAP. FOR INTERIOR MASONRY WALLS FILL GALVANIZED REINFORCEMENT MAY BE USED.

4.8 REINFORCE AND GROUT SOLID ALL CELLS ADJACENT TO WALL OPENINGS. EXTEND ONE #4 BAR FROM FLOOR TO TOP OF WALL IN EACH CELL NEXT TO OPENINGS.

4.9 PROVIDE GROUT THAT CONFORMS TO THE REQUIREMENTS OF ASTM C 476. fm GROUT TO A CONSISTENCY WHICH HAS A SLUMP BETWEEN 8 AND 11 INCHES.

# DIVISION 5 - METALS

## 05000 STRUCTURAL STEEL FRAMING

5.1 STRUCTURAL STEEL BEAMS SHALL CONFORM TO ASTM SPECIFICATION A-992. ALL OTHER STRUCTURAL STEEL (BASE PLATES, BRACING ANGLES, MISC. STEEL) SHALL CONFORM TO ASTM SPECIFICATION A-36.

5.2 ALL SCHEDULE 40 STRUCTURAL STEEL PIPE SHALL CONFORM TO ASTM A53, GRADE B.

5.3 ALL STRUCTURAL STEEL SHALL BE DESIGNED, FABRICATED AND ERECTED IN ACCORDANCE WITH THE LATEST SPECIFICATIONS OF THE AMERICAN INSTITUTE OF STEEL CONSTRUCTION.

5.4 ALL WELDING SHALL CONFORM TO AWS PRINCIPLES. ALL WELDS SHALL BE DONE IN THE SHOP, AND ALL FIELD WELDING MUST BE APPROVED BY THE ENGINEER. WELDERS SHALL BE AWS CERTIFIED. ALL WELDING SHALL CONFORM TO THE AWS STRUCTURAL WELDING CODE.

# DIVISION 5 - METALS (CONTINUED)

5.5 ALL NON-SEISMIC GROUT INSTALLED BETWEEN BASEPLATES AND CONCRETE SHALL HAVE A MINIMUM COMPRESSIVE STRENGTH OF 5000 PSI OR MATCH THE CONCRETE STRENGTH, WHICHEVER IS GREATER.

5.6 REFER TO ARCHITECTURAL AND MECHANICAL PLANS FOR VERIFICATION OF ALL BOLTS, BLOCKING ANCHORS, ETC., FOR THE ANCHORAGE OF THEIR RESPECTIVE ITEMS.

5.7 ALL BEAMS AND COLUMNS SHALL BE FIELD SET WITHOUT SPLICES UNLESS OTHERWISE INDICATED ON PLANS.

5.8 ALL WELD ELECTRODES SHALL BE CLASS E70XX UNLESS NOTED OTHERWISE.

5.9 ALL CONNECTIONS SHALL DEVELOP THE GREATER OF THE REACTIONS INDICATED ON PLANS OR THE FULL STRENGTH OF THE BEAM. IN GENERAL FIELD CONNECTIONS SHALL BE MADE WITH HARDENED WASHERS AND 3/4" A-325 BOLTS.

5.10 STRUCTURAL STEEL SHALL BE PAINTED WITH FABRICATORS STANDARD SHOP PRIMER.

# DIVISION 6 - WOOD AND STRUCTURAL PLASTIC

## 06100 ROUGH CARPENTRY

6.1 UNLESS OTHERWISE NOTED, ALL STRUCTURAL DIMENSION LUMBER SHALL BE NO. 2 SPRUCE-PINE-FIR.

6.2 UNLESS OTHERWISE NOTED, ALL WOOD EXPOSED TO WEATHER, MOISTURE, OR IN CONTACT WITH MASONRY OR CONCRETE SHALL BE PRESERVATIVE TREATED.

6.3 ALL T-JOISTS SPECIFIED IN THESE PLANS ARE TRUS JOIST I-JOISTS (TJI) BY ILEVEL/WEYERHAEUSER. ALL JOISTS SHALL MEET THE MINIMUM REQUIREMENTS SET FORTH BY ILEVEL. ALL MANUFACTURER RECOMMENDATIONS AND FRAMING DETAILS SHALL BE FOLLOWED FOR CONSTRUCTION WITH THEIR PRODUCT.

6.4 ALL LAMINATED VENEER LUMBER (LVL) BEAMS SHALL PROVIDE ALLOWABLE DESIGN VALUES OF 2600 PSI IN BENDING, 285 PSI IN HORIZONTAL SHEAR AND 1,900,000 PSI IN MODULUS OF ELASTICITY.

6.5 ALL NAILS SHALL BE STEEL WIRE COMMON NAILS MEETING THE FOLLOWING DIMENSIONS, UNLESS NOTED OTHERWISE (SUCH AS FOR x 1-1/2"):

| SPECD NAIL | DIAMETER | LENGTH |
|---|---|---|
| 6d | 0.113" | 2" |
| 8d | 0.131" | 2-1/2" |
| 10d | 0.148" | 3" |
| 12d | 0.148" | 3-1/4" |
| 16d | 0.162" | 3-1/2" |

6.6 NAIL GUNS SHALL NOT BE USED TO INSTALL METAL HANGERS OR STRAPS UNLESS HANGER HAS BEEN APPROVED FOR POWER NAIL INSTALLATION PER MANUFACTURER. FOLLOW ALL MANUFACTURER RECOMMENDATIONS.

6.7 HANGERS AND METAL CONNECTORS SHOWN IN THESE DRAWINGS ARE BY SIMPSON STRONG-TIE UNLESS NOTED OTHERWISE. FOLLOW ALL MANUFACTURER RECOMMENDATIONS FOR THE INSTALLATION OF THEIR PRODUCT.

6.8 ALL FRAMING FASTENERS FRAMING INTO THE SIDE OF A HEADER SHALL BE ATTACHED USING METAL JOIST HANGERS.

6.9 ALL HANGERS IN CONTACT WITH PRESERVATIVE TREATED (PT) FRAMING SHALL BE STAINLESS STEEL, UNLESS NOTED OTHERWISE. FASTENERS ASSOCIATED WITH SUCH HANGERS SHALL ALSO BE STAINLESS STEEL. HOT DIP GALVANIZED HANGERS AND FASTENERS MAY BE USED AT DAMP'S PRESSURE, BUT GALVANIZATION MUST PROVIDE MORE THAN STAINLESS STEEL. IN NO CASE SHALL PLAIN STEEL OR STAINLESS STEEL BE IN CONTACT WITH GALVANIZED STEEL.

6.10 EXCEPT AS NOTED OTHERWISE, NAILING AND DETAILS OF CONSTRUCTION SHALL BE IN ACCORDANCE WITH THE REQUIREMENTS OF THE LOCAL BUILDING CODE AND THE AMERICAN WOOD COUNCIL'S (AWC'S) NATIONAL DESIGN SPECIFICATION (NDS) FOR STRESS GRADE LUMBER AND ITS FASTENINGS.

6.11 ALL WALL STUDS SHALL BE SPACED AT 16" O.C., PARTIES, AND SHALL BE FULL HEIGHT WITHOUT INTERMEDIATE PLATE LINE, UNLESS DETAILED OTHERWISE.

6.12 ALL EXTERIOR AND BEARING WALLS SHALL HAVE SOLID 2" BLOCKING AT 4'-0" O.C. MAX. VERTICALLY. TOP NAIL WITH 2 - 16d NAILS OR SIDE TOE NAIL WITH 2 - 16d NAILS.

6.13 PROVIDE (1) JACK STUDS BELOW ALL BEAM AND HEADER BEARING, UNLESS NOTED OTHERWISE.

6.14 ALL POSTS AND JACK STUDS SHALL BEAR DIRECTLY ON SUPPORTING BEAMS OR FOUNDATION WALLS. BLOCK SOLID UNDER ALL POST AND JACK STUD BEARING.

6.15 ALL MULTIPLE MEMBER BEAMS TO BE FASTENED TOGETHER WITH 16d NAILS 8 @ 12" O.C., TOP AND BOTTOM, UNLESS NOTED OTHERWISE.

6.16 PLACE DOUBLE JOISTS UNDER ALL PARTITIONS IN LINE WITH JOIST SPAN.

# DIVISION 6 - WOOD AND STRUCTURAL PLASTIC (CONTINUED)

6.17 ROOF SHEATHING SHALL BE 19/32" APA RATED SHEATHING 32/16 EXPOSURE 1. FASTEN WITH 8d COMMON NAILS AT 6" O.C. AT ALL SUPPORTED EDGES, 6d AT 12" O.C. AT ALL INTERMEDIATE SUPPORTS. STAGGER ALL JOINTS. INSTALL STRENGTH AXIS (LONG DIMENSION) PERPENDICULAR TO SUPPORTS.

6.18 WALL SHEATHING SHALL BE 15/32" APA RATED SHEATHING 32/16 EXPOSURE 1. FASTEN WITH 8d COMMON NAILS AT 6" O.C. AT ALL SUPPORTED EDGES, 6d AT 12" O.C. AT ALL INTERMEDIATE SUPPORTS. STAGGER ALL JOINTS.

6.19 FLOOR SHEATHING SHALL BE 23/32" APA RATED STURD-I-FLOOR 16 O.C. EXPOSURE 1, TONGUE AND GROOVE. FASTEN WITH 8d RING OR SCREW SHANK NAILS AT 6" O.C. AT ALL SUPPORTED EDGES, 8d RING OR SCREW SHANK NAILS AT 12" O.C. AT ALL INTERMEDIATE SUPPORTS. STAGGER ALL JOINTS. INSTALL STRENGTH AXIS (LONG DIMENSION) PERPENDICULAR TO SUPPORTS.

### LINTEL SCHEDULE

| OPENING | LOOSE ANGLE SIZE |
|---|---|
| 2'-0" - 3'-6" | 3 1/2" x 3 1/2" x 5/16" |
| 3'-7" - 5'-0" | 4" x 3 1/2" x 5/16" |
| 5'-1" - 6'-6" | 5" x 3 1/2" x 5/16" |
| 6'-7" - 8'-0" | 6" x 4" x 3/8" |
| 8'-1" - 9'-6" | 8" x 4" x 1/2" |

NOTE:
1. LOOSE LINTELS ARE FOR EACH 4" WIDTH OF MASONRY. ALL ANGLES SHALL HAVE THEIR SHORT LEG OUTSTANDING.
2. ALL LINTELS SHALL HAVE 8" MINIMUM BEARING.
3. LINTELS OVER THAN 5/16 OPENINGS IN BETWEEN MASONRY PARTITIONS SHALL BE SUPPORTED BY BOND BEAMS OR REINFORCED MASONRY IN BOND BEAM. SPECIFIED SHALL BE 8d AND TOP AND BOTTOM WITH (1) #4 BAR.
4. GALVANIZE LOOSE STEEL LINTELS LOCATED IN EXTERIOR WALLS.

ACTUAL DIMENSIONS NOTED ON PLANS SHOULD ALWAYS BE USED. SCALES ON DRAWINGS ARE PROVIDED ONLY FOR YOUR CONVENIENCE. DO NOT SCALE DRAWINGS FROM ACCURATE MEASUREMENTS ARE REQUIRED. NORTH SCALE FOR SCALE, THIS LINE IS 1" LONG WHEN THE DRAWING IS PRINTED AT FULL SCALE.



MP STRUCTURES, LLC

TEMPORARY TYPICAL FLOOR FRAMING
940 CAVITT AVENUE
TRAFFORD, PA 15085

AS NOTED
S0.1



FOUNDATION PLAN

NOTE: NO NEW FOOTINGS ARE REQUIRED IF IT IS VERIFIED IN THE FIELD THAT THE EXISTING FOOTINGS ARE ADEQUATELY SIZED FOR THE ALLOWABLE BEARING PRESSURE.



FIRST FLOOR FRAMING



SECOND FLOOR FRAMING PLAN

NOTES:
1. EXISTING BEAMS & COLUMNS MAY BE LEFT IN PLACE IF IN GOOD CONDITION & ADEQUATELY SIZED. V.I.F. AFTER REMOVAL OF DEBRIS & FINISHES.
2. ALL TEMPORARY CONDITIONS ARE THE RESPONSIBILITY OF THE CONTRACTOR.
3. AT LEAST 75% OF FLOOR FRAMING SHOULD BE IN PLACE TO BRACE EXISTING WALLS. TEMPORARY WALL BRACING MAY BE USED IN LIEU OF INSTALLING FLOOR FRAMING (DES. BY OTHERS).
4. ALL WOOD FRAMING IN CONTACT WITH MASONRY OR CONCRETE MUST BE PRESSURE TREATED OR SEPARATED FROM MASONRY WITH FLASHING OR OTHER WATER PROOFING.
5. DESIGN CRITERIA:
   5.1. OFFICE LIVE LOAD = 50 PSF + 15 PSF PARTITION LOAD
   5.2. APARTMENT LIVE LOAD = 40 PSF
6. INSTALL NEW SHEATHING EVERYWHERE NEW JOISTS ARE INSTALLED.

TEMPORARY TYPICAL FLOOR FRAMING
560 CAVITT AVENUE
TRAFFORD, PA 15085

VP STRUCTURES, LLC

S1.2



THIRD FLOOR FRAMING PLAN

NOTES:
1. EXISTING BEAMS & COLUMNS MAY BE LEFT IN PLACE IF IN GOOD CONDITION & ADEQUATELY SIZED. V.I.F. AFTER REMOVAL OF DEBRIS & FINISHES.
2. ALL TEMPORARY CONDITIONS ARE THE RESPONSIBILITY OF THE CONTRACTOR.
3. AT LEAST 75% OF FLOOR FRAMING SHOULD BE IN PLACE TO BRACE EXISTING WALLS. TEMPORARY WALL BRACING MAY BE USED IN LIEU OF INSTALLING FLOOR FRAMING (10% OF OTHERS).
4. ALL WOOD FRAMING IN CONTACT WITH MASONRY OR CONCRETE MUST BE PRESSURE TREATED OR SEPARATED FROM MASONRY WITH FLASHING OR OTHER WATER PROOFING.
5. DESIGN CRITERIA:
   5.1   OFFICE LIVE LOAD = 50 PSF + 15 PSF PARTITION LOAD
   5.2   APARTMENT LIVE LOAD = 40 PSF
6. INSTALL NEW SHEATHING EVERYWHERE NEW JOISTS ARE INSTALLED.

S1.3



ROOF FRAMING PLAN



**Joanne Parise**

| | |
|---|---|
| **From:** | Craig McVicker <c.mcvicker@cea-code.com> |
| **Sent:** | Monday, June 25, 2018 9:04 AM |
| **To:** | Jim Creenan; Craig Alexander |
| **Cc:** | boroughmanager@traffordborough.com |
| **Subject:** | RE: 501 Cavitt |

Mr. Creenan,

Good Morning, I had the opportunity over the weekend to review the submitted PDF for 501 Cavitt. Here are my questions:

1) I could not approve these drawings for a permit as there are many unknowns. Notes such as "verify" "design by others" and information on the "HIT-HY 70" anchor as to if they are designed to be installed in brick construction or only solid concrete. There is not sufficient design to demonstrate that the site conditions were fully understood or even seen by the designer.

Can the structural engineer give more detail on the HIT-HY?

Other than that, the plans are suitable under the UCC. The application and 2-sets of final plans must be submitted to the Borough offices along with contractor information and proof of W/C.

Craig

**From:** Jim Creenan <jcreenan@cbattorneys.com>
**Sent:** Wednesday, June 20, 2018 3:57 PM
**To:** Craig Alexander <calexander@dicelaw.com>; Craig McVicker <c.mcvicker@cea-code.com>
**Subject:** 501 Cavitt
**Importance:** High

Gentlemen –

I was able to meet today with the structural engineer to review the requirements for this project. He completed the drawings necessary for work discussed at the courthouse.

At the hearing last month, we requested the postponement so we can provide the attached to you. I have attached the demo application and the requested structural drawings. If acceptable to you, we will complete the submission (We need the insurance certificate) directly to Borough or as you otherwise direct. Please confirm.

Are you able to give your blessing now? Otherwise, please confirm your consent to the postponement of Monday's continuation of the hearing. I will prep the motion and consent order required by Judge Smail.

I look forward to your prompt response.

Thanks,

Jim



**EXHIBIT**

**21**

1

JAMES W. CREENAN, ESQUIRE
CREENAN & BACZKOWSKI, PC
TOWN SQUARE PROFESSIONAL BUILDING
SUITE 304
3907 OLD WILLIAM PENN HIGHWAY
MURRYSVILLE, PA 15668
(724) 733-8832
(724) 733-8834 (FAX)
JCREENAN@CBATTORNEYS.COM
WWW.CBATTORNEYS.COM

IMPORTANT NOTICE. THE E-MAIL COMMUNICATION, TOGETHER WITH ANY ATTACHMENTS, IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN CONFIDENTIAL INFORMATION THAT IS PRIVILEGED AND/OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU RECEIVED THIS COMMUNICATION IN ERROR. ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU RECEIVE THIS COMMUNICATION IN ERROR PLEASE CALL THE TELEPHONE NUMBER LISTED ABOVE, OR SEND A RETURN E-MAIL, AND THEN DELETE THIS MESSAGE, TOGETHER WITH ANY ATTACHMENTS.

**Joanne Parise**

| | |
|---|---|
| **From:** | Jim Creenan |
| **Sent:** | Sunday, July 22, 2018 4:47 PM |
| **To:** | 'Craig Alexander'; Craig McVicker |
| **Cc:** | frank.yeager@lanalexcloyd.com; 'Michael Romesburg' |
| **Subject:** | Cavitt |

Gentlemen –

In response to Mr. McVicker's review of the submitted demo plan, I offer the following response:

- Notes such as "verify": Areas where "verify" is noted must be verified after demolition has occurred and some staging is in place to investigate the areas in question. "Verify" is not an unusual or uncommon note in design drawings. Most contractors, designers, and inspectors even use the short hand VIF for verify in field because it is so common to ask for items to be verified in existing buildings.
- "Design by others": Design by others means that the item noted or pointed to was not designed by MR Structures. I see this noted in two locations in the drawings pointing to flashing in details 7&8/S3.1. The flashing is not a structural item and not required for the structural integrity of the detail. The flashing is shown and noted as a courtesy to the owner and contractor to alert them to the fact that it would beneficial to the their completed product to install some type of water/moisture protection in this area. Flashing may not even be the best solution available.
- Can the structural engineer give more detail on the HIT-HY? https://www.hilti.com/anchor-fasteners/injectable-adhesive-anchors/r3562 HY 70 is a product specifically designed to be installed in masonry. Brick is masonry. Calling out HIT-HY 70 specifies a specific product which is called a proprietary specification. Proprietary specifications are those that require the use of a single approved product type for any particular installation. Proprietary specifications are often used in cases where there is existing equipment or installations already on site. In these cases the owner may want to maintain consistency of materials or possibly simply prefers a specific type of product. Also, in highly complex installations where there is only one specific piece of equipment that will accomplish a specified task, a proprietary specification is required.
- Comments about the designer. Mr. Romesburg and two other engineers from him office have been on site several times, and this comment is not properly placed.

I note that these plans are simple, the notes are standard and obvious, and they do not require the clarification proposed by Mr. McVicker as any competent contractor will clearly understand them.

I trust that this fully addresses his comments and that you will now approve the submittal. Upon your confirmation, we will compete the requested application packet in full.

JAMES W. CREENAN, ESQUIRE
CREENAN & BACZKOWSKI, PC
TOWN SQUARE PROFESSIONAL BUILDING
SUITE 304
3907 OLD WILLIAM PENN HIGHWAY
MURRYSVILLE, PA 15668
(724) 733-8832
(724) 733-8834 (FAX)
JCREENAN@CBATTORNEYS.COM
WWW.CBATTORNEYS.COM



EXHIBIT
22

IMPORTANT NOTICE. THE E-MAIL COMMUNICATION, TOGETHER WITH ANY ATTACHMENTS, IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN CONFIDENTIAL INFORMATION THAT IS PRIVILEGED AND/OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU RECEIVED THIS COMMUNICATION IN ERROR. ANY REVIEW, DISSEMINATION,

DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED.  IF YOU RECEIVE THIS COMMUNICATION IN ERROR PLEASE CALL THE TELEPHONE NUMBER LISTED ABOVE, OR SEND A RETURN E-MAIL, AND THEN DELETE THIS MESSAGE, TOGETHER WITH ANY ATTACHMENTS.

## Joanne Parise

| | |
|---|---|
| **From:** | Jim Creenan |
| **Sent:** | Saturday, August 18, 2018 3:56 PM |
| **To:** | 'Craig McVicker'; Craig Alexander |
| **Cc:** | frank.yeager@lanalexcloyd.com; Michael Romesburg |
| **Subject:** | RE: Cavitt |

Craig -
We are going on 1 month from your reply without any further response. Please confirm the plans are acceptable. Thank you in advance,
Jim

**From:** Craig McVicker <c.mcvicker@cea-code.com>
**Sent:** Sunday, July 22, 2018 5:04 PM
**To:** Jim Creenan <jcreenan@cbattorneys.com>; Craig Alexander <calexander@dicelaw.com>
**Cc:** frank.yeager@lanalexcloyd.com; Michael Romesburg <mike@mrstructures.com>
**Subject:** Re: Cavitt

Mr. Creenan,

I have forwarded the information provided to the plans examiner that reviewed the details. I will follow up with him in the AM.
Craig M

**From:** Jim Creenan <jcreenan@cbattorneys.com>
**Sent:** Sunday, July 22, 2018 4:46:45 PM
**To:** Craig Alexander; Craig McVicker
**Cc:** frank.yeager@lanalexcloyd.com; Michael Romesburg
**Subject:** Cavitt

Gentlemen –

In response to Mr. McVicker's review of the submitted demo plan, I offer the following response:

- Notes such as "verify": Areas where "verify" is noted must be verified after demolition has occurred and some staging is in place to investigate the areas in question. "Verify" is not an unusual or uncommon note in design drawings. Most contractors, designers, and inspectors even use the short hand VIF for verify in field because it is so common to ask for items to be verified in existing buildings.
- "Design by others": Design by others means that the item noted or pointed to was not designed by MR Structures. I see this noted in two locations in the drawings pointing to flashing in details 7&8/S3.1. The flashing is not a structural item and not required for the structural integrity of the detail. The flashing is shown and noted as a courtesy to the owner and contractor to alert them to the fact that it would beneficial to the their completed product to install some type of water/moisture protection in this area. Flashing may not even be the best solution available.
- Can the structural engineer give more detail on the HIT-HY? https://www.hilti.com/anchor-fasteners/injectable-adhesive-anchors/r3562 HY 70 is a product specifically designed to be installed in masonry. Brick is masonry. Calling out HIT-HY 70 specifies a specific product which is called a proprietary specification. Proprietary specifications are those that require the use of a single approved product type for any particular installation. Proprietary specifications are often used in cases where there is existing equipment or

1

**EXHIBIT**
**23**

installations already on site. In these cases the owner may want to maintain consistency of materials or possibly simply prefers a specific type of product. Also, in highly complex installations where there is only one specific piece of equipment that will accomplish a specified task, a proprietary specification is required.

- Comments about the designer. Mr. Romesburg and two other engineers from him office have been on site several times, and this comment is not properly placed.

I note that these plans are simple, the notes are standard and obvious, and they do not require the clarification proposed by Mr. McVicker as any competent contractor will clearly understand them.

I trust that this fully addresses his comments and that you will now approve the submittal. Upon your confirmation, we will compete the requested application packet in full.

JAMES W. CREENAN, ESQUIRE
CREENAN & BACZKOWSKI, PC
TOWN SQUARE PROFESSIONAL BUILDING
SUITE 304
3907 OLD WILLIAM PENN HIGHWAY
MURRYSVILLE, PA 15668
(724) 733-8832
(724) 733-8834 (FAX)
JCREENAN@CBATTORNEYS.COM
WWW.CBATTORNEYS.COM

IMPORTANT NOTICE. THE E-MAIL COMMUNICATION, TOGETHER WITH ANY ATTACHMENTS, IS INTENDED FOR THE USE OF THE INDIVIDUAL OR ENTITY TO WHICH IT IS ADDRESSED AND MAY CONTAIN CONFIDENTIAL INFORMATION THAT IS PRIVILEGED AND/OR CONFIDENTIAL AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT YOU RECEIVED THIS COMMUNICATION IN ERROR. ANY REVIEW, DISSEMINATION, DISTRIBUTION OR COPYING OF THIS COMMUNICATION IS STRICTLY PROHIBITED. IF YOU RECEIVE THIS COMMUNICATION IN ERROR PLEASE CALL THE TELEPHONE NUMBER LISTED ABOVE, OR SEND A RETURN E-MAIL, AND THEN DELETE THIS MESSAGE, TOGETHER WITH ANY ATTACHMENTS.

## Joanne Parise

| | |
|---|---|
| **From:** | Craig McVicker <c.mcvicker@cea-code.com> |
| **Sent:** | Tuesday, August 21, 2018 11:31 AM |
| **To:** | Jim Creenan; Craig Alexander |
| **Cc:** | frank.yeager@lanalexcloyd.com; Michael Romesburg; boroughmanager@traffordborough.com |
| **Subject:** | RE: Cavitt |

Mr. Creenan,

I have reviewed the additional information with our Plans Examiner and we are confirming the information and follow up information (via email) as being sufficient for permitting. Please have your client fill out a building permit application with the Borough of Trafford and submit the information as received in the proper form as the PA UCC describes. Once the proper application and information is received, I will execute the Building Permit for the specified alterations as described. The procured permit will have the follow up inspections as required attached to it.

Craig I. McVicker, BCO

---

**From:** Jim Creenan <jcreenan@cbattorneys.com>
**Sent:** Saturday, August 18, 2018 3:56 PM
**To:** Craig McVicker <c.mcvicker@cea-code.com>; Craig Alexander <calexander@dicelaw.com>
**Cc:** frank.yeager@lanalexcloyd.com; Michael Romesburg <mike@mrstructures.com>
**Subject:** RE: Cavitt

Craig -
We are going on 1 month from your reply without any further response. Please confirm the plans are acceptable. Thank you in advance,
Jim

---

**From:** Craig McVicker <c.mcvicker@cea-code.com>
**Sent:** Sunday, July 22, 2018 5:04 PM
**To:** Jim Creenan <jcreenan@cbattorneys.com>; Craig Alexander <calexander@dicelaw.com>
**Cc:** frank.yeager@lanalexcloyd.com; Michael Romesburg <mike@mrstructures.com>
**Subject:** Re: Cavitt

Mr. Creenan,

I have forwarded the information provided to the plans examiner that reviewed the details. I will follow up with him in the AM.
Craig M

---

**From:** Jim Creenan <jcreenan@cbattorneys.com>
**Sent:** Sunday, July 22, 2018 4:46:45 PM
**To:** Craig Alexander; Craig McVicker
**Cc:** frank.yeager@lanalexcloyd.com; Michael Romesburg
**Subject:** Cavitt

Gentlemen –



**EXHIBIT**
**24**

In response to Mr. McVicker's review of the submitted demo plan, I offer the following response:

- Notes such as "verify": Areas where "verify" is noted must be verified after demolition has occurred and some staging is in place to investigate the areas in question. "Verify" is not an unusual or uncommon note in design drawings. Most contractors, designers, and inspectors even use the short hand VIF for verify in field because it is so common to ask for items to be verified in existing buildings.
- "Design by others": Design by others means that the item noted or pointed to was not designed by MR Structures. I see this noted in two locations in the drawings pointing to flashing in details 7&8/S3.1. The flashing is not a structural item and not required for the structural integrity of the detail. The flashing is shown and noted as a courtesy to the owner and contractor to alert them to the fact that it would beneficial to the their completed product to install some type of water/moisture protection in this area. Flashing may not even be the best solution available.
- Can the structural engineer give more detail on the HIT-HY? https://www.hilti.com/anchor-fasteners/injectable-adhesive-anchors/r3562 HY 70 is a product specifically designed to be installed in masonry. Brick is masonry. Calling out HIT-HY 70 specifies a specific product which is called a proprietary specification. Proprietary specifications are those that require the use of a single approved product type for any particular installation. Proprietary specifications are often used in cases where there is existing equipment or installations already on site. In these cases the owner may want to maintain consistency of materials or possibly simply prefers a specific type of product. Also, in highly complex installations where there is only one specific piece of equipment that will accomplish a specified task, a proprietary specification is required.
- Comments about the designer. Mr. Romesburg and two other engineers from him office have been on site several times, and this comment is not properly placed.

I note that these plans are simple, the notes are standard and obvious, and they do not require the clarification proposed by Mr. McVicker as any competent contractor will clearly understand them.

I trust that this fully addresses his comments and that you will now approve the submittal. Upon your confirmation, we will compete the requested application packet in full.

James W. Creenan, Esquire
Creenan & Baczkowski, PC
Town Square Professional Building
Suite 304
3907 Old William Penn Highway
Murrysville, PA 15668
(724) 733-8832
(724) 733-8834 (fax)
JCREENAN@CBATTORNEYS.COM
WWW.CBATTORNEYS.COM

IMPORTANT NOTICE. The e-mail communication, together with any attachments, is intended for the use of the individual or entity to which it is addressed and may contain confidential information that is privileged and/or confidential and exempt from disclosure under applicable law. If you are not the intended recipient, or the employee or agent responsible for delivering this message to the intended recipient, you are hereby notified that you received this communication in error. Any review, dissemination, distribution or copying of this communication is strictly prohibited. If you receive this communication in error please call the telephone number listed above, or send a return e-mail, and then delete this message, together with any attachments.

## Joanne Parise

| | |
|---|---|
| **From:** | Joanne Parise |
| **Sent:** | Friday, November 9, 2018 12:41 PM |
| **To:** | 'Craig McVicker'; 'Craig Alexander' |
| **Cc:** | Jim Creenan; 'frank.yeager@lanalexcloyd.com' |
| **Subject:** | 501 Cavitt Avenue - Application for Demolition Permit |
| **Attachments:** | 20181109_16885_Application for Demolition Permit.pdf |

Mr. McVicker and Mr. Alexander,

Please find attached Mr. Frank Yeager's Application for Demolition Permit for 501 Cavitt Avenue. We have been unable to determine the application fee, if any. Would you please process the application and, if there is a fee, please advise us. Thank you in advance.

Sincerely,

Joanne L. Parise
*Paralegal*
Creenan & Baczkowski, PC
3907 Old William Penn Highway
Suite 304
Murrysville, PA 15668
(724) 733-8832
(724) 733-8834 (fax)

**EXHIBIT**
**25**

1

**Date:** 06/18/2018

**Permit No:** _____

# BOROUGH OF TRAFFORD
## APPLICATION FOR DEMOLITION PERMIT

| **Application Type** (check all that apply) | FENCE ☐ <br> RETAINING WALL ☐ <br> DETACHED ACCESSORY STRUCTURE ☐ <br> INTERIOR SPACE REMODEL/ALTERATION ✓ | RESIDENTIAL STRUCTURE ☐ <br> COMMERCIAL STRUCTURE ✓ <br> INDUSTRIAL STRUCTURE ☐ <br> OTHER _____ |
|---|---|---|

| **Site informtion** | **Owner information** |
|---|---|

Name     Lanalex Cloyd Inc.

Address   501-503 Cavitt Ave

County     Westmoreland

Phone     724-461-7003           Email   frank.yeager@lanalexcloyd.com

Subdivision _____     Lot _____     Block _____

| **Property is** | Owner occupied | Owner occupied with rental units | Rental only |
|---|---|---|---|

| **Construction Cost** | Construction Cost $ 48,500 |
|---|---|

| **Complete description of work** | Removal of parapet wall, chimneys, and collapsed portion of building interior. <br> Replacement of roof membrane, damaged roof elements, and Fifth St sidewalk <br> Bracing of exterior wall in collapsed portion of the building. |
|---|---|

| **Documentation required** (minor repairs do not require site plans or construction documents) | ✓ Site plan showing the proposed work (including electrical, plumbing or mechanical systems) survey plan required. <br><br> ☐ Owner's drawings **may** be accepted by the code official, however, these drawings **must** show sufficient information to convey all required dimensions, size and type of materials, and details of materials used, and clearances. <br><br> ✓ Insurance certificates of contractors must be filed with this application |
|---|---|

| **Applicant Signature** | X *Frank Yeager*        Date: 10/17/18 |
|---|---|

| **OFFICE USE ONLY** | APPLICATION       APPROVED       DENIED <br> REASON: |
|---|---|

| **BCO SIGNATURE** | X _____   #003051 |
|---|---|

I:\TRAFFORD\FORMS\[DEMOLITION_Permit_Application_TRAFFORD_BOROUGH.xlsx]Page 2

| Contractor Information | Company name | Aplt Construction Group | | | |
|---|---|---|---|---|---|
| | Address | 5955 Somerset Pike | | | |
| | | Boswell, PA 15531 | | | |
| | Contact Person | David Lawing | | Email | davidlawing4356@gmail.com |
| | Phone | 301-388-6377 | | Fax | |
| Contractor Insurance Information | Insurer | ACUITY, A Mutual Insurance Company | | | |
| | Police type | | | | |
| | Coverage | General liability | per Occur. 1,000,000 | Agg. | 2,000,000 |

| Signature | PRINT NAME David Lawing | | |
|---|---|---|---|
| | SIGNATURE | DATE | 10/17/18 |

Note: All plumbing inspections and plumbing permitting in Allegheny County is conducted by the Allegheny County Health Department (plumbing division) and if applicable to your project, must be completed before final inspection can be approved.

Certain portions of Trafford Borough are located in Allegheny County

## - OFFICIAL USE ONLY

| Fee Schedule | |
|---|---|
| Residential | |
| Commercial | |
| Industrial | |
| Demolition | |
| Signs _____ x _____ _____ | |
| Other | |
| Other | |
| Total | |

Permit Issued _____      Permit Refused _____
Reason Revised
Z.H..B. Case #
Z.H.B. Decision:

x.

Building Code Official/Construction Code Official
Certification No.

I:\TRAFFORD\FORMS\[DEMOLITION_Permit_Application_TRAFFORD_BOROUGH.xlsx]Page 2

1063145 David Lawing                    Certificate Of Insurance                    10/17/2018 2:25:23 PM



# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 10/17/2018 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | |
|---|---|---|
| BIN Insurance Holdings, LLC 30 N. LaSalle, 25th Floor, Chicago, IL 60602 | PHONE (A/C, No, Ext): (800) 688-1984 | FAX (A/C, No): 877-826-9067 |
| | E-MAIL ADDRESS: | |
| | INSURER(S) AFFORDING COVERAGE | NAIC # |
| | INSURER A: ACUITY, A Mutual Insurance Company | 14184 |
| INSURED David Lawing 5955 Somerset Pike, Boswell, PA, 15531 | INSURER B: | |
| | INSURER C: | |
| | INSURER D: | |
| | INSURER E: | |
| | INSURER F: | |

## COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | ✓ COMMERCIAL GENERAL LIABILITY | Yes | | ZB2302 | 9/27/2018 | 9/27/2019 | EACH OCCURRENCE | $ 1,000,000 |
| | ☐ CLAIMS-MADE ✓ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ 100,000 |
| | | | | | | | MED EXP (Any one person) | $ 5,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ 1,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 2,000,000 |
| | ✓ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ 2,000,000 |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ☐ NON-OWNED AUTOS | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Lanalex Cloyd Inc. and the Borough of Trafford are named as Additional Insured as their interests may appear in regards to General Liability

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Apit Construction 5955 Somerset Pike Boswell, PA 15831 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD

# CERTIFICATE OF LIABILITY INSURANCE

**ACORD**

**DATE (MM/DD/YYYY)**
11/02/2018

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| Automatic Data Processing Insurance Agency, Inc. 1 Adp Boulevard Roseland, NJ 07068 | PHONE (A/C, No, Ext): | | FAX (A/C, No): |
| | E-MAIL ADDRESS: | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Ohio Security Insurance Company | | 24082 |
| INSURED APIT CONSTRUCTION GROUP 5955 Somerset Pike Boswell, PA 15531 | INSURER B : | | |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES     CERTIFICATE NUMBER: 1015135     REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | COMMERCIAL GENERAL LIABILITY | | | | | | EACH OCCURRENCE | $ |
| | CLAIMS-MADE ☐ OCCUR ☐ | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ |
| | POLICY ☐ PRO-JECT ☐ LOC ☐ | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ALL OWNED AUTOS ☐ SCHEDULED AUTOS ☐ | | | | | | BODILY INJURY (Per accident) | $ |
| | HIRED AUTOS ☐ NON-OWNED AUTOS ☐ | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | UMBRELLA LIAB ☐ OCCUR ☐ | | | | | | EACH OCCURRENCE | $ |
| | EXCESS LIAB ☐ CLAIMS-MADE ☐ | | | | | | AGGREGATE | $ |
| | DED ☐ RETENTION $ | | | | | | | $ |
| A | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? ☒ N (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | N | XWS59124912 | 08/29/2018 | 08/29/2019 | ☒ PER STATUTE ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ 100,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ 100,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ 500,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Lanalex Cloyd Inc 5204 Faulk Dr Export, PA 15632 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE _Nancy M. Mui_ |

© 1988-2014 ACORD CORPORATION. All rights reserved.

ACORD 25 (2014/01)     The ACORD name and logo are registered marks of ACORD

Print | Close Window

Subject: Fwd: 501 Cavitt Avenue - Application for Demolition Permit
From: Craig McVicker <c.mcvicker@cea-code.com>
Date: Fri, Nov 09, 2018 1:08 pm
To: Craig Alexander <calexander@dicelaw.com>, "boroughmanager@traffordborough.com" <boroughmanager@traffordborough.com>
Attach: 20181109_16885_Application for Demolition Permit.pdf

Let's discuss this first, I think we may be able to withhold this under Act 90.

Craig M

---

From: Joanne Parise <jparise@cbattorneys.com>
Sent: Friday, November 9, 2018 12:42 PM
To: Craig McVicker; Craig Alexander
Cc: Jim Creenan; frank.yeager@lanalexcloyd.com
Subject: 501 Cavitt Avenue - Application for Demolition Permit

Mr. McVicker and Mr. Alexander,

Please find attached Mr. Frank Yeager's Application for Demolition Permit for 501 Cavitt Avenue. We have been unable to determine the application fee, if any. Would you please process the application and, if there is a fee, please advise us. Thank you in advance.

Sincerely,

Joanne L. Parise
*Paralegal*
Creenan & Baczkowski, PC
3907 Old William Penn Highway
Suite 304
Murrysville, PA 15668
(724) 733-8832
(724) 733-8834 (fax)

Copyright © 2003-2019. All rights reserved.



EXHIBIT
26

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA

LANALEX CLOYD,

              Plaintiffs

      vs.

TRAFFORD BOROUGH

              Defendant

CIVIL DIVISION-EQUITY

NO.   807 of 2018

**MOTION TO RESUME HEARING**

FILED ON BEHALF OF:

Trafford Borough, Defendant

COUNSEL OF RECORD FOR THIS PARTY:

Craig H. Alexander, Esquire
Pa. I.D. # 62938

BRUCE E. DICE & ASSOCIATES, P.C.
787 Pine Valley Drive, Ste E
Pittsburgh, PA  15239
Tel. No. (724) 733-3080
Fax No. (724) 327-9659
Email.calexander@dicelaw.com

**EXHIBIT**
**27**

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA -- CIVIL DIVISION-EQUITY

LANALEX CLOYD,                          )
                                        )
                 Plaintiffs             )          807 of 2018
                                        )
        vs.                             )
                                        )
TRAFFORD BOROUGH                        )
                                        )
                 Defendant              )

TO:     James W. Creenan, Esquire
        Creenan & Baczkowski, PC
        3007 Old William Penn Highway
        Murrysville, PA 15068
        jcreenan@cbattorneys.com

### NOTICE OF PRESENTATION

Please take notice that the within Motion will be presented to the Hon. Harry F. Smail, Jr. on the 8th day of March, 2019 at 8:30 o'clock a.m or as soon thereafter as suits the convenience of the Court.

March 4, 2019

Date                                    Craig H. Alexander, Esquire

### CERTIFICATE OF SERVICE

I, certify that a true and correct copy of the within Motion was sent via email the above named person at jcreenan@cbattorneys.com on the 4th day of March, 2019.

                                        Craig H. Alexander, Esquire

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA -- CIVIL DIVISION-EQUITY

| | | |
|---|---|---|
| LANALEX CLOYD, | ) | |
| | ) | |
| Plaintiffs | ) | 807 of 2018 |
| | ) | |
| vs. | ) | |
| | ) | |
| TRAFFORD BOROUGH | ) | |
| | ) | |
| Defendant | ) | |

## **MOTION TO RESUME HEARING**

AND NOW COMES the DEFENDANT, Trafford Borough, by and through its Solicitor, Craig
H. Alexander, Esquire and Bruce E. Dice and Associates, P.C. and hereby files the following
Motion for to Resume Hearing averring in support thereof as follows:

1. Plaintiff previously filed a Motion for Injunctive Relief seeking to restrain Defendant from
   demolishing an unsafe and uninhabitable structure in Trafford Borough.

2. This Honorable Court on two (2) separate occasions convened a hearing on the matter and
   on both occasions granted a consent postponement in the middle of testimony to permit
   Plaintiff the opportunity to attempt to resolve the matter eith Trafford.

3. Most recently, on June 21, 2018, this Honorable Court entered a consent order indefinitely
   postponing the matter so that Plaintiff could submit a permit application to Trafford
   Borough.

4. The Court was very clear with Plaintiff that Plaintiff was to act with diligence in filing the
   proper application and moving it forward to conclusion.

5. Though Plaintiff submitted unsealed preliminary engineering plans to the Trafford

Building Inspector, Plaintiff has failed to move forward in any prudent manner to submit the plans in final format, with an engineering seal to the Borough along with the proper permit application.

6. Further, the Plaintiff has failed to supply any structure analysis from Pennsylvania Structural Engineer certifying under seal that the property is structurally sound.

7. During this time period, the structure has fallen into deeper disrepair, bricks continue to fall from the building to surrounding areas and it appears that the structure could be on the verge of collapsing.

8. Additionally, Trafford Borough recently learned that when Plaintiff had relined its sewer that Plaintiff or workers hired by Plaintiff broke into Trafford's sanitary sewer line, and failed to repair same, instead simply covering up the destruction with tin lids and then filling in the excavation area.

9. Trafford was required to repair the sewer area broke by Plaintiff in the approximate amount of $12,000.00.

10. Trafford is requesting that this Honorable Court reconvene the continued hearing so that these issues can be properly concluded.

**WHEREFORE**, DEFENDANT, TRAFFORD BOROUGH, requests this Honorable Court enter enter the Order attached hereto and resume the hearing previously postponed by consent of the parties.

RESPECTFULLY SUBMITTED

Craig H. Alexander, Esquire

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA -- CIVIL DIVISION-EQUITY

| | | |
|---|---|---|
| LANALEX CLOYD, | ) | |
| | ) | |
| Plaintiffs | ) | 807 of 2018 |
| | ) | |
| vs. | ) | |
| | ) | |
| TRAFFORD BOROUGH | ) | |
| | ) | |
| Defendant | ) | |

## **ORDER OF COURT**

AND NOW TO WIT, this _____ day of March, upon consideration of the foregoing

MOTION, this matter is hereby scheduled for hearing to be reconvened on April 3, 2019 at 1:00

to address all remaining issues before the Court, including but not limited to the issues raised in

the said motion.

BY THE COURT:

_____J.

# BRUCE E. DICE & ASSOCIATES, PC.

ATTORNEYS AT LAW

787 PINE VALLEY DRIVE, SUITE E
PITTSBURGH, PENNSYLVANIA 15239-2842

TEL: 724-733-3080

FAX: 724-327-9659

April 4, 2019

Hon. Harry F. Smail, Jr.
Westmoreland County Courthouse, Court Room 2
2 North Main Street
Greensburg, PA 15601

**EXHIBIT**
**28**

RE:    Lanalex Cloyd, Inc. v. Trafford  807 of 2018

Dear Judge Smail

This correspondence is in conjunction with you Honor's direction that I discuss Mr. Creenan's response to Trafford's Motion to Resume Hearing on this matter. I have done so and Mr. McVicker, as do I, takes offense to the loose representations made by opposing counsel to this Court. While the email communications that Mr. Creenan attaches to the response speak for themselves, it appears that they are taken out of context and do not portray the entire events.

When this action was first started, Trafford Borough, through its Code Enforcement Officer declared the building located at 501 Cavitt Avenue to be unfit for human occupancy and condemned same. Mr. Creenan, on behalf of his client, filed a motion for injunctive relief requesting that this Court grant an injunction enjoining Trafford from Demolishing the structure. (See motion for injunctive relief).

As has been the history of this case, the motion contained blatant misrepresentations. For instance, the motion represented that I, as the Solicitor for another community, "arranged for the demolition of a structure without notice while the property owner was working with the code enforcement officer to address its concerns." This is simply a false statement and Mr. Creenan knew it to be false. The Court admonished the lawyer who presented the motion on behalf of Mr. Creenan when he attempted to argue this point.

Regardless, the matter proceeded to a hearing after a bond was posted. The hearing was continued when the Defendant agreed to supply the Mr. McVicker with sealed drawings to proceed with renovations which would at the very least bring the property to a state where it was no longer in a condemnable state.

As is submitted in Exhibit E to Mr. Creenan's response, on August 21, 2018, Mr. McVicker advised Mr. Creenan that his client needed to "fill out a building permit application with the Borough of Trafford and submit the information in the proper form as the PA UCC describes." Mr. McVicker thereafter stated, "Once the proper application and information is received, I will execute the Building Permit for the specified alterations as described. The procured permit will have the follow up inspections as required attached to it."

Despite Mr. McVicker's clear direction to Mr. Creenan, no building permit application was ever filed with the Borough. Instead, Mr. Creenan simply forwarded to Mr. McVicker and

me a copy of a previously submitted Demolition Permit application. See Exhibit F. to Mr. Creenan's response. Mr. Creenan then asks that both Mr. McVicker and I process the application on his client's behalf. Mr. Creenan is aware that the Solicitor does not process demolition permit applications.

Interestingly, the Permit has two different dates on it. At the top, it is dated June 18, 2018 and in the signature line, it is dated October 17, 2018. Further, the action at hand is to enjoin the Borough from demolishing the structure, yet Mr. Creenan now request that this Court direct the issuance of a demolition permit. Most importantly, however, Mr. Creenan fails to represent that this very demolition permit which he is requesting that the Court order to be issued was previously denied by Mr. McVicker.

On October 22, 2018, just five (5) days following the October 17, 2018 date on the demolition application, Mr. McVicker issued the defendant a denial letter with regard to the demolition permit application. (See October 22, 2018 denial letter attached hereto). At no time has there been any appeal filed to this denial. Instead, Mr. Creenan simply resent the already denied application by email to Mr. McVicker and me, requesting that we process the denied application.

Now, five months later, with neither Mr. Creenan nor the Defendant taking any action to address the exacerbating unsafe condition of the property, Mr. Creenan requests that the court direct the issuance of a permit that has already been denied, only after Trafford Borough has taken affirmative action to resume the hearing on this matter.

Again, Mr. McVicker was very clear in his direction to Mr. Creenan. There needs to be an application for building permit filed with the Borough. This needs to be done promptly without further delay from either Mr. Creenan or the Defendant.

Prior to drafting this response, I reached out to Mr. Creenan in an effort to get the parties to the table and address what is either confusion with regard to the building permit/ demolition permit issue or ongoing deliberate misrepresentation. (See attached email). I received no response from my inquiry.

Perhaps what is in both parties' best interests is for the Court is to schedule a status conference or conciliation on this matter. Bricks continue to fall from this building, and it is the Borough's fear that it may collapse as delay continues on this matter. It is my belief that with the Court's assistance, a proper order can be fashioned that has certain time constraints for remediation that need to be met to protect the safety of the residents of Trafford.thank you in advance for your time and attention to this matter.

Very truly yours,
BRUCE E. DICE & ASSOCIATES, P.C.

Craig H. Alexander, Esquire
Solicitor, Trafford Borough

CHA/arp
Cc:    Kristopher Cardiff, Council President



# CODE ENFORCEMENT AGENCY
1633 Route 51, Suite 100, Jefferson Hills, PA 15025
1-866-410-4952    www.cea-code.com

October 22, 2018

Lanalex Cloyd Incorporated
C/O Mr. Frank Yeager
501-503 Cavitt Avenue
Trafford, PA 15085

RE: Demolition Application

Dear Mr. Yeager,

I am in receipt of the application for a Demolition Permit dated 10/17/2018, for the structure at 501 Cavitt Avenue in Trafford, PA. According to Pennsylvania Act 90:

**"Municipal permits."** Privileges relating to real property granted by a municipality, including, but not limited to, building permits, exceptions to zoning ordinances and occupancy permits. The term includes approvals pursuant to land use ordinances other than decisions on the substantive validity of a zoning ordinance or map or the acceptance of a curative amendment.

### 6111. Actions.
In addition to any other remedy available at law or in equity, a municipality may institute the following actions against the owner of any real property that is in serious violation of a code or for failure to correct a condition which causes the property to be regarded as a public nuisance:

(1) (i) An in person am action may be initiated for a continuing violation for which the owner takes no substantial step to correct within six months following receipt of an order to correct the violation, unless the order is subject to a pending appeal before the administrative agency or court.

(ii) Notwithstanding any law limiting the form of action for the recovery of penalties by a municipality for the violation of a code, the municipality may recover, in a single action under this section, an amount equal to any penalties imposed against the owner and any costs of remediation lawfully incurred by or on behalf of the municipality to remedy any code violation.

### 6115. Failure to comply with a code requirement.
**(a) Offense defined.**--The owner of real property commits the offense of failure to comply with a code requirement if all of the following apply:

(1) The owner of real property has been convicted of a second or subsequent serious violation of the same provision of a municipal code for the same property.

(2) The violation poses a threat to the public's health, safety or property and the owner has not taken a substantial step to correct the violation.

(3) The violation is considered a public nuisance and the owner has not made a reasonable attempt to correct the violation.

**6131. Municipal permit denial.**

(a) Denial.--

(1) A municipality or a board under subsection (c) may deny issuing to an applicant a municipal permit if the applicant owns real property in any municipality for which there exists on the real property:

(i) a final and unappealable tax, water, sewer or refuse collection delinquency on account of the actions of the owner; or

(ii) a serious violation of State law or a code and the owner has taken no substantial steps to correct the violation within six months following notification of the violation and for which fines or other penalties or a judgment to abate or correct were imposed by a magisterial district judge or municipal court, or a judgment at law or in equity was imposed by a court of common pleas. However, no denial shall be permitted on the basis of a property for which the judgment, order or decree is subject to a stay or supersedeas by an order of a court of competent jurisdiction or automatically allowed by statute or rule of court until the stay or supersedeas is lifted by the court or a higher court or the stay or supersedeas expires as otherwise provided by law. Where a stay or supersedeas is in effect, the property owner shall so advise the municipality seeking to deny a municipal permit.

(2) A municipality or board shall not deny a municipal permit to an applicant if the municipal permit is necessary to correct a violation of State law or a code.

(3) The municipal permit denial shall not apply to an applicant's delinquency on taxes, water, sewer or refuse collection charges that are under appeal or otherwise contested through a court or administrative process.

(4) In issuing a denial of a permit based on an applicant's delinquency in real property taxes or municipal charges or for failure to abate a serious violation of State law or a code on real property that the applicant owns in this Commonwealth, the municipality or board shall indicate the street address, municipal corporation and county in which the property is located and the court and docket number for each parcel cited as a basis for the denial. The denial shall also state that the applicant may request a letter of compliance from the appropriate State agency, municipality or school district, in a form specified by such entity as provided in this section.

Therefore, it be, I am denying the application for demolition until such time as the preceding legal matters have been resolved before the Borough of Trafford. This is specific for the address for 501 Cavitt Avenue in Trafford. Additionally, I have not been informed by you or your legal counsel of the pending matters resolution.

Please feel free to contact myself or Craig Alexander, Trafford Solicitor on this matter to discuss any issues or concerns.

Sincerely,

Craig I. McVicker, BCO
Building Code Official
Borough of Trafford

CC: Borough of Trafford Manager, Solicitor

Craig Alexander

| | |
|---|---|
| **From:** | Craig Alexander |
| **Sent:** | Tuesday, April 02, 2019 4:11 PM |
| **To:** | Jim Creenan |
| **Subject:** | RE: Yeager property |

Feel free to contact me on my mobile.

Craig H. Alexander, Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA 15239
Office: 724-733-3080
Mobile: 412-310-1599.

**From:** Craig Alexander
**Sent:** Tuesday, April 02, 2019 4:10 PM
**To:** Jim Creenan <jcreenan@cbattorneys.com>
**Subject:** Yeager property

Jim-

I am in the process of preparing a formal response to Judge Smail....however, I propose that Mr. McVicker and I sit down with you to perhaps resolve this. Your original motion for injunctive relief was to enjoin the Borough from demolishing the structure at 501 Cavitt. Now it appears you are asking for a demolition permit. I don't believe that issue is before the court with regard to your petition, but perhaps if we sit down, we can resolve it. I can make myself available any day this week. Let me know your availability and we can confirm with CM.

Thanks

Craig H. Alexander, Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA 15239
Office: 724-733-3080
Mobile: 412-310-1599.

1

# Trafford

Borough

---

## Ordinance Violation Notice

April 25, 2019

Lanalex Cloyd Inc
5204 Faulk Drive
Export, PA 15632

Tax Map # 36-03-03-0-490

Property tax records list you as owner of the property located at 501 Cavitt Avenue, Trafford, Pennsylvania, 15085.

I am informing you that you are in violation of the Borough of Trafford Ordinance establishing the International Property Maintenance Code for the address listed as 501 Cavitt Avenue in Trafford. According to the evidence collected, the following violations need immediate attention:

**302.1 Sanitation.**
All exterior property and premises shall be maintained in a clean, safe and sanitary condition. The occupant shall keep that part of the exterior property which such occupant occupies or controls in a clean and sanitary condition.

**302.4 Weeds.**
All premises and exterior property shall be maintained free from weeds or plant growth in excess of six (6) inches. All noxious wees shall be prohibited. Weeds shall be defined as all grasses, annual plants and vegetation, other than trees or shrubs provided; however, this term shall not include cultivated flowers and gardens. Upon failure of the owner or agent having charge of a property to cut and destroy weeds after service of a notice of violation, they shall be subject to prosecution in accordance with Section 106.3 and as prescribed by the authority having jurisdiction. Upon failure to comply with the notice of violation, any duly authorized employee of the jurisdiction or contractor hired by the jurisdiction shall be authorized to enter upon the property in violation and cut and destroy the weeds growing thereon, and the cost of such removal shall be paid by the owner or agent responsible for the property.

**304.1.1 Unsafe conditions.**
The following conditions shall be determined as unsafe and shall be repaired or replaced to comply with the International Building Code or the International Existing Building Code as required for existing buildings.
1. The nominal strength of any structural member is exceeded by nominal loads, the load effects or the required strength;
2. The anchorage of the floor or roof to walls or columns, and of walls and columns to foundations is not capable of resisting all nominal loads or load effects;
3. Structure or components thereof that have reached their limit state;
4. Siding and masonry joints including joints between the building envelope and the perimeter of windows, doors and skylights are not maintained, weather resistant or water tight;



**EXHIBIT**
**29**



P.O. Box 196
Trafford, PA 15085

412.372.7652 (p.)
412.372.7654 (f.)

traffordborough@comcast.net
www.traffordpa.com

5. Structural members that have evidence of deterioration or that are not capable of safely supporting all nominal loads and load effects;

6. Foundation systems that are not firmly supported by footings, are not plumb and free from open cracks and breaks, are not properly anchored or are not capable of supporting all nominal loads and resisting all load effects;

7. Exterior walls that are not anchored to supporting and supported elements or are not plumb and free of holes, cracks or breaks and loose or rotting materials, are not properly anchored or are not capable of supporting all nominal loads and resisting all load effects;

8. Roofing or roofing components that have defects that admit rain, roof surfaces with inadequate drainage, or any portion of the roof framing that is not in good repair with signs of deterioration, fatigue or without proper anchorage and incapable of supporting all nominal loads and resisting all load effects;

9. Flooring and flooring components with defects that affect serviceability or flooring components that show signs of deterioration or fatigue, are not properly anchored or are incapable of supporting all nominal loads and resisting all load effects;

10. Veneer, cornices, belt courses, corbels, trim, wall facings and similar decorative features not properly anchored or that are anchored with connections not capable of supporting all nominal loads and resisting all load effects;

11. Overhang extensions or projections including, but not limited to, trash chutes, canopies, marquees, signs, awnings, fire escapes, standpipes and exhaust ducts not properly anchored or that are anchored with connections not capable of supporting all nominal loads and resisting all load effects;

12. Exterior stairs, decks, porches, balconies and all similar appurtenances attached thereto, including guards and handrails, are not structurally sound, not properly anchored or that are anchored with connections not capable of supporting all nominal loads and resisting all load effects; or

13. Chimneys, cooling towers, smokestacks, and similar appurtenances not structurally sound or not properly anchored, or that are anchored with connections not capable of supporting all nominal loads and resisting all load effects.

All the evident deficiencies listed under this code in the above referenced must be effectively cleaned up, maintained and repaired within **ten (10) days** from the official receipt of this notification or subsequent Commonwealth Citations of summary offense shall be issued for each violation. Additionally, the maintenance of the lot area surrounding the structures must be maintained effectively throughout the growing season or Commonwealth citations of a summary offence shall be issued.

Should you have any questions or feel need to discuss this matter further please don't hesitate to contact me at (724) 374-3686.

Sincerely,

Mark Cypher
Code Enforcement Officer
Borough of Trafford

Certified Mail # 7018 0680 0000 5215 7439

FILE COPY

**Creenan & Baczkowski, PC**
A T T O R N E Y S

www.cbattorneys.com

**Murrysville Office**
Town Square Professional Building
Suite 304
3907 Old William Penn Highway
Murrysville, PA 15668

(724) 733-8832

JAMES W. CREENAN
MOLLY M. CREENAN
JAKE S. ORESICK
FRANK W. JONES (OF COUNSEL)
CHARLES R. CONWAY (OF COUNSEL)

**McKeesport Office**
City Hall Building
Suite 305
502 Fifth Avenue
McKeesport, PA 15132

(412) 675-0940

WALTER F. BACZKOWSKI (1942-2017)
ELIZABETH BAILEY (1920-2016)

Writer's Email:
jcreenan@cbattorneys.com

May 8, 2019

Craig H. Alexander, Esquire
Bruce Dice & Associates PC
787 Pine Valley Dr. Ste E
Pittsburgh, PA 15239

Re:  *501 Cavitt Avenue*
    Our File No. 16885

Dear Mr. Alexander:

It has been brought to my attention that the Borough of Trafford has issued a letter entitled "Ordinance Violation Notice" received by my client on April 29, 2019 via U.S. Mail and addressed to "Lanalex Cloyd, Inc., 5204 Faulk Drive, Export, PA 15632."

Please accept the letter as my client's appeal of the Notice.

Additionally, most but not all of the matters described in the letter are currently before the Court of Common Pleas.

Please provide to me all records of inspection, reports, and photos bearing on the matters set forth in the Notice.

Thank you for your attention to this matter.

Very truly yours,

James W. Creenan

JWC/

cc:  Frank Yeager
    Manager, Borough of Trafford
    Mark Cypher, Code Enforcement Officer

**EXHIBIT**
**30**



COMMONWEALTH OF PENNSYLVANIA
COUNTY OF WESTMORELAND



# SUMMONS FOR SUMMARY CASE
# NON-TRAFFIC

| Mag. Dist. No: | MDJ-10-2-03 |
|---|---|
| MDJ Name: | Honorable Helen M. Kistler |
| Address: | 1012 Station Street |
| | Harrison City, PA 15636 |
| Telephone: | 724-744-3031 |

Lanalex Cloyd, Inc.
5204 Faulk Drive
Export, PA 15632

Commonwealth of Pennsylvania
v.
Lanalex Cloyd, Inc.

Docket No:  MJ-10203-NT-0000097-2019
Case Filed:  5/10/2019

| Charge(s) | | | | | |
|---|---|---|---|---|---|
| LO § 152-1 §§ 302.1 (Lead) | Sanitation of Exterior Property | | | | |
| **FINE AND COSTS:** | Fine: 250.00 | Costs/Fees: 91.25 | Server Fees: | Restitution: | Total Due: 341.25 |

**WITHIN TEN (10) DAYS OF RECEIPT OF THIS SUMMONS YOU MUST:**

1.  PLEAD NOT GUILTY by notifying the magisterial district judge above in writing and forwarding an amount equal to the total due specified above, or if the fine and costs are not specified, forward the sum of $50.00 as collateral for your appearance at trial; **OR**,
2.  PLEAD NOT GUILTY by appearing before the magisterial district judge above and posting such collateral for your appearance as the magisterial district judge shall require; **OR**,
3.  If you cannot afford to pay the total due specified above or the $50.00 collateral, you must appear before the magisterial district judge above to enter a plea; **OR**,
4.  PLEAD GUILTY by notifying the magisterial district judge above in writing, signing the appropriate plea under the MAIL IN PLEA section, and forwarding an amount equal to the total due specified above; **OR**,
5.  PLEAD GUILTY by appearing before the magisterial district judge above if the total due is not specified, or if you are required to appear because the offense with which you are charged carries a mandatory sentence of imprisonment, for example, a violation of 75 Pa.C.S. Section 1543(b) (Driving while operating privilege is suspended or revoked)
    - IF YOU ARE FOUND GUILTY BY THE MAGISTERIAL DISTRICT JUDGE AND WISH TO APPEAL, YOU HAVE THIRTY (30) DAYS TO REQUEST A TRIAL DE NOVO IN THE COURT OF COMMON PLEAS
    - ALL CHECKS OR MONEY ORDERS FOR FINE, COSTS, FEES, OR FOR COLLATERAL, SHALL BE MADE PAYABLE TO "MAGISTERIAL DISTRICT NO MDJ-10-2-03". You can make case payments online through Pennsylvania's Unified Judicial System web portal. Visit the portal at *http://ujsportal.pacourts.us* to make a payment.
    - IF YOU FAIL TO RESPOND TO THIS SUMMONS WITHIN THE TIME SPECIFIED ABOVE, A WARRANT FOR YOUR ARREST SHALL BE ISSUED.

**IF YOU INTEND TO RESPOND BY MAIL:**
Detach and complete the lower portion of this summons with your signature on the appropriate plea line, (1) or (2).
If you PLEAD NOT GUILTY, your check or money order must be in the amount of the total due specified above. If the total due is not specified, your check or money order must be in the amount of $50.00 which will be held for collateral for your appearance at trial. You will be notified by mail of your date and time for trial.
If you PLEAD GUILTY, enclose a check or money order in the amount of the total due specified above. Failure to remit the full amount of the fine, costs, and fees may result in the issuance of a warrant for your arrest. Your check or money order shall be made payable to "Magisterial District No MDJ-10-2-03".
(DETACH HERE) ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑ ‑

**MAIL IN PLEA**

I represent that I make this plea knowingly, voluntarily, and intelligently. (Failure to indicate a plea when forwarding an amount equal to the total due specified above will result in a guilty plea being recorded.)
Docket No: MJ-10203-NT-0000097-2019     Citation No: R 2266543-6     Defendant: Lanalex Cloyd, Inc.

1.  I PLEAD NOT GUILTY _____
(Signature)

2.  I PLEAD GUILTY _____
(Signature)

**EXHIBIT
31**

If you are disabled and require a reasonable accommodation to gain access to the Magisterial District Court and its services, please contact the Magisterial District Court at the above address or telephone number. We are unable to provide transportation.

MDJS 617
Printed: 05/14/2019  3:01:15PM

1



FREE INTERPRETER
www.pacourts.us/language-rights
724-830-3829

COMMONWEALTH OF PENNSYLVANIA
**NON-TRAFFIC CITATION/ SUMMONS**

CITATION NO.
**R2266543-6**

| 1. Magisterial District Number | 2. Docket Number | 3. Social Security Number |
|---|---|---|
| 10-2-03 | | |

4. Address of Magisterial District Office
1012 STATION ST HARRISON CITY PA 15636

5. Owner's Number & State
6. State ☐ PA

7. Defendant Name - First ... Last
CANALEX CLOYD INC

8. Defendant's Address (Street-City-State-Zip Code)
5209 FAULK DR EXPORT PA 15632

9. Race/Ethnicity
(W) ☐ White
(B) ☐ Black
(I) ☐ Native American

(A) ☐ Asian
(H) ☐ Hispanic
(U) ☐ Unknown

10. Sex
(M) ☐ Male
(F) ☐ Female

11. Date of Birth (MM/DD/YY)

12. Residency Status
(R) ☐ Resident
(N) ☐ Non-Resident
(U) ☐ Unknown

13. Contact/Apprehended by
(O) ☐ On-View Arrest
☐ Citation/Summons

14. JUVENILE ☐ Yes
15. Parents Notified ☐ Yes
16. Parent's Name
17. Date Notified
18. Time

19. Charge
☐ Disorderly Conduct    ☐ Criminal Trespass    ☐ Theft of Services    ☐ Criminal Mischief
☐ Harassment    ☐ Public Drunkenness    ☐ Scattering Rubbish
☐ Retail Theft    ☐ Purchase, Consumption, Possession, Transportation of Liquor or Malt or Brewed Beverages
☐ Other VIOLATIONS of BOROUGH O20

20. Nature of Offense
VIOLATION of INTERNATIONAL
PROPERTY MAINTENANCE CODE = 302.1
SANITATION

21. PA Code
22. O CRIMES CODE TITLE 18 ☐
23. SECTION
24. Sub SEC.
25. FINE $250.00
26. COSTS $51.00
27. JCP/ATJ/CJEA/OAG $40.25
28. TOTAL DUE $341.25

| 31. Date | 32. Time | 33. Day | 34. City-Twp-Boro | 35. Zone |
|---|---|---|---|---|
| 5/10/19 | 2:15 | FRI | TRAFFORD 430 | |

37. Location
501 CAVITT AVE. TRAFFORD, PA 15085

38. County WESTMORELAND
39. County Code 64

40. Defendant's Signature - Acknowledges Receipt of Citation
X PLEASE MAIL

41. Date 5/10/19

43. I verify that the facts set forth in this citation are true to the best of my knowledge, information and belief. This verification is made subject to the penalties of Section 4904 of the Crime Code (18 Pa.C.S. §4904) relating to unsworn falsification to authorities. I certify this filing complies with the UJS Case Records Public Access Policy.
OFFICER'S SIGNATURE

BADGE NUMBER
ORI NUMBER

44. Street Address
414 BRINTON AVE. TRAFFORD, PA 15085

| 45. Offense Code | 46. Property Record No. | 47. Systems Code | 48. | 49. | 50. Incident No. |
|---|---|---|---|---|---|

51. Victim's Name

52. Date of Birth (MM/DD/YY)
53. Sex
54. Race/Ethnicity

57. Confidential Information Section

58. Remarks-Appears List
PROPERTY OWNER WILL NOT CLEAN UP PROPERTY INCLUDING
BRICKS THAT HAVE FALLEN FROM BUILDING ONTO
S. DEWALK & MATTRESS IN GRASS. ALSO BROKEN
GLASS FROM SMASHED WINDOWS REMAIN R2266543-6
ON S. DEWALK.

59. Mag./Auth.
60. Badge No.

AOPC 407-95 (Rev. 04/2018)

**DEFENDANT'S COPY**

# RIGHTS AND OBLIGATIONS

1. The original of this non-traffic citation/summons will be filed before the MAGISTERIAL DISTRICT JUDGE WHOSE ADDRESS IS LISTED IN ITEM 4 on the reverse side.
2. Within TEN (10) days of the issuance or receipt of this citation/summons, you must:
   a. **PLEAD NOT GUILTY** by signing your name on Line (a) of the mail-in portion of this citation/ summons and returning it to the Magisterial District Office shown in ITEM 4 together with your collateral in an amount equal to the Total Due as specified in ITEM 28 on the reverse side, or if the Total Due is not specified, by forwarding the sum of $50.00 as collateral for your appearance at trial.

   OR

   b. **PLEAD NOT GUILTY** by appearing before the proper Magisterial District Judge and posting such collateral for your appearance as the Magisterial District Judge shall require. If you cannot afford to pay the Total Due as specified in ITEM 28 on the reverse side, or the $50.00 collateral, you must appear before the proper Magisterial District Judge to enter a plea.

   OR

   c. **PLEAD GUILTY** by signing your name on Line (b) of the mail-in portion of this citation/summons and returning it to the Magisterial District Office shown in ITEM 4 together with an amount equal to the Total Due as specified in ITEM 28 on the reverse side, or by making payments online through Pennsylvania's Unified Judicial system web portal. Visit the portal at http://ujsportal.pacourts.us to make a payment.

   OR

   d. **PLEAD GUILTY** by appearing before the proper Magisterial District Judge if the Total Due is not specified or if you are required to appear because the offense with which you are charged carries a mandatory sentence of imprisonment, for example, a violation of 75 Pa.C.S. §1543(b) (Driving while operating privilege is suspended or revoked).

   OR

   e. **REQUEST** inclusion in an Accelerated Rehabilitative Disposition Program (ARD) by appearing before the proper Magisterial District Judge.

3. All checks or money orders must be made payable to the "Magisterial District Number ___-___-___", identified in ITEM 1 on the reverse side, and sent to the address reported in ITEM 4.
4. Failure to respond within the time specified above may result in the issuance of a warrant for your arrest.
5. If you fail to appear for trial, the trial may be held in your absence.
6. If you are found guilty by the Magisterial District Judge, or you plead guilty, and you wish to appeal, you have THIRTY (30) days to file an appeal for a trial in the Court of Common Pleas.
7. If you are disabled and require assistance, please contact the Magisterial District Office identified in ITEM 4 on the reverse side.
8. Please note that a guilty plea to offenses relating to underage drinking, 18 Pa.C.S. §§ 6307, 6308, and 6310.3 will result in the suspension of your driver's license.

### INSTRUCTIONS FOR RESPONSE BY MAIL

If you intend to respond by mail:
1. Detach and complete the lower portion of this citation/summons with your signature on the appropriate plea line (a. or b.).
2. If you PLEAD NOT GUILTY, your check or money order for collateral must be in the amount equal to the Total Due as specified in ITEM 28 on the reverse side. If the Total Due is not specified, your check or money order for collateral must be in the amount of $50.00. You will be notified by mail of your trial date.
3. If you PLEAD GUILTY, enclose a check or money order in the amount reported as Total Due in ITEM 28 on the reverse side. Failure to remit the full amount will result in the issuance of a warrant for your arrest.
4. Your check or money order must be made payable to: "Magisterial District Number ___-___-___", identified in ITEM 1 on the reverse side and sent to the address reported in ITEM 4.

Explanation of Items 26 & 27 {
Costs — May include program costs for crime and delinquency commission, domestic violence, crime victims compensation and courts.
J.C.P./A.T.J./ — Judicial Computer Project/Access to Justice/Criminal Justice Enhancement Account/
C.J.E.A./O.A.G. — Office of Attorney General's Operations Appropriations

## MAIL IN PORTION

Place this portion of the citation/summons and your check or money order in an envelope and mail to the MAGISTERIAL DISTRICT OFFICE WHOSE ADDRESS IS REPORTED IN ITEM 4 on the reverse side.

**Failure to indicate a plea when forwarding an amount equal to the Total Due as specified on the citation/summons will result in a guilty plea being recorded.**

I understand my rights and obligations. Further, I represent that I make this plea knowingly, voluntarily, and intelligently.

   a. I plead **NOT GUILTY** and request a trial _____
                                                                    Signature

   b. I plead **GUILTY** _____
                                              Signature

#### PLEASE PLACE THE CITATION NUMBER ON YOUR CHECK OR MONEY ORDER.

#### DO NOT MAIL YOUR CHECK OR MONEY ORDER TO THE POLICE DEPARTMENT.

#### DO NOT SEND CASH!

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF WESTMORELAND



## SUMMONS FOR SUMMARY CASE NON-TRAFFIC

| | |
|---|---|
| Mag. Dist. No: | MDJ-10-2-03 |
| MDJ Name: | Honorable Helen M. Kistler |
| Address: | 1012 Station Street<br>Harrison City, PA 15636 |
| Telephone: | 724-744-3031 |

Lanalex Cloyd, Inc.
5204 Faulk Drive
Export, PA 15632

Commonwealth of Pennsylvania
v.
Lanalex Cloyd, Inc.

Docket No:   MJ-10203-NT-0000098-2019
Case Filed:   5/10/2019

| Charge(s) | | | | | |
|---|---|---|---|---|---|
| LO § 152.1 §§ 302.4 (Lead) | Weeds and plant growth | | | | |

| FINE AND COSTS: | Fine: 250 | Costs/Fees 91.25 | Server Fees: | Restitution: | Total Due: 341.25 |
|---|---|---|---|---|---|

**WITHIN TEN (10) DAYS OF RECEIPT OF THIS SUMMONS YOU MUST:**

1. PLEAD NOT GUILTY by notifying the magisterial district judge above in writing and forwarding an amount equal to the total due specified above, or if the fine and costs are not specified, forward the sum of $50.00 as collateral for your appearance at trial; **OR,**
2. PLEAD NOT GUILTY by appearing before the magisterial district judge above and posting such collateral for your appearance as the magisterial district judge shall require; **OR,**
3. If you cannot afford to pay the total due specified above or the $50.00 collateral, you must appear before the magisterial district judge above to enter a plea; **OR,**
4. PLEAD GUILTY by notifying the magisterial district judge above in writing, signing the appropriate plea under the MAIL IN PLEA section, and forwarding an amount equal to the total due specified above; **OR,**
5. PLEAD GUILTY by appearing before the magisterial district judge above if the total due is not specified, or if you are required to appear because the offense with which you are charged carries a mandatory sentence of imprisonment, for example, a violation of 75 Pa.C.S. Section 1543(b) (Driving while operating privilege is suspended or revoked)

- IF YOU ARE FOUND GUILTY BY THE MAGISTERIAL DISTRICT JUDGE AND WISH TO APPEAL, YOU HAVE THIRTY (30) DAYS TO REQUEST A TRIAL DE NOVO IN THE COURT OF COMMON PLEAS
- ALL CHECKS OR MONEY ORDERS FOR FINE, COSTS, FEES, OR FOR COLLATERAL, SHALL BE MADE PAYABLE TO "MAGISTERIAL DISTRICT NO MDJ-10-2-03". You can make case payments online through Pennsylvania's Unified Judicial System web portal. Visit the portal at *http://ujsportal.pacourts.us* to make a payment.
- IF YOU FAIL TO RESPOND TO THIS SUMMONS WITHIN THE TIME SPECIFIED ABOVE, A WARRANT FOR YOUR ARREST SHALL BE ISSUED.

**IF YOU INTEND TO RESPOND BY MAIL:**
Detach and complete the lower portion of this summons with your signature on the appropriate plea line, (1) or (2).
If you PLEAD NOT GUILTY, your check or money order must be in the amount of the total due specified above. If the total due is not specified, your check or money order must be in the amount of $50.00 which will be held for collateral for your appearance at trial. You will be notified by mail of your date and time for trial.
If you PLEAD GUILTY, enclose a check or money order in the amount of the total due specified above. Failure to remit the full amount of the fine, costs, and fees may result in the issuance of a warrant for your arrest. Your check or money order shall be made payable to "Magisterial District No MDJ-10-2-03".
(DETACH HERE)

### MAIL IN PLEA

I represent that I make this plea knowingly, voluntarily, and intelligently. (Failure to indicate a plea when forwarding an amount equal to the total due specified above will result in a guilty plea being recorded.)

Docket No: MJ-10203-NT-0000098-2019    Citation No: R 2266544-0    Defendant: Lanalex Cloyd, Inc.

1.    I PLEAD NOT GUILTY    _____
                                                                (Signature)

2.    I PLEAD GUILTY    _____
                                                       (Signature)

**If you are disabled and require a reasonable accommodation to gain access to the Magisterial District Court and its services, please contact the Magisterial District Court at the above address or telephone number. We are unable to provide transportation.**

MDJS 617
Printed: 05/14/2019 3:00:51PM

1



FREE INTERPRETER
www.pacourts.us/language-rights
724-830-3829

COMMONWEALTH OF PENNSYLVANIA

**NON-TRAFFIC CITATION/SUMMONS**

CITATION NO. R2266544 0

| Field | Value |
|---|---|
| District Number | 10-2-03 |
| 2. Docket Number | NT 78-19 |
| 3. Social Security Number | |
| 4. Address of Magisterial District Office | 1012 STATION ST. HARRISON CITY PA 15636 |
| 5. Driver's Number | |
| 6. State | ☐ PA |
| 7. Defendant's Name – First | CANALEX Middle CLOYD Last INC |
| 8. Defendant's Address (Street-City-State-Zip Code) | 5204 FAULK DR. EXPORT PA 15632 |

9. Race/Ethnicity
(W) ☐ White  (A) ☐ Asian
(B) ☐ Black  (H) ☐ Hispanic
(I) ☐ Native American (U) ☐ Unknown

| 10. Sex | 11. Date of Birth (MM/DD/YY) | 12. Resident Status | 13. Case Instituted by |
|---|---|---|---|
| (M) ☐ Male | | (R) ☐ Resident | (O) ☐ On-View Arrest |
| (F) ☐ Female | | (N) ☐ Non-Resident | (C) ☐ Citation/Summons |
| | | (U) ☐ Unknown | |

14. JUVENILE ☐ Yes  15. Parents Notified ☐ Yes  16. Parent's Name  17. Date Notified  18. Time

19. Charge
☐ Disorderly Conduct  ☐ Criminal Trespass  ☐ Theft of Services  ☐ Criminal Mischief
☐ Harassment  ☐ Public Drunkenness  ☐ Scattering Rubbish
☐ Retail Theft  ☐ Purchase, Consumption, Possession or Transportation of Liquor or Malt or Brewed Beverages
☑ Other VIOLATION OF BOROUGH ORD.

| 20. Nature of Offense | 21. Pa. Code | 22 ☐ CRIMES CODE TITLE 18 |
|---|---|---|
| VIOLATION OF INTERNATIONAL | | ☐ |
| PROPERTY MAINTENANCE CODE – | 23. SECTION | 24. SUB SEC. |
| 302.4 WEEDS | 25. FINE | 250.00 |
| | 26. COSTS | 51.00 |
| | 27 JCP,ATJ, IC,IEA,OAG. | $ 40.25 |

| 29 | 30. | 28 TOTAL DUE | $341.75 |
|---|---|---|---|
| ☐ Military Service | ☐ Lab Services Requested | | |

| 31. Day | 32. Time | 33. Day | 34. City-Twp-Boro | 35. Code | 36. Zone |
|---|---|---|---|---|---|
| 5/10/19 | 2:17 | FRIDAY | TRAFFORD BOROUGH | 430 | |

| 37. Location | 38. County | 39. County Code |
|---|---|---|
| 501 CAVITT AVE. TRAFFORD PA 15085 | WESTMORELAND | 64 |

40. Defendant's Signature - Acknowledges Receipt of Citation
X  PLEASE MAIL

| 41. Date | 42. |
|---|---|
| 5/10/19 | ☐ Issued |
| | ☑ Filed  ☐ Filed on info. received |

43. I verify that the facts set forth in this citation are true to the best of my knowledge, information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa.C.S. § 4904) relating to unsworn falsification to authorities. I certify that filing complies with the UJS Case Records Public Access Policy.

OFFICER'S SIGNATURE _____  BADGE NUMBER _____  OR NUMBER _____

44. Station Address 414 BRINTON AVE. TRAFFORD PA 15085

| 45. Offense Code | 46. Property Record No. | 47. Systems Code | 48. | 49. | 50. Incident No. |
|---|---|---|---|---|---|
| | | | ☐ Initial Report | ☐ Attention L/E. | |

| 51. Victim's Name | 52. Date of Birth (MM/DD/YY) | 53. Sex | 54. Race/Ethnicity |
|---|---|---|---|
| | | | |

57. Confidential Information Section

58. Remarks/Subpoena List
PROPERTY OWNER WILL NOT CUT GRASS/REMOVE WEEDS

R2266544 0

# RIGHTS AND OBLIGATIONS

1. The original of this non-traffic citation/summons will be filed before the MAGISTERIAL DISTRICT JUDGE WHOSE ADDRESS IS LISTED IN ITEM 4 on the reverse side.
2. Within TEN (10) days of the issuance or receipt of this citation/summons, you must:
   a. **PLEAD NOT GUILTY** by signing your name on Line (a) of the mail-in portion of this citation/summons and returning it to the Magisterial District Office shown in ITEM 4 together with your collateral in an amount equal to the Total Due as specified in ITEM 28 on the reverse side, or if the Total Due is not specified, by forwarding the sum of **$50.00** as collateral for your appearance at trial.
   OR
   b. **PLEAD NOT GUILTY** by appearing before the proper Magisterial District Judge and posting such collateral for your appearance as the Magisterial District Judge shall require. If you cannot afford to pay the Total Due as specified in ITEM 28 on the reverse side, or the **$50.00** collateral, you must appear before the proper Magisterial District Judge to enter a plea.
   OR
   c. **PLEAD GUILTY** by signing your name on Line (b) of the mail-in portion of this citation/summons and returning it to the Magisterial District Office shown in ITEM 4 together with an amount equal to the Total Due as specified in ITEM 28 on the reverse side, or by making payments online through Pennsylvania's Unified Judicial system web portal. Visit the portal at http://ujsportal.pacourts.us to make a payment.
   OR
   d. **PLEAD GUILTY** by appearing before the proper Magisterial District Judge if the Total Due is not specified or if you are required to appear because the offense with which you are charged carries a mandatory sentence of imprisonment, for example, a violation of 75 Pa.C.S. §1543(b) (Driving while operating privilege is suspended or revoked).
   OR
   e. **REQUEST** inclusion in an Accelerated Rehabilitative Disposition Program (ARD) by appearing before the proper Magisterial District Judge.

3. All checks or money orders must be made payable to the **"Magisterial District Number ___-___-___"**, identified in ITEM 1 on the reverse side, and sent to the address reported in ITEM 4.
4. Failure to respond within the time specified above may result in the issuance of a warrant for your arrest.
5. If you fail to appear for trial, the trial may be held in your absence.
6. If you are found guilty by the Magisterial District Judge, or you plead guilty, and you wish to appeal, you have THIRTY (30) days to file an appeal for a trial in the Court of Common Pleas.
7. If you are disabled and require assistance, please contact the Magisterial District Office identified in ITEM 4 on the reverse side.
8. Please note that a guilty plea to offenses relating to underage drinking, 18 Pa.C.S. §§ 6307, 6308, and 6310.3 will result in the suspension of your driver's license.

### INSTRUCTIONS FOR RESPONSE BY MAIL

If you intend to respond by mail:
1. Detach and complete the lower portion of this citation/summons with your signature on the appropriate plea line (a. or b.).
2. If you PLEAD NOT GUILTY, your check or money order for collateral must be in the amount equal to the Total Due as specified in ITEM 28 on the reverse side. If the Total Due is not specified, your check or money order for collateral must be in the amount of $50.00. You will be notified by mail of your trial date.
3. If you PLEAD GUILTY, enclose a check or money order in the amount reported as Total Due in ITEM 28 on the reverse side. Failure to remit the full amount will result in the issuance of a warrant for your arrest.
4. Your check or money order must be made payable to: **"Magisterial District Number ___-___-___"**, identified in ITEM 1 on the reverse side and sent to the address reported in ITEM 4.

Explanation of Items 26 & 27

{ Costs — May include program costs for crime and delinquency commission, domestic violence, crime victims compensation and courts.
J.C.P./A.T.J./ — Judicial Computer Project/Access to Justice/Criminal Justice Enhancement Account/
C.J.E.A./O.A.G. — Office of Attorney General's Operations Appropriations

# MAIL IN PORTION

Place this portion of the citation/summons and your check or money order in an envelope and mail to the MAGISTERIAL DISTRICT OFFICE WHOSE ADDRESS IS REPORTED IN ITEM 4 on the reverse side.

**Failure to indicate a plea when forwarding an amount equal to the Total Due as specified on the citation/summons will result in a guilty plea being recorded.**

I understand my rights and obligations. Further, I represent that I make this plea knowingly, voluntarily, and intelligently.

a. I plead **NOT GUILTY** and request a trial _____
                                                    Signature

b. I plead **GUILTY** _____
                              Signature

**PLEASE PLACE THE CITATION NUMBER ON YOUR CHECK OR MONEY ORDER.**

**DO NOT MAIL YOUR CHECK OR MONEY ORDER TO THE POLICE DEPARTMENT.**

**DO NOT SEND CASH!**



COMMONWEALTH OF PENNSYLVANIA
COUNTY OF WESTMORELAND



# SUMMONS FOR SUMMARY CASE NON-TRAFFIC

| | |
|---|---|
| Mag. Dist. No: | MDJ-10-2-03 |
| MDJ Name: | Honorable Helen M. Kistler |
| Address: | 1012 Station Street |
| | Harrison City, PA 15636 |
| Telephone: | 724-744-3031 |

Commonwealth of Pennsylvania
v.
Lanalex Cloyd, Inc.

Lanalex Cloyd, Inc.
5204 Faulk Drive
Export, PA 15632

Docket No: MJ-10203-NT-0000099-2019
Case Filed: 5/10/2019

**Charge(s)**

| | |
|---|---|
| LO § 152-1 §§ 304.1 (Lead) | Unsafe Conditions |

**FINE AND COSTS:** Fine 250.00 Costs/Fees: 91.25 Server Fees: Restitution: Total Due: 341.25

**WITHIN TEN (10) DAYS OF RECEIPT OF THIS SUMMONS YOU MUST:**

1. PLEAD NOT GUILTY by notifying the magisterial district judge above in writing and forwarding an amount equal to the total due specified above, or if the fine and costs are not specified, forward the sum of $50.00 as collateral for your appearance at trial; **OR,**
2. PLEAD NOT GUILTY by appearing before the magisterial district judge above and posting such collateral for your appearance as the magisterial district judge shall require; **OR,**
3. If you cannot afford to pay the total due specified above or the $50.00 collateral, you must appear before the magisterial district judge above; **OR,**
4. PLEAD GUILTY by notifying the magisterial district judge above in writing, signing the appropriate plea under the MAIL IN PLEA section, and forwarding an amount equal to the total due specified above; **OR,**
5. PLEAD GUILTY by appearing before the magisterial district judge above if the total due is not specified, or if you are required to appear because the offense with which you are charged carries a mandatory sentence of imprisonment, for example, a violation of 75 Pa.C.S. Section 1543(b) (Driving while operating privilege is suspended or revoked)

- IF YOU ARE FOUND GUILTY BY THE MAGISTERIAL DISTRICT JUDGE AND WISH TO APPEAL, YOU HAVE THIRTY (30) DAYS TO REQUEST A TRIAL DE NOVO IN THE COURT OF COMMON PLEAS
- ALL CHECKS OR MONEY ORDERS FOR FINE, COSTS, FEES, OR FOR COLLATERAL, SHALL BE MADE PAYABLE TO "MAGISTERIAL DISTRICT NO MDJ-10-2-03". You can make case payments online through Pennsylvania's Unified Judicial System web portal. Visit the portal at *http://ujsportal.pacourts.us* to make a payment.
- IF YOU FAIL TO RESPOND TO THIS SUMMONS WITHIN THE TIME SPECIFIED ABOVE, A WARRANT FOR YOUR ARREST SHALL BE ISSUED.

**IF YOU INTEND TO RESPOND BY MAIL:**

Detach and complete the lower portion of this summons with your signature on the appropriate plea line, (1) or (2).

If you PLEAD NOT GUILTY, your check or money order must be in the amount of the total due specified above. If the total due is not specified, your check or money order must be in the amount of $50.00 which will be held for collateral for your appearance at trial. You will be notified by mail of your date and time for trial.

If you PLEAD GUILTY, enclose a check or money order in the amount of the total due specified above. Failure to remit the full amount of the fine, costs, and fees may result in the issuance of a warrant for your arrest. Your check or money order shall be made payable to "Magisterial District No MDJ-10-2-03".

-- -- -- -- (DETACH HERE) -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- -- --

**MAIL IN PLEA**

I represent that I make this plea knowingly, voluntarily, and intelligently. (Failure to indicate a plea when forwarding an amount equal to the total due specified above will result in a guilty plea being recorded.)

Docket No: MJ-10203-NT-0000099-2019    Citation No: R 2266545-1    Defendant: Lanalex Cloyd, Inc.

1.    I PLEAD NOT GUILTY _____
(Signature)

2.    I PLEAD GUILTY _____
(Signature)

**If you are disabled and require a reasonable accommodation to gain access to the Magisterial District Court and its services, please contact the Magisterial District Court at the above address or telephone number. We are unable to provide transportation.**

MDJS 617
Printed: 05/15/2019 9:03:24AM

1



FREE INTERPRETER
www.pacourts.us/language-rights
724-830-3829

COMMONWEALTH OF PENNSYLVANIA
NON-TRAFFIC CITATION/SUMMONS

CITATION NO. R2266545-1

1. Magisterial District Number: 10-2-03
2. Docket Number: NT-75-19
3. Social Security Number:
4. Address of Magisterial District Office: 1012 STATION ST. HARRISON CITY, PA 15636
5. Driver's Number:
6. State: ☒ PA
7. Defendant's Name - First / Middle / Last: CANALEX CLOYD, INC
8. Defendant's Address (Street-City-State-Zip Code): 5204 FAULK DR. EXPORT, PA 15632
9. Race/Ethnicity: (W) ☐ White (A) ☐ Asian (B) ☐ Black (H) ☐ Hispanic (I) ☐ Native American (U) ☐ Unknown
10. Sex: (M) ☐ Male (F) ☐ Female
11. Date of Birth (MM/DD/YY)
12. Resident Status: (R) ☐ Resident (N) ☐ Non-Resident (U) ☒ Unknown
13. Case Instituted by: (O) ☐ On-View Arrest (C) ☐ Citation/Summons
14. JUVENILE ☐ Yes
15. Parents Notified ☐ Yes
16. Parent's Name
17. Date Notified
18. Time
19. Charge: ☐ Disorderly Conduct ☐ Criminal Trespass ☐ Theft of Services ☐ Criminal Mischief ☐ Harassment ☐ Public Drunkenness ☐ Scattering Rubbish ☐ Retail Theft ☐ Purchase, Consumption, Possession or Transportation of Liquor or Malt or Brewed Beverages ☒ Other VIOLATION OF BOROUGH ORD.
20. Nature of Offense: VIOLATION OF INTERNATIONAL PROPERTY MAINTENANCE CODE 304.1.1 UNSAFE CONDITIONS.
21. Pa. Code
22. ☐ CRIMES CODE TITLE 18
23. SECTION
24. SUB-SECTION
25. FINE: 250.00
26. COSTS: 51.00
27. JCP/ATJ/CJEA/OAG: $ 40.25
28. TOTAL DUE: $341.25
29. ☐ Military Service
30. ☐ Lab Services Requested
31. Date: 5/10/19
32. Time: 2:20
33. Day: FRIDAY
34. City-Twp-Boro: TRAFFORD BOROUGH
35. Code: 430
36. Zone
37. Location: 501 CAVITT AVE TRAFFORD, PA 15085
38. County: WESTMORELAND
39. County Code: 64
40. Defendant's Signature - Acknowledges Receipt of Citation: X PLEASE MAIL
41. Date: 5/10/19 ☐ Issued ☒ Filed
42. ☐ Filed on Info. received
43. I verify that the facts set forth in this citation are true to the best of my knowledge, information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa.C.S. § 4904) relating to unsworn falsification to authorities. I certify this filing complies with the UJS Case Records Public Access Policy.
OFFICER'S SIGNATURE [signature] BADGE NUMBER ORI NUMBER
44. Station Address: 414 BRINTON AVE TRAFFORD, PA 15085
45. Offense Code
46. Property Record No.
47. Systems Code
48. ☐ Initial Report
49. ☐ Attention LCE
50. Incident No.
51. Victim's Name
52. Date of Birth (MM/DD/YY)
53. Sex
54. Race/Ethnicity
57. Confidential Information Section
58. Remarks/Subpoena List: PROPERTY OWNER HAS NOT TAKEN STEPS TO REMEDY OR REPAIR DANGEROUS CONDITIONS INCLUDING BRICKS FALLING FROM THE EXTERIOR WALL FACING ONTO THE SIDEWALK 3+ STORIES BELOW. ALSO GLASS FROM BROKEN WINDOWS FALLING ONTO SIDEWALK.
R2266545-1
59. Supv. Init.
Badge No.

AOPC 407-95 (Rev. 04/2018)

DEFENDANT'S COPY

# RIGHTS AND OBLIGATIONS

1. The original of this non-traffic citation/summons will be filed before the MAGISTERIAL DISTRICT JUDGE WHOSE ADDRESS IS LISTED IN ITEM 4 on the reverse side.
2. Within TEN (10) days of the issuance or receipt of this citation/summons, you must:
   a. **PLEAD NOT GUILTY** by signing your name on Line (a) of the mail-in portion of this citation/summons and returning it to the Magisterial District Office shown in ITEM 4 together with your collateral in an amount equal to the Total Due as specified in ITEM 28 on the reverse side, or if the Total Due is not specified, by forwarding the sum of $50.00 as collateral for your appearance at trial.
   OR
   b. **PLEAD NOT GUILTY** by appearing before the proper Magisterial District Judge and posting such collateral for your appearance as the Magisterial District Judge shall require. If you cannot afford to pay the Total Due as specified in ITEM 28 on the reverse side, or the $50.00 collateral, you must appear before the proper Magisterial District Judge to enter a plea.
   OR
   c. **PLEAD GUILTY** by signing your name on Line (b) of the mail-in portion of this citation/summons and returning it to the Magisterial District Office shown in ITEM 4 together with an amount equal to the Total Due as specified in ITEM 28 on the reverse side, or by making payments online through Pennsylvania's Unified Judicial system web portal. Visit the portal at http://ujsportal.pacourts.us to make a payment.
   OR
   d. **PLEAD GUILTY** by appearing before the proper Magisterial District Judge if the Total Due is not specified or if you are required to appear because the offense with which you are charged carries a mandatory sentence of imprisonment, for example, a violation of 75 Pa.C.S. §1543(b) (Driving while operating privilege is suspended or revoked).
   OR
   e. **REQUEST** inclusion in an Accelerated Rehabilitative Disposition Program (ARD) by appearing before the proper Magisterial District Judge.
3. All checks or money orders must be made payable to the "**Magisterial District Number ___-___-___**", identified in ITEM 1 on the reverse side, and sent to the address reported in ITEM 4.
4. Failure to respond within the time specified above may result in the issuance of a warrant for your arrest.
5. If you fail to appear for trial, the trial may be held in your absence.
6. If you are found guilty by the Magisterial District Judge, or you plead guilty, and you wish to appeal, you have THIRTY (30) days to file an appeal for a trial in the Court of Common Pleas.
7. If you are disabled and require assistance, please contact the Magisterial District Office identified in ITEM 4 on the reverse side.
8. Please note that a guilty plea to offenses relating to underage drinking, 18 Pa.C.S. §§ 6307, 6308, and 6310.3 will result in the suspension of your driver's license.

## INSTRUCTIONS FOR RESPONSE BY MAIL

If you intend to respond by mail:
1. Detach and complete the lower portion of this citation/summons with your signature on the appropriate plea line (a. or b.).
2. If you PLEAD NOT GUILTY, your check or money order for collateral must be in the amount equal to the Total Due as specified in ITEM 28 on the reverse side. If the Total Due is not specified, your check or money order for collateral must be in the amount of $50.00. You will be notified by mail of your trial date.
3. If you PLEAD GUILTY, enclose a check or money order in the amount reported as Total Due in ITEM 28 on the reverse side. Failure to remit the full amount will result in the issuance of a warrant for your arrest.
4. Your check or money order must be made payable to: "Magisterial District Number ___-___-___", identified in ITEM 1 on the reverse side and sent to the address reported in ITEM 4.

Explanation of Items 26 & 27 { 
Costs — May include program costs for crime and delinquency commission, domestic violence, crime victims compensation and courts.
J.C.P./A.T.J/ — Judicial Computer Project/Access to Justice/Criminal Justice Enhancement Account/
C.J.E.A./O.A.G — Office of Attorney General's Operations Appropriations

## MAIL IN PORTION

Place this portion of the citation/summons and your check or money order in an envelope and mail to the MAGISTERIAL DISTRICT OFFICE WHOSE ADDRESS IS REPORTED IN ITEM 4 on the reverse side.

Failure to indicate a plea when forwarding an amount equal to the Total Due as specified on the citation/summons will result in a guilty plea being recorded.

I understand my rights and obligations. Further, I represent that I make this plea knowingly, voluntarily, and intelligently.

a. I plead **NOT GUILTY** and request a trial _____
Signature

b. I plead **GUILTY** _____
Signature

**PLEASE PLACE THE CITATION NUMBER ON YOUR CHECK OR MONEY ORDER.**

**DO NOT MAIL YOUR CHECK OR MONEY ORDER TO THE POLICE DEPARTMENT.**

**DO NOT SEND CASH!**

**Joanne Parise**

| | |
|---|---|
| **From:** | Craig Alexander <CAlexander@dicelaw.com> |
| **Sent:** | Thursday, June 6, 2019 1:05 PM |
| **To:** | Jim Creenan |
| **Cc:** | Adam Hlad; Frank Yeager (frank.yeager@lanalexcloyd.com) |
| **Subject:** | Re: 501 Cavitt |

I will follow up today to make sure it is issued.

Sent from my iPhone

On Jun 6, 2019, at 12:15 PM, Jim Creenan <jcreenan@cbattorneys.com> wrote:

> Craig-
>
> Mr. Yeager went to the Borough this morning to get the permit and it was not there. He was informed that Craig McVicker still has it and they said they would are to let him know when he sends it to them. This is not what we were expecting and would appreciate if you could ensure a prompt delivery of the permit to us. Thank you,
>
> Jim
>
> **From:** Craig Alexander <CAlexander@dicelaw.com>
> **Sent:** Wednesday, June 5, 2019 11:24 AM
> **To:** Jim Creenan <jcreenan@cbattorneys.com>
> **Cc:** Adam Hlad <adamhlad@gmail.com>
> **Subject:** RE: 501 Cavitt
>
> Jim-
>
> Order came in yesterday's mail. You probably got is as well.
>
> Craig H. Alexander, Esquire
> Bruce E. Dice & Associates P.C.
> 787 Pine Valley Drive, Suite E
> Pittsburgh, PA 15239
> Office: 724-733-3080
> Mobile: 412-310-1599.
>
> **From:** Jim Creenan <jcreenan@cbattorneys.com>
> **Sent:** Wednesday, June 05, 2019 10:43 AM
> **To:** Craig Alexander <CAlexander@dicelaw.com>
> **Cc:** Adam Hlad <adamhlad@gmail.com>
> **Subject:** RE: 501 Cavitt
>
> Also – can you have someone email a copy to me? Thanks, Jim
>
> **From:** Craig Alexander <CAlexander@dicelaw.com>
> **Sent:** Wednesday, June 5, 2019 10:37 AM

1



**EXHIBIT**
**32**

**To:** Jim Creenan <jcreenan@cbattorneys.com>
**Cc:** Adam Hlad <adamhlad@gmail.com>
**Subject:** 501 Cavitt

Jim-

I received an email from Trafford's Code Enforcer this am regarding 501 Cavitt. He indicated that no one has come in to request the demo permit we discussed at the recent status conference. I know we are waiting on an order, but Trafford is prepared to issue the permit forthwith based on our agreement on the record.

Please advise.

Thanks.

Craig H. Alexander, Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA 15239
Office: 724-733-3080
Mobile: 412-310-1599.

**Joanne Parise**

| | |
|---|---|
| **From:** | Craig Alexander <CAlexander@dicelaw.com> |
| **Sent:** | Thursday, June 6, 2019 3:58 PM |
| **To:** | Jim Creenan |
| **Cc:** | Adam Hlad; Frank Yeager (frank.yeager@lanalexcloyd.com) |
| **Subject:** | RE: 501 Cavitt |
| **Attachments:** | SKM_C22719060615370.pdf |

Permit was just received from Craig M. Adam can still coordinate with Mr. Yeager if necessary to get him a hard copy.

Craig H. Alexander,Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA 15239
Office: 724-733-3080
Mobile: 412-310-1599.

**From:** Craig Alexander
**Sent:** Thursday, June 06, 2019 3:25 PM
**To:** Jim Creenan <jcreenan@cbattorneys.com>
**Cc:** Adam Hlad <adamhlad@gmail.com>; Frank Yeager (frank.yeager@lanalexcloyd.com) <frank.yeager@lanalexcloyd.com>
**Subject:** RE: 501 Cavitt

Jim-

I directed Adam to issue the permit given the court order to do so. Adam will be following up with Mr. Yeager to coordinate an exchange.

Craig H. Alexander,Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA 15239
Office: 724-733-3080
Mobile: 412-310-1599.

**From:** Jim Creenan <jcreenan@cbattorneys.com>
**Sent:** Thursday, June 06, 2019 12:15 PM
**To:** Craig Alexander <CAlexander@dicelaw.com>
**Cc:** Adam Hlad <adamhlad@gmail.com>; Frank Yeager (frank.yeager@lanalexcloyd.com) <frank.yeager@lanalexcloyd.com>
**Subject:** RE: 501 Cavitt

Craig-

Mr. Yeager went to the Borough this morning to get the permit and it was not there. He was informed that Craig McVicker still has it and they said they would are to let him know when he sends it to them. This is not what we were expecting and would appreciate if you could ensure a prompt delivery of the permit to us. Thank you,

Jim

**From:** Craig Alexander <CAlexander@dicelaw.com>
**Sent:** Wednesday, June 5, 2019 11:24 AM
**To:** Jim Creenan <jcreenan@cbattorneys.com>
**Cc:** Adam Hlad <adamhlad@gmail.com>
**Subject:** RE: 501 Cavitt

Jim-

Order came in yesterday's mail.  You probably got is as well.

Craig H. Alexander,Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA  15239
Office:  724-733-3080
Mobile: 412-310-1599.

**From:** Jim Creenan <jcreenan@cbattorneys.com>
**Sent:** Wednesday, June 05, 2019 10:43 AM
**To:** Craig Alexander <CAlexander@dicelaw.com>
**Cc:** Adam Hlad <adamhlad@gmail.com>
**Subject:** RE: 501 Cavitt

Also – can you have someone email a copy to me?  Thanks, Jim

**From:** Craig Alexander <CAlexander@dicelaw.com>
**Sent:** Wednesday, June 5, 2019 10:37 AM
**To:** Jim Creenan <jcreenan@cbattorneys.com>
**Cc:** Adam Hlad <adamhlad@gmail.com>
**Subject:** 501 Cavitt

Jim-

I received an email from Trafford's Code Enforcer this am regarding 501 Cavitt.  He indicated that no one has come in to request the demo permit we discussed at the recent status conference.  I know we are waiting on an order, but Trafford is prepared to issue the permit forthwith based on our agreement on the record.

Please advise.

Thanks.

Craig H. Alexander,Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA  15239
Office:  724-733-3080
Mobile: 412-310-1599.



# CODE ENFORCEMENT AGENCY

1633 Route 51, Suite 100, Jefferson Hills, PA 15025

1-866-410-4952    www.cea-code.com

## Internal Invoicing Sheet

Permit Fee: $ _150.00_

Municipality: Trafford Borough

Date of Permit:  June 6, 2019

Name on Permit:  Lanalex Cloyd

CEA Permit # D-2019-184508

Address:  501 Cavitt

Tax Map 36-03-03-0-490

Description:   Commercial – Demolition of Parapet

** Price does NOT reflect additional charges of the Municipality to the Customer.

Breakdown of Permit Fees: _____ ✓ _150_____

Plan Review: _____     Electric: _____

EDM (Application Pages) #:_____ @ $.50_____

EDM Documents #: _____ @ $2/pg_____ Total EDM: $_____

Signed by: _____ Date_____    TOTAL DUE TO CEA   $ __150.00_

**EXHIBIT**

**33**



# CODE ENFORCEMENT AGENCY

1633 Route 51, Suite 100, Jefferson Hills, PA 15025

1-866-410-4952    www.cea-code.com

## COMMERCIAL

CERTIFIED PLANS MUST BE ONSITE AT ALL TIMES. FAILURE TO
PRODUCE WILL RESULT IN AN OFFICIAL STOP WORK ORDER BY THE UCC.

June 6, 2019

Lanalex Cloyd, Inc.
501 Cavitt
Trafford, PA 15085

On behalf of <u>Trafford Borough</u>, Code Enforcement Agency is pleased to issue the following permit for a:

Demolition of Parapet Only
Commercial Demolition Permit – **D-2019-184508**

### The UCC Required Inspections shall be:

a) Final for UCC Compliance

<u>Please NOTE:</u> All inspections must be signed off by an approved CEA Inspector prior to the Building Code
Official's final review. Failure to complete listed inspections is the permit holder's responsibility. No
advance or forward inspections shall take place.

Your Commercial Building Inspections will be done by CEA. Please contact us at 412-405-8231 to schedule
your building inspections.

Sincerely,

Craig I. McVicker
Code Enforcement Agency



# Demolition Permit

## PA UCC Commercial

**Placard must be displayed in a highly visible area at all times of the construction**

**PERMIT #** D-2019-184508

Name of Permit:   LANALEX CLOYD, INC.

Date Issued:    6/6/2019

Address of Permit: 501 Cavitt Ave, Trafford, PA 15085

Tax Map Number:  36-03-03-0-490

**Construction Type:**   DEMOLITION OF PARAPET ONLY



Signature of BCO

**Issued as per PA Section 403.43 of the Pennsylvania Construction Code Standard of Act 45 of 2004**

IN THE COURT OF COMMON PLEAS OF
WESTMORELAND COUNTY, PENNSYLVANIA

LANALEX CLOYD, INC.,

        Plaintiff,

vs.

TRAFFORD BOROUGH,

        Defendant.

CIVIL DIVISION – LAW

No. 807 of 2018

**ORDER OF COURT**

AND NOW, this 31st day of May, 2018, upon the holding of a status conference in the above-captioned matter, and by consent of the parties, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. Defendant Trafford Borough shall immediately issue the requested demolition permit to Plaintiff Lanalex Cloyd, Inc.;

2. Plaintiff Lanalex Cloyd, Inc. shall begin work, in accordance with the permit, with the involvement of on-site contractors, within thirty (30) days of the issuance of the demolition permit;

3. Plaintiff Lanalex Cloyd, Inc. shall strictly comply with this time requirement or face possible sanctions;

4. Defendant Trafford Borough shall issue a building permit to Plaintiff Lanalex Cloyd, Inc. thereafter, provided that the Plaintiff's application is in compliance with all Building Code regulations and requirements;

- 1 -

5. Defendant Trafford Borough shall withdraw without prejudice any and all pending charges against Plaintiff Lanalex Cloyd, Inc. which have been filed with Magisterial District Justice Helen M. Kistler;

6. Plaintiff Lanalex Cloyd, Inc. shall take immediate measures to secure the entrance and building where persons may enter until demolition work begins in accordance with this Order;

7. The pending Hearing on Permanent Injunction in this matter is CONTINUED GENERALLY;

8. Any party may petition for reinstatement of the above hearing or a status conference should the same become necessary;

9. FURTHER, in accord with Pa.R.C.P. 236(a)(2)(b), the Prothonotary is DIRECTED to note in the docket that the individuals listed below have been given notice of this Order.

BY THE COURT:

HARRY F. SMAIL, JR., JUDGE

ATTEST:

Cc:   James W. Creenan, Esq., Counsel for Plaintiff
      Craig Alexander, Esq., Counsel for Defendant

# BRUCE E. DICE & ASSOCIATES, PC.

ATTORNEYS AT LAW

787 PINE VALLEY DRIVE, SUITE E
PITTSBURGH, PENNSYLVANIA 15239-2842

TEL: 724-733-3080

FAX: 724-327-9659

June 7, 2019

**VIA EMAIL TO: jcreenan@cbattorneys.com**
James W. Creenan, Esquire
Creenan & Baczkowski, PC
3007 Old William Penn Highway
Murrysville, PA 15068

RE:   LANALEX CLOYD v. TRAFFORD BOROUGH
      Docket 807 of 2018
      Issuance of Demolition Permit

Dear Jim:

As you are aware, I serve as Solicitor for the Borough of Trafford. In that capacity, I am writing to confirm our discussion that the demolition permit issued in accordance with Judge Smail's May 31, 2019 order of court and our consent on the record regarding same authorizes those items set forth in Mr. Yeager's Demolition Permit Application dated 10/17/2018 and not just the parapet wall as identified on the permit.

Specifically, the permit includes:  Removal of parapet wall, chimneys, and collapsed portion of building interior. Replacement of roof membrane, damaged roof elements, and Fifth Street sidewalk. Bracing of exterior wall in collapse portion of the building.

It is my understanding that Mr. McVicker limited the scope of the permit erroneously based upon his interpretation of what was relayed to him from the recent status conference. If you are comfortable with the contents of this correspondence, no further amendment of the demolition permit is necessary.

As always, if there are any questions or comments, please do not hesitate to contact me at your convenience.

Very truly yours,
BRUCE E. DICE & ASSOCIATES, P.C.

Craig H. Alexander, Esquire
Solicitor, Borough of Trafford

CHA/alo
Cc:   Trafford Borough

**EXHIBIT**
**34**

BRUCE E. DICE
bdice@dicelaw.com

ROBERT A. ZUNICH
rzunich@dicelaw.com

PAUL D. ZAVARELLA
pzavarella@dicelaw.com

CRAIG H. ALEXANDER
calexander@dicelaw.com

CHELSEA DICE
cdice@dicelaw.com

DAYNE DICE
ddice@dicelaw.com

**Joanne Parise**

| | |
|---|---|
| **From:** | Craig Alexander <CAlexander@dicelaw.com> |
| **Sent:** | Monday, September 9, 2019 12:33 PM |
| **To:** | Jim Creenan |
| **Subject:** | Re: 501 cavitt |

Thanks Jim. I will relay.

Sent from my iPhone

> On Sep 9, 2019, at 10:04 AM, Jim Creenan <jcreenan@cbattorneys.com> wrote:
>
> Craig -
>
> I understand that the demolition is proceeding along pursuant to the permit and that the borough personnel are in fact aware that work continues.  The chimney(s) are part of the demo plan and will be removed.  There is no danger of them falling to the street side.
>
> Jim
>
> -----Original Message-----
> From: Craig Alexander <CAlexander@dicelaw.com>
> Sent: Friday, September 6, 2019 3:23 PM
> To: Jim Creenan <jcreenan@cbattorneys.com>
> Subject: 501 cavitt
>
> Jim...coincidentally I just received this picture with a note that the middle chimney is about to collapse.  Can you get back to me as quickly as possible?  Thanks.
>

**EXHIBIT**

**35**

1

**Joanne Parise**

| | |
|---|---|
| **From:** | Craig Alexander <CAlexander@dicelaw.com> |
| **Sent:** | Monday, September 16, 2019 4:58 PM |
| **To:** | Jim Creenan |
| **Subject:** | Motion for Expedited Status Conference.pdf |
| **Attachments:** | Motion for Espedited Status Conference.pdf |

Jim-

Please see attached motion for expedited status conference that I plan to present on Friday to Judge Smail.

Please advise whether you intend to contest or whether I can drop off for signature as uncontested. I will be in Greensburg tomorrow morning.

Thanks.

Craig.

.

.

**EXHIBIT**

**36**

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA

LANALEX CLOYD,

            Plaintiffs

      vs.

TRAFFORD BOROUGH

            Defendant

CIVIL DIVISION-EQUITY

NO.  807 of 2018

**MOTION FOR EXPEDITED
STATUS CONFERENCE**

FILED ON BEHALF OF:

Trafford Borough, Defendant

COUNSEL OF RECORD FOR THIS PARTY:

Craig H. Alexander, Esquire
Pa. I.D. # 62938

BRUCE E. DICE & ASSOCIATES, P.C.
787 Pine Valley Drive, Ste E
Pittsburgh, PA  15239
Tel. No. (724) 733-3080
Fax No. (724) 327-9659
Email.calexander@dicelaw.com

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA -- CIVIL DIVISION-EQUITY

LANALEX CLOYD,                          )
                                        )
                    Plaintiffs          )        807 of 2018
                                        )
        vs.                             )
                                        )
TRAFFORD BOROUGH                        )
                                        )
                    Defendant           )

TO:     James W. Creenan, Esquire
        Creenan & Baczkowski, PC
        3007 Old William Penn Highway
        Murrysville, PA 15068
        jcreenan@cbattorneys.com

### NOTICE OF PRESENTATION

Please take notice that the within Motion will be presented to the Hon. Harry F. Smail, Jr. on the 20th day of September, 2019 at 8:30 o'clock a.m or as soon thereafter as suits the convenience of the Court.

September 16, 2019
Date                                    Craig H. Alexander, Esquire

### CERTIFICATE OF SERVICE

I, certify that a true and correct copy of the within Motion was sent via email the above named person at jcreenan@cbattorneys.com on the 4th day of March, 2019.

                                        Craig H. Alexander, Esquire

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA -- CIVIL DIVISION-EQUITY

| | | |
|---|---|---|
| LANALEX CLOYD, | ) | |
| | ) | |
| Plaintiffs | ) | 807 of 2018 |
| | ) | |
| vs. | ) | |
| | ) | |
| TRAFFORD BOROUGH | ) | |
| | ) | |
| Defendant | ) | |

## **MOTION FOR EXPEDITED STATUS CONFERENCE**

AND NOW COMES the DEFENDANT, Trafford Borough, by and through its Solicitor, Craig H. Alexander, Esquire and Bruce E. Dice and Associates, P.C. and hereby files the following Motion for to Resume Hearing averring in support thereof as follows:

1. On or around May 21, 2019, this Honorable Court held a status conference with regard to the ongoing dispute between the parties.

2. As a result of the status conference and agreements of the parties, the Court entered and order of court dated May 31, 2019, a copy of which attached hereto and incorporated herein by reference.

3. The order directs, among other things, that Plaintiff, Lanalex Cloyd, Inc. shall begin work, in accordance with the permit, with the involvement of on-site contractors, within thirty days of the issuance of the demotion permit.

4. While Plaintiff complied with the literal terms of this provision, Defendant believes and therefore avers, that it was implicit within the order that Plaintiff would timely complete the project without long lapses of time in between.

5. Trafford officials have relayed that they have seen no work being performed in accordance with the demolition period for quite some time.

6. The structure continues to deteriorate and recently, officials became worried that the middle chimney was going to collapse.

7. Counsel for Trafford contacted Counsel for Plaintiff to relay this information and request a status update.

8. Coincidentally, the Trafford Code Officer sent a picture of the structure with the Chimney to Counsel for Plaintiff. (See attached)

9. Counsel forwarded this picture to Counsel for Plaintiff with a further request to investigate.

10. Counsel for Plaintiff promptly responded with the attached email stating that he understands "that the demolition is proceeding along pursuant to the permit and that the borough personnel are in fact aware that work continues. The chimney(s) are part of the demo plan and will be removed. There is no danger of them falling to the street side."

11. Over the weekend, the middle chimney did collapse, though fortunately not onto the street side. (See attached).

12. Regardless, the demolition & rehabilitation work has dragged on with no foreseeable conclusion and the residents of Trafford are at risk of further collapse of the structure.\

13. Trafford believes that it was the intention of the Court, and in fact of the parties, that this work be completed promptly.

14. Paragraph 8 of the May 31, 2019 order permits either party to petition for another status conference should same become necessary.

15. In accordance thereto, Trafford is requesting an expedited status conference to further discuss the matter and come up with firm timelines for the completion of this work.

**WHEREFORE**, DEFENDANT, TRAFFORD BOROUGH, requests relief consistent herewith.

RESPECTFULLY SUBMITTED

_____
Craig H. Alexander, Esquire

**IN THE COURT OF COMMON PLEAS OF
WESTMORELAND COUNTY, PENNSYLVANIA**

LANALEX CLOYD, INC.,

        Plaintiff,

    vs.

TRAFFORD BOROUGH,

        Defendant.

**CIVIL DIVISION – LAW**

No. 807 of 2018

2019 MAY 31  PM 2: 10
CHRISTINA O'BRIEN
PROTHONOTARY
FILED IN
PROTHONOTARY'S OFFICE
WESTMORELAND COUNTY

**ORDER OF COURT**

AND NOW, this 31st day of May, 2018, upon the holding of a status conference in the above-captioned matter, and by consent of the parties, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. Defendant Trafford Borough shall immediately issue the requested demolition permit to Plaintiff Lanalex Cloyd, Inc.;

2. Plaintiff Lanalex Cloyd, Inc. shall begin work, in accordance with the permit, with the involvement of on-site contractors, within thirty (30) days of the issuance of the demolition permit;

3. Plaintiff Lanalex Cloyd, Inc. shall strictly comply with this time requirement or face possible sanctions;

4. Defendant Trafford Borough shall issue a building permit to Plaintiff Lanalex Cloyd, Inc. thereafter, provided that the Plaintiff's application is in compliance with all Building Code regulations and requirements;

- 1 -

5. Defendant Trafford Borough shall withdraw without prejudice any and all pending charges against Plaintiff Lanalex Cloyd, Inc. which have been filed with Magisterial District Justice Helen M. Kistler;

6. Plaintiff Lanalex Cloyd, Inc. shall take immediate measures to secure the entrance and building where persons may enter until demolition work begins in accordance with this Order;

7. The pending Hearing on Permanent Injunction in this matter is CONTINUED GENERALLY;

8. Any party may petition for reinstatement of the above hearing or a status conference should the same become necessary;

9. FURTHER, in accord with Pa.R.C.P. 236(a)(2)(b), the Prothonotary is DIRECTED to note in the docket that the individuals listed below have been given notice of this Order.

BY THE COURT:

HARRY F. SMALL, JR., JUDGE

ATTEST:

PROTHONOTARY

Cc: Jeffrey W. Greenan, Esq., Counsel for Plaintiff
Craig Alexander, Esq., Counsel for Defendant

- 2 -



## Craig Alexander

| | |
|---|---|
| **From:** | Jim Creenan <jcreenan@cbattorneys.com> |
| **Sent:** | Monday, September 09, 2019 10:05 AM |
| **To:** | Craig Alexander |
| **Subject:** | RE: 501 cavitt |

Craig -

I understand that the demolition is proceeding along pursuant to the permit and that the borough personnel are in fact aware that work continues. The chimney(s) are part of the demo plan and will be removed. There is no danger of them falling to the street side.

Jim

-----Original Message-----
From: Craig Alexander <CAlexander@dicelaw.com>
Sent: Friday, September 6, 2019 3:23 PM
To: Jim Creenan <jcreenan@cbattorneys.com>
Subject: 501 cavitt

Jim...coincidentally I just received this picture with a note that the middle chimney is about to collapse. Can you get back to me as quickly as possible? Thanks.



IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA -- CIVIL DIVISION-EQUITY

| | | |
|---|---|---|
| LANALEX CLOYD, | ) | |
| | ) | |
| Plaintiffs | ) | 807 of 2018 |
| | ) | |
| vs. | ) | |
| | ) | |
| TRAFFORD BOROUGH | ) | |
| | ) | |
| Defendant | ) | |

## **ORDER OF COURT**

AND NOW TO WIT, this _____ day of September, upon consideration of the foregoing

MOTION, an expedited Status Conference is hereby scheduled before the undersigned for the

_____ day of _____, 2019 at _____ o'clock a.m./p.m.


BY THE COURT:


_____J.

## Joanne Parise

**From:** Jim Creenan
**Sent:** Tuesday, September 17, 2019 8:12 AM
**To:** Craig Alexander
**Cc:** Jake Oresick; Joanne Parise; Debbie Swank
**Subject:** Re: Motion for Expedited Status Conference.pdf

Craig,

Please provide to me all supporting documentation as well as a verification to the motion containing the averments of fact.

You are very well aware that there is no time limit in the order and that the work complies with the Order and the Permit.

After you provide this, I can discuss with my client any legitimate concerns should they exist.

Jim

Get Outlook for Android

---

**From:** Craig Alexander <CAlexander@dicelaw.com>
**Sent:** Tuesday, September 17, 2019 7:49:56 AM
**To:** Jim Creenan <jcreenan@cbattorneys.com>
**Cc:** Jake Oresick <joresick@cbattorneys.com>; Joanne Parise <jparise@cbattorneys.com>; Debbie Swank <dswank@cbattorneys.com>
**Subject:** Re: Motion for Expedited Status Conference.pdf

Needed to get it out to make the notice requirement because you complained to the judge about that before. We can always talk. Cooperation is what I'm looking for. That's why I reached out to you regarding the collapsing chimney. I'm available all day today. Give me a call at your convenience. Help me with a better approach.

Sent from my iPhone

On Sep 17, 2019, at 7:37 AM, Jim Creenan <jcreenan@cbattorneys.com> wrote:

> Craig,
>
> I am not sure why you neglected to give me a call before running this off. We will oppose. In the future, I'd request your cooperation on any pending issues. This certainly is not the best approach.
>
> Jim
>
> Get Outlook for Android

---

**From:** Craig Alexander <CAlexander@dicelaw.com>
**Sent:** Monday, September 16, 2019 4:58:26 PM

**EXHIBIT 37**

1

**To:** Jim Creenan <jcreenan@cbattorneys.com>
**Subject:** Motion for Expedited Status Conference.pdf

Jim-

Please see attached motion for expedited status conference that I plan to present on Friday to Judge Smail.

Please advise whether you intend to contest or whether I can drop off for signature as uncontested. I will be in Greensburg tomorrow morning.

Thanks.

Craig.

<Motion for Espedited Status Conference.pdf>

.

# Creenan & Baczkowski, PC
### A T T O R N E Y S

**Murrysville Office**
Town Square Professional Building
Suite 304
3907 Old William Penn Highway
Murrysville, PA 15668

(724) 733-8832

www.cbattorneys.com

**McKeesport Office**
City Hall Building
Suite 305
502 Fifth Avenue
McKeesport, PA 15132

(412) 675-0940

JAMES W. CREENAN
MOLLY M. CREENAN
JAKE S. ORESICK
FRANK W. JONES (OF COUNSEL)
CHARLES R. CONWAY (OF COUNSEL)

WALTER F. BACZKOWSKI (1942-2017)
ELIZABETH BAILEY (1920-2016)

Writer's Email:
jcreenan@cbattorneys.com

October 10, 2019

Honorable Harry F. Smail, Jr.
Courtroom No. 2
Westmoreland County Courthouse
2 N. Main Street
Greensburg, PA 15601

> Re:  *501 Cavitt Avenue*
> Our File No. 16885

Dear Judge Smail:

In furtherance of the Status Conference on October 8, 2019 and the Order of Court of the same day, please be advised as follows:

1. The parties and their counsel met at my office on October 8, 2019 at 2 p.m.;
2. Plaintiff arranged for a structural engineer, Bob Mason, PE, of Reliable Structural Engineers LLC, assessed the building on October 9, 2019 at approximately 8 a.m.  ** The author of our November 2017 report Mr. Romesburg could not commit to travel to the building from his Waynesburg office and complete a report within the timeframe established in the Order due to pre-existing commitments; and,
3. Mr. Mason has supplied to me the attached report.

Plaintiff had been advised that the estimated costs for Mr. Mason's suggestions are substantially greater than prior estimates, so Plaintiff is making arrangements to secure an appropriate demolition contractor and then submit the permit application. The Borough had agreed to issue a demolition permit as soon as it receives the application.

Thank you for your attention to this matter.

Very truly yours,

James W. Creenan

JWC/
Enclosures
cc:    Craig Alexander, Esquire
       Frank Yeager

**EXHIBIT**
**38**

## Jim Creenan

| | |
|---|---|
| **From:** | Bob Mason <bobthestructuralengineer@gmail.com> |
| **Sent:** | Thursday, October 10, 2019 8:54 AM |
| **To:** | frank.yeager@lanalexcloyd.com; Jim Creenan |
| **Subject:** | 501-503 Cavitt Avenue Structural Report |
| **Attachments:** | 501-503 Cavitt Ave Structural Report.pdf; 501-503 Cavitt Ave Photo Log.pdf; 501-503 Cavitt Ave Invoice.pdf |

Frank/Jim,

Attached are the structural report and photo log. Please let me know you received the the report.

Please also let me know if you have any questions.

The invoice is also attached to this email. Your prompt payment of the invoice is greatly appreciated!

Thank you for the opportunity to be of service. Please let me know if I can be of any additional help.

Respectfully submitted,
Bob Mason, PE
Reliable Structural Engineers LLC
412-770-7590
BobTheStructuralEngineer@gmail.com
www.reliablestructuralengineers.com

# RELIABLE STRUCTURAL ENGINEERS LLC

Bringing You Peace of Mind For Your Structural Engineering Needs!

| 17 Oak Street, Pittsburgh, PA 15202 | 412-770-7590 | BobTheStructuralEngineer@gmail.com |

October 10, 2019
P-19-291

Attn:   Frank Yeager
       Lanalex Cloyd Inc.
       5204 Faulk Drive
       Export, PA 15632

Subject:      Structural Report
             50503 Cavitt Avenue
             Trafford, PA 15085

Pursuant to your request, I performed a structural assessment and visual observation of the above referenced building on October 9, 2019. The purpose of this assessment was to evaluate the building's structural integrity.

This report presents my findings regarding our discussion and on-site visual observations. The liability of this report is limited to the total amount of fees collected. It is in no way meant to be viewed as a comprehensive study of the building structure, or that the existing structural plans were reviewed for capacity and/or code compliance.

**It should be noted that the brick parapet wall at the roof level around the perimeter of the building poses a potential life safety hazard to any passersby on the ground level.**

## BACKGROUND

The subject building is located at the intersection of Cavitt Avenue and 5th Street in the 15085 zip code area of the Borough of Trafford, Westmoreland County, Pennsylvania. The original date of construction was not available on the Westmoreland County Property Records website. The property has been ordered by a judge for evaluation by a structural engineer.

Reliable Structural Engineers LLC
October 10, 2019

501-503 Cavitt Avenue
Trafford, PA 15085

## OBSERVATIONS

Conditions of the building structure were noted during my inspection on October 9, 2019 The on-site inspection was performed by Robert G. Mason, Jr., P.E., Structural Engineer. For orientation purposes, the building front wall faces Cavitt Avenue to the north. All other directional references are with respect to facing the object being described.

The three-story building features multi-wythe brick masonry walls supporting wood floor joist construction and unreinforced sandstone foundation walls in the basement. The dimensional wood joists run from right to left, and are supported by a central masonry bearing wall running from front to rear, and the basement exterior foundation wall. The front yard grade is approximately level with the first floor level, and then slopes downward to the rear yard. There is a basement vault space under the sidewalk along the right elevation of the building along 5th Street.

Photos 1 thru 4 illustrate the four elevations of the building. Photo 5 shows the unbraced section of the right elevation exterior brick masonry wall at the roof level. Photo 6 depicts the collapsed roof framing viewed through one of the building windows. Photo 7 illustrates a collapsed section of the roof parapet along the left elevation at the front left corner of the building. Photo 8 shows the depressed section of sidewalk. This indicates that elevated slab over the basement vault space has failed.

The building roof framing on both sides of the building have collapsed into the third floor. On the right side, the third floor framing has also collapsed in the middle of the floor area. It was reported that the roof has been partially open to the weather elements for multiple years.

## DISCUSSION AND CONCLUSIONS

The building has been subjected to weather for several years, which caused the failing roof parapet walls, roof and third floor framing, and sidewalk vault slab areas. **The failing roof parapet walls pose a falling debris hazard, which is life safety concern to any pedestrians at the ground level.**

2

Reliable Structural Engineers LLC
October 10, 2019

501-503 Cavitt Avenue
Trafford, PA 15085

In order to repair the building, the exterior walls would need to be braced externally. This would involve the installation of a framework of steel H-piles anchored by 3-ft wide by 3-ft tall by 15-ft long concrete deadmen at 15 to 20 feet on center around the building. The framework would be installed adjacent to the building walls and the exterior walls would be connected to the new framework.

The alternative to the above-referenced repairs would be to demolish the building structure in its entirety.

Should you have any questions regarding my findings or conclusions, please do not hesitate to contact me.

Respectfully submitted,


Robert G. Mason, Jr., P.E.
Principal Engineer

Enclosure:      Photo Log

Case 2:20-cv-03525-WSS Document 13-32 Filed 09/09/20 Page 190 of 223

Reliable Structural Engineers LLC
October 10, 2019

501-503 Cavitt Avenue, Trafford, PA
Photo Log



**Photo 1 – Front elevation of building.**



**Photo 2 – Right elevation of building.**

Reliable Structural Engineers LLC
October 10, 2019

501-503 Cavitt Avenue, Trafford, PA
Photo Log



**Photo 3 – Left elevation of building.**



**Photo 4 – Rear elevation of building.**

Reliable Structural Engineers LLC
October 10, 2019

501-503 Cavitt Avenue, Trafford, PA
Photo Log



**Photo 5 – Unbraced right elevation exerior brick masonry wall at roof level.**



**Photo 6 – Collapsed section of roof framing.**

Reliable Structural Engineers LLC
October 10, 2019

501-503 Cavitt Avenue, Trafford, PA
Photo Log



Photo 7 – Parapet wall collapsed into building along left elevation at front left building corner.



Photo 8 – Sunken sidewalk indicates failed elevated slab over basement vault space under sidewalk.

# BRUCE E. DICE & ASSOCIATES, PC.

ATTORNEYS AT LAW

787 PINE VALLEY DRIVE, SUITE E
PITTSBURGH, PENNSYLVANIA 15239-2842

TEL: 724-733-3080

FAX: 724-327-9659

October 10, 2019

Hon. Harry F. Smail, Jr.
Westmoreland County Courthouse, Court Room 2
2 North Main Street
Greensburg, PA 15601

   RE: Lanalex Cloyd, Inc. v. Trafford  807 of 2018

Dear Judge Smail:

   I have received Mr. Creenan's correspondence along with the report of Plaintiff's Structural Engineer. Trafford also sought a report of a structural engineer as well and that report is enclosed.

   It is my understanding that Your Honor indicated if any issue needed to be addressed you would be available for same up until Friday.

   Based upon Mr. Creenan's representation that Plaintiff is in the process of securing a demolition company to demolish the structure, as well as the conclusions in the two reports, I am requesting that the enclosed Motion for Emergency Relief to set time frames for the prompt demolition be entertained by the Court.

   If a telephone conference is required, I can be reached on my mobile phone at 412.310.1599.

   I thank you in advance for your time and attention to this matter.

     Very truly yours,
   BRUCE E. DICE & ASSOCIATES, P.C.

   Craig H. Alexander, Esquire
   Solicitor, Trafford Borough

CHA/arp
Cc: James Creenan, Esquire (with enclosures).

**EXHIBIT**
**39**

BRUCE E. DICE
bdice@dicelaw.com ROBERT A. ZUNICH
rzunich@dicelaw.com PAUL D. ZAVARELLA
pzavarella@dicelaw.com CRAIG H. ALEXANDER
calexander@dicelaw.com CHELSEA DICE
cdice@dicelaw.com DAYNE DICE
ddice@dicelaw.com



P.O. BOX 237 MURRYSVILLE, PA 15668
(O) (724)325-3513   (C) (724)433-5504
EMAIL: JOSH@ANDERSONSTRUCTURALINC.COM
WWW.ANDERSONSTRUCTURALINC.COM

**TRAFFORD BOROUGH**
**414 BRINTON AVE**
**TRAFFORD, PA 15085**

ASI #01-1951
October 10th, 2019

Re: *Structural Observation*
   *501 Cavitt Avenue*
   *Trafford, Pennsylvania 15085*

Dear Mr. Hlad,

Based on your request, Joshua C. Anderson, P.E. of Anderson Structural Inc. (ASI) has reviewed the provided photographs of the above referenced address. The existing structure is a three-story above grade and one partially below grade building. The structure consists of exterior masonry walls and steel and wood framed interior floors and roof. Based upon the photographs, widespread collapse of the roof and floor systems has occurred throughout the existing structure. The failures appear to extend down to the lower levels as can be observed from the provided overhead photographs. Similar conditions were observed and noted in a report dated November 16th, 2017 by MR Structures. No repairs or reinforcing appear to have been completed since that time. Deterioration and further collapse have occurred and will continue. The longer that the structure is exposed to the elements, the rate of decay will continue to increase until complete failure.

Based upon the observations of the provided information, the existing structure is inadequate and extremely unsafe. The existing masonry walls are now multiple stories high with no lateral bracing from the floor diaphragms. This condition creates a significant risk of wall collapse. With the exterior walls in such close proximity to the Cavitt Avenue and Route 130 in addition to public walkways, the safety of people in these areas are now at risk. The repairs required to attain structural adequacy are significant and therefore it is recommended that the building be demolished as soon as possible.

**Based on the observations, it is our professional opinion that the existing structure is no longer adequate or safe for occupation and now poses a risk to the surrounding structures and public. The building is at risk for collapse and no interior access should be allowed. It is our recommendation that the building be demolished as soon as possible to eliminate the possibility of collapse and possible injury to people and surrounding structures.**

**EXHIBIT**
**3**

501 Cavitt Avenue

October 10th, 2019

    It was a pleasure providing our structural services. If you have any questions regarding this report please contact ASI for assistance. ASI reserves the right to modify its finding based on information uncovered after the visit to the site or as more information becomes available.

Sincerely,

Joshua C. Anderson, P.E.
President / Owner

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA

LANALEX CLOYD,

          Plaintiffs

    vs.

TRAFFORD BOROUGH

          Defendant

CIVIL DIVISION-EQUITY

NO.   807 of 2018

**EMERGENCY MOTION FOR
SPECIAL RELIEF**

FILED ON BEHALF OF:

Trafford Borough, Defendant

COUNSEL OF RECORD FOR THIS PARTY:

Craig H. Alexander, Esquire
Pa. I.D. # 62938

BRUCE E. DICE & ASSOCIATES, P.C.
787 Pine Valley Drive, Ste E
Pittsburgh, PA  15239
Tel. No. (724) 733-3080
Fax No. (724) 327-9659
Email.calexander@dicelaw.com

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA -- CIVIL DIVISION-EQUITY

| | | |
|---|---|---|
| LANALEX CLOYD, | ) | |
| | ) | |
| Plaintiffs | ) | 807 of 2018 |
| | ) | |
| vs. | ) | |
| | ) | |
| TRAFFORD BOROUGH | ) | |
| | ) | |
| Defendant | ) | |

## EMERGENCY MOTION FOR SPECIAL RELIEF

AND NOW COMES the DEFENDANT, Trafford Borough, by and through its Solicitor, Craig

H. Alexander, Esquire and Bruce E. Dice and Associates, P.C. and hereby files the following

Motion for to Resume Hearing averring in support thereof as follows:

1. On or around October 8, 2019, this Honorable Court held a second status conference with

    regard to the ongoing issues between the parties.

2. During the status conference, Trafford provided the Court with current pictures of the

    rapidly dilapidating state of the structure at issue located at 501 Cavitt Street, Trafford, PA

    15085.

3. Following the status conference, the Court issued an Order of Court directing:

    a. That the parties meet at the offices of James W. Creenan, Esquire for an emergency

        planning meeting regarding the stability of the structure located at 501 Cavitt

    b. That Plaintiff shall have a structural engineer on site at 501 Cavitt Avenue by 5:00 p.m.

        on Wednesday, October 9, 2019 to assess the stability of the structure; and

    c. That Plaintiff shall obtain a determination by said structural engineer of the necessary

immediate steps to provide for the safety and stability of the structure an/or its possible demolition by 5:00 p.m. on Thursday, October 10, 2019.

(A copy of the Order is attached as Exhibit "1").

4. The parties met as directed at 2:00 p.m. at which time Plaintiff inquired as to the concerns of Trafford.

5. At this time, Plaintiff was unsure whether they would be able to have a structural engineer on site as ordered but advised that there would be someone on site to review the structure and the concerns presented and Plaintiff further requested that Trafford allow the assessment to occur without interference.

6. On Thursday, October 10, 2019 at approximately 11:14 a.m., the Solicitor for Trafford received a communication to the Court along with a report from a structural engineer who was able to be on site and perform the ordered assessment. (A copy of the correspondence and report are attached as Exhibit "2").

7. Without reviewing the entire report, the structural engineer found, among other things, that "the brick parapet wall at the roof level around the perimeter of the building poses a potential life safety hazard to any passersby on the ground level" and "the failing roof parapet walls pose a falling debris hazard, which is life safety concern to any pedestrians at the ground level".

8. The engineer then provided recommendations to provide for the safety and stability of the structure or its possible demolition.

9. In accordance therewith, in Mr. Creenan's letter to the Court, it was represented that "Plaintiff is making arrangements to secure an appropriate demolition contractor and then submit the permit application".

10. In addition, due to the fact that Plaintiff indicated that it was unsure an actual structural engineer would be able to be on site to do the structural assessment, Trafford sought its own structural observation from a structural engineer based upon the photographs provided.

11. It was the conclusion of Trafford's structural engineer following this assessment that "Based on the observations, it is our professional opinion that the existing structure is no longer adequate or safe for occupation and now poses a risk to the surrounding structures and public. The building is at risk for collapse and no interior access should be allowed. It is our recommendation that the building be demolished as soon as possible to eliminate the possibility of collapse and possible injury to people and surrounding structures".

12. Based upon the two structural reports taken together, it is clear that the structure poses a life safety threat to passersby and based upon Mr. Creenan's representation, Plaintiff is securing a demolition contractor to do just that.

13. However, the reports demonstrate an exigency which requires immediate action.

14. Trafford is respectfully requesting that the Court put a time frame for completion of the demolition in place to secure the safety of the residents of Trafford and the surrounding businesses.

**WHEREFORE**, DEFENDANT, TRAFFORD BOROUGH, requests relief consistent herewith.

RESPECTFULLY SUBMITTED

Craig H. Alexander, Esquire

IN THE COURT OF COMMON PLEAS OF
WESTMORELAND COUNTY, PENNSYLVANIA

LANALEX CLOYD, INC.,

        Plaintiff,

vs.

                              CIVIL DIVISION – LAW

TRAFFORD BOROUGH,              No. 807 of 2018

        Defendant.

## ORDER OF COURT

AND NOW, this 8th day of October, 2019, upon the holding of an expedited status conference in the above-captioned matter, it is hereby ORDERED, ADJUDGED, and DECREED as follows:

1. All parties, including Trafford Borough representatives and the owner(s) of Lanalex Cloyd, Inc., along with any other available necessary individual, shall appear at 2:00 p.m. on October 8, 2019 at the offices of James W. Creenan, Esquire for an emergency planning meeting regarding the stability of the structure located at 501 Cavitt Avenue, Trafford, Pennsylvania.

2. Plaintiff Lanalex Cloyd, Inc. shall have a structural engineer on site at 501 Cavitt Avenue by 5:00 p.m. on Wednesday, October 9, 2019 to assess the stability of the structure.

3. Plaintiff Lanalex Cloyd, Inc. shall obtain a determination by said structural engineer of the necessary immediate steps to provide for the safety and stability of

- 1 -



the structure and/or its possible demolition by 5:00 p.m. on Thursday, October 10, 2019.

4.   FURTHER, in accord with Pa.R.C.P. 236(a)(2)(b), the Prothonotary is DIRECTED to note in the docket that the individuals listed below have been given notice of this Order.

BY THE COURT:

HARRY F. SMAIL, JR., JUDGE

ATTEST:

_____

Cc:   James W. Creenan, Esq., Counsel for Plaintiff
       Craig Alexander, Esq., Counsel for Defendant

**Murrysville Office**
Town Square Professional Building
Suite 304
3907 Old William Penn Highway
Murrysville, PA 15668

(724) 733-8832

# Creenan & Baczkowski, PC
### A T T O R N E Y S

www.cbattorneys.com

**McKeesport Office**
City Hall Building
Suite 305
502 Fifth Avenue
McKeesport, PA 15132

(412) 675-0940

JAMES W. CREENAN
MOLLY M. CREENAN
JAKE S. ORESICK
FRANK W. JONES (OF COUNSEL)
CHARLES R. CONWAY (OF COUNSEL)

WALTER F. BACZKOWSKI (1942-2017)
ELIZABETH BAILEY (1920-2016)

**Writer's Email:**
jcreenan@cbattorneys.com

October 10, 2019

Honorable Harry F. Smail, Jr.
Courtroom No. 2
Westmoreland County Courthouse
2 N. Main Street
Greensburg, PA 15601

Re:  *501 Cavitt Avenue*
Our File No. 16885

Dear Judge Smail:

In furtherance of the Status Conference on October 8, 2019 and the Order of Court of the same day, please be advised as follows:

1. The parties and their counsel met at my office on October 8, 2019 at 2 p.m.;
2. Plaintiff arranged for a structural engineer, Bob Mason, PE, of Reliable Structural Engineers LLC, assessed the building on October 9, 2019 at approximately 8 a.m.  ** The author of our November 2017 report Mr. Romesburg could not commit to travel to the building from his Waynesburg office and complete a report within the timeframe established in the Order due to pre-existing commitments; and,
3. Mr. Mason has supplied to me the attached report.

Plaintiff had been advised that the estimated costs for Mr. Mason's suggestions are substantially greater than prior estimates, so Plaintiff is making arrangements to secure an appropriate demolition contractor and then submit the permit application.  The Borough had agreed to issue a demolition permit as soon as it receives the application.

Thank you for your attention to this matter.

Very truly yours,

James W. Creenan

JWC/
Enclosures
cc:  Craig Alexander, Esquire
     Frank Yeager



EXHIBIT
2

## Jim Creenan

| | |
|---|---|
| **From:** | Bob Mason <bobthestructuralengineer@gmail.com> |
| **Sent:** | Thursday, October 10, 2019 8:54 AM |
| **To:** | frank.yeager@lanalexcloyd.com; Jim Creenan |
| **Subject:** | 501-503 Cavitt Avenue Structural Report |
| **Attachments:** | 501-503 Cavitt Ave Structural Report.pdf; 501-503 Cavitt Ave Photo Log.pdf; 501-503 Cavitt Ave Invoice.pdf |

Frank/Jim,

Attached are the structural report and photo log. Please let me know you received the the report.

Please also let me know if you have any questions.

The invoice is also attached to this email. Your prompt payment of the invoice is greatly appreciated!

Thank you for the opportunity to be of service. Please let me know if I can be of any additional help.

Respectfully submitted,
Bob Mason, PE
Reliable Structural Engineers LLC
412-770-7590
BobTheStructuralEngineer@gmail.com
www.reliablestructuralengineers.com

## RELIABLE STRUCTURAL ENGINEERS LLC

Bringing You Peace of Mind For Your Structural Engineering Needs!

| 17 Oak Street, Pittsburgh, PA 15202 | 412-770-7590 | BobTheStructuralEngineer@gmail.com |

October 10, 2019
P-19-291

Attn:    Frank Yeager
         Lanalex Cloyd Inc.
         5204 Faulk Drive
         Export, PA 15632

Subject:     Structural Report
             50503 Cavitt Avenue
             Trafford, PA 15085

Pursuant to your request, I performed a structural assessment and visual observation of the above referenced building on October 9, 2019. The purpose of this assessment was to evaluate the building's structural integrity.

This report presents my findings regarding our discussion and on-site visual observations. The liability of this report is limited to the total amount of fees collected. It is in no way meant to be viewed as a comprehensive study of the building structure, or that the existing structural plans were reviewed for capacity and/or code compliance.

**It should be noted that the brick parapet wall at the roof level around the perimeter of the building poses a potential life safety hazard to any passersby on the ground level.**

### BACKGROUND

The subject building is located at the intersection of Cavitt Avenue and 5th Street in the 15085 zip code area of the Borough of Trafford, Westmoreland County, Pennsylvania. The original date of construction was not available on the Westmoreland County Property Records website. The property has been ordered by a judge for evaluation by a structural engineer.

Reliable Structural Engineers LLC
October 10, 2019

501-503 Cavitt Avenue
Trafford, PA 15085

---

### OBSERVATIONS

Conditions of the building structure were noted during my inspection on October 9, 2019 The on-site inspection was performed by Robert G. Mason, Jr., P.E., Structural Engineer. For orientation purposes, the building front wall faces Cavitt Avenue to the north. All other directional references are with respect to facing the object being described.

The three-story building features multi-wythe brick masonry walls supporting wood floor joist construction and unreinforced sandstone foundation walls in the basement. The dimensional wood joists run from right to left, and are supported by a central masonry bearing wall running from front to rear, and the basement exterior foundation wall. The front yard grade is approximately level with the first floor level, and then slopes downward to the rear yard. There is a basement vault space under the sidewalk along the right elevation of the building along 5th Street.

Photos 1 thru 4 illustrate the four elevations of the building. Photo 5 shows the unbraced section of the right elevation exterior brick masonry wall at the roof level. Photo 6 depicts the collapsed roof framing viewed through one of the building windows. Photo 7 illustrates a collapsed section of the roof parapet along the left elevation at the front left corner of the building. Photo 8 shows the depressed section of sidewalk. This indicates that elevated slab over the basement vault space has failed.

The building roof framing on both sides of the building have collapsed into the third floor. On the right side, the third floor framing has also collapsed in the middle of the floor area. It was reported that the roof has been partially open to the weather elements for multiple years.

### DISCUSSION AND CONCLUSIONS

The building has been subjected to weather for several years, which caused the failing roof parapet walls, roof and third floor framing, and sidewalk vault slab areas. **The failing roof parapet walls pose a falling debris hazard, which is life safety concern to any pedestrians at the ground level.**

---

2

Reliable Structural Engineers LLC                                            501-503 Cavitt Avenue
October 10, 2019                                                             Trafford, PA 15085

---

In order to repair the building, the exterior walls would need to be braced externally. This would involve the installation of a framework of steel H-piles anchored by 3-ft wide by 3-ft tall by 15-ft long concrete deadmen at 15 to 20 feet on center around the building. The framework would be installed adjacent to the building walls and the exterior walls would be connected to the new framework.

The alternative to the above-referenced repairs would be to demolish the building structure in its entirety.

Should you have any questions regarding my findings or conclusions, please do not hesitate to contact me.

Respectfully submitted,


Robert G. Mason, Jr., P.E.
Principal Engineer


Enclosure:     Photo Log

Reliable Structural Engineers LLC
October 10, 2019

501-503 Cavitt Avenue, Trafford, PA
Photo Log



Photo 1 – Front elevation of building.



Photo 2 – Right elevation of building.

Reliable Structural Engineers LLC
October 10, 2019

501-503 Cavitt Avenue, Trafford, PA
Photo Log



Photo 3 — Left elevation of building.



Photo 4 — Rear elevation of building.

Case 2:20-cv-01625-WSH Document 136-32 Filed 09/09/20 Page 210 of 223



**Photo 5 – Unbraced right elevation exerior brick masonry wall at roof level.**



**Photo 6 – Collapsed section of roof framing.**

Reliable Structural Engineers LLC
October 10, 2019

501-503 Cavitt Avenue, Trafford, PA
Photo Log



Photo 7 – Parapet wall collapsed into building along left elevation at front left building corner.



Photo 8 – Sunken sidewalk indicates failed elevated slab over basement vault space under sidewalk.



P.O. BOX 237 MURRYSVILLE, PA 15668
(O) (724)325-3513   (C) (724)433-5504
EMAIL: JOSH@ANDERSONSTRUCTURALINC.COM
WWW.ANDERSONSTRUCTURALINC.COM

**TRAFFORD BOROUGH**                                          ASI #01-1951
**414 BRINTON AVE**                                          October 10th, 2019
**TRAFFORD, PA 15085**

   Re: *Structural Observation*
      *501 Cavitt Avenue*
      *Trafford, Pennsylvania 15085*

Dear Mr. Hlad,

     Based on your request, Joshua C. Anderson, P.E. of Anderson Structural Inc. (ASI) has reviewed the provided photographs of the above referenced address. The existing structure is a three-story above grade and one partially below grade building. The structure consists of exterior masonry walls and steel and wood framed interior floors and roof. Based upon the photographs, widespread collapse of the roof and floor systems has occurred throughout the existing structure. The failures appear to extend down to the lower levels as can be observed from the provided overhead photographs. Similar conditions were observed and noted in a report dated November 16th, 2017 by MR Structures. No repairs or reinforcing appear to have been completed since that time. Deterioration and further collapse have occurred and will continue. The longer that the structure is exposed to the elements, the rate of decay will continue to increase until complete failure.

     Based upon the observations of the provided information, the existing structure is inadequate and extremely unsafe. The existing masonry walls are now multiple stories high with no lateral bracing from the floor diaphragms. This condition creates a significant risk of wall collapse. With the exterior walls in such close proximity to the Cavitt Avenue and Route 130 in addition to public walkways, the safety of people in these areas are now at risk. The repairs required to attain structural adequacy are significant and therefore it is recommended that the building be demolished as soon as possible.

     **Based on the observations, it is our professional opinion that the existing structure is no longer adequate or safe for occupation and now poses a risk to the surrounding structures and public. The building is at risk for collapse and no interior access should be allowed. It is our recommendation that the building be demolished as soon as possible to eliminate the possibility of collapse and possible injury to people and surrounding structures.**

**EXHIBIT**
3

501 Cavitt Avenue

October 10th, 2019

It was a pleasure providing our structural services. If you have any questions regarding this report please contact ASI for assistance. ASI reserves the right to modify its finding based on information uncovered after the visit to the site or as more information becomes available.

Sincerely,



Joshua C. Anderson, P.E.
President / Owner



IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA -- CIVIL DIVISION-EQUITY

| | | |
|---|---|---|
| LANALEX CLOYD, | ) | |
| | ) | |
| Plaintiffs | ) | 807 of 2018 |
| | ) | |
| vs. | ) | |
| | ) | |
| TRAFFORD BOROUGH | ) | |
| | ) | |
| Defendant | ) | |

## **ORDER OF COURT**

AND NOW TO WIT, this _____ day of October, upon consideration of the foregoing

MOTION, the structural reports submitted by both parties as well as representations set forth in

the correspondences of the parties, it is hereby ORDERED ADJUDGED AND DECREED that

Plaintiff shall contract with a demolition company to secure the safe demolition of the structure

located at 501 Cavitt Avenue and shall submit application to Trafford for an emergency demolition

permit along with proper proofs of insurance no later that _____.

Trafford shall issue the demolition permit within 24 hours of application. Demolition shall

thereafter be complete with the structure on the ground no later than _____.


BY THE COURT:


_____ J.

## VERIFICATION

I, Ashley Stack, Trafford Borough Manager verify that the statements and averments made in this

Emergency Motion are true and correct to the best of my knowledge, information and belief.

I understand that false statements herein are made subject to the penalties of 18 Pa. C.S. Section

4904 relating to unsworn falsification to authorities.

_October 10 2019_
Date

Ashley Stack

IN THE COURT OF COMMON PLEAS OF WESTMORELAND COUNTY,
PENNSYLVANIA -- CIVIL DIVISION-EQUITY

LANALEX CLOYD,                              )
                                            )
                    Plaintiffs              )        807 of 2018
                                            )
       vs.                                  )
                                            )
TRAFFORD BOROUGH                            )
                                            )
                    Defendant               )

## **ORDER OF COURT**

AND NOW TO WIT, this _____ day of October, upon consideration of the foregoing

MOTION, the structural reports submitted by both parties as well as representations set forth in

the correspondences of the parties, it is hereby ORDERED ADJUDGED AND DECREED that

Plaintiff shall contract with a demolition company to secure the safe demolition of the structure

located at 501 Cavitt Avenue and shall submit application to Trafford for an emergency demolition

permit along with proper proofs of insurance no later that _____.

Trafford shall issue the demolition permit within 24 hours of application.  Demolition shall

thereafter be complete with the structure on the ground no later than _____.


                                    BY THE COURT:


                                    _____ J.

## Joanne Parise

| | |
|---|---|
| **From:** | Jim Creenan |
| **Sent:** | Friday, October 11, 2019 2:55 PM |
| **To:** | Craig Alexander; Joanne Parise |
| **Cc:** | codeenforcement@traffordborough.com; Ashley Stack |
| **Subject:** | RE: 501 Cavitt Avenue - Engineer's Report |

Is the borough proposing to do the demolition?

**From:** Craig Alexander <CAlexander@dicelaw.com>
**Sent:** Friday, October 11, 2019 2:30 PM
**To:** Jim Creenan <jcreenan@cbattorneys.com>; Joanne Parise <jparise@cbattorneys.com>
**Cc:** codeenforcement@traffordborough.com; Ashley Stack <boroughmanager@traffordborough.com>
**Subject:** RE: 501 Cavitt Avenue - Engineer's Report

I'm not sure that's a wise choice, but that's your call. I understand that the timeframes are tight, however, I offered you the opportunity to consent to timeframes. It appears that the Judge agrees that the situation at hand is quite possibly a life or death situation that needs to be addressed immediately. It's just not the same as extending a briefing schedule. Again, I have advised you that I will not file for contempt if the complete application is in on Monday. I'm sure you are aware that the Borough cannot issue a permit on an incomplete application. However, if it is your intention to file one, I will make sure someone is at the Borough Building until 5:00 p.m. today. Attached is a file stamped copy of the order as well as the letter Chief Lindbloom sent Mr. Yeager in the event you did not get it.

Craig H. Alexander, Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA 15239
Office: 724-733-3080
Mobile: 412-310-1599.

**From:** Jim Creenan <jcreenan@cbattorneys.com>
**Sent:** Friday, October 11, 2019 12:51 PM
**To:** Craig Alexander <CAlexander@dicelaw.com>; Joanne Parise <jparise@cbattorneys.com>
**Subject:** RE: 501 Cavitt Avenue - Engineer's Report

OK. We will submit an application albeit incomplete.

**From:** Craig Alexander <CAlexander@dicelaw.com>
**Sent:** Friday, October 11, 2019 12:49 PM
**To:** Jim Creenan <jcreenan@cbattorneys.com>; Joanne Parise <jparise@cbattorneys.com>
**Subject:** RE: 501 Cavitt Avenue - Engineer's Report

Jim-

I have consulted with my client. Unfortunately, I do not have authority to consent to any extension of time given the inherent risk involved in light of the two engineers conclusions as well as the fire chief's opinions. There is rain in the forecast this weekend which could possibly bring that building down.

**EXHIBIT 40**

1

That said, if the time frame set forth in the order is not met, I will not file for contempt of court provided it is filed by 3:00 p.m. on Monday.

Craig H. Alexander,Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA 15239
Office: 724-733-3080
Mobile: 412-310-1599.

**From:** Jim Creenan <jcreenan@cbattorneys.com>
**Sent:** Friday, October 11, 2019 9:21 AM
**To:** Craig Alexander <CAlexander@dicelaw.com>; Joanne Parise <jparise@cbattorneys.com>
**Subject:** Re: 501 Cavitt Avenue - Engineer's Report

Craig ... we're working on the contractor but the short time frame today may not work. Can we agree on Tuesday and advise the court, so long as we are making our best efforts? I've called several contacts for other options and I'm unsure we can get a proposal today to affix to the permit app.

Get Outlook for Android

**From:** Craig Alexander <CAlexander@dicelaw.com>
**Sent:** Thursday, October 10, 2019 3:01:41 PM
**To:** Jim Creenan <jcreenan@cbattorneys.com>; Joanne Parise <jparise@cbattorneys.com>
**Subject:** RE: 501 Cavitt Avenue - Engineer's Report

I don't but both say there is an inherent danger. Do you have any suggestion?

Craig H. Alexander,Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA 15239
Office: 724-733-3080
Mobile: 412-310-1599.

**From:** Jim Creenan <jcreenan@cbattorneys.com>
**Sent:** Thursday, October 10, 2019 3:00 PM
**To:** Craig Alexander <CAlexander@dicelaw.com>; Joanne Parise <jparise@cbattorneys.com>
**Subject:** Re: 501 Cavitt Avenue - Engineer's Report

Do you have an engineer that can specify the appropriate time limits?

Get Outlook for Android

**From:** Craig Alexander <CAlexander@dicelaw.com>
**Sent:** Thursday, October 10, 2019 2:45:00 PM
**To:** Joanne Parise <jparise@cbattorneys.com>
**Cc:** Jim Creenan <jcreenan@cbattorneys.com>
**Subject:** RE: 501 Cavitt Avenue - Engineer's Report

Jim-

Please see attached. I am requesting that the court entertain an emergency motion to place time limits on the demolition for 501 Cavitt. If you would like to give me a call to discuss consented to time limits please give me a call on my mobile as soon as possible.

Thanks.

Craig H. Alexander, Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA 15239
Office: 724-733-3080
Mobile: 412-310-1599.

**From:** Joanne Parise <jparise@cbattorneys.com>
**Sent:** Thursday, October 10, 2019 11:14 AM
**To:** Craig Alexander <CAlexander@dicelaw.com>
**Cc:** Jim Creenan <jcreenan@cbattorneys.com>
**Subject:** 501 Cavitt Avenue - Engineer's Report

Dear Mr. Alexander,

Please see attached.

Sincerely,

Joanne L. Parise
*Paralegal*
CREENAN & BACZKOWSKI, PC
3907 Old William Penn Highway
Suite 304
Murrysville, PA 15668
(724) 733-8832
(724) 733-8834 (fax)

**MURRYSVILLE OFFICE**
Town Square Professional Building
Third Floor
3907 Old William Penn Highway
Murrysville, PA 15668
(724) 733-8832

# Creenan & Baczkowski, PC
### A T T O R N E Y S

www.cbattorneys.com

**MCKEESPORT OFFICE**
City Hall Building
Suite 305
502 Fifth Avenue
McKeesport, PA 15132
(412) 675-0940

JAMES W. CREENAN
MOLLY M. CREENAN
JAKE S. ORESICK
FRANK W. JONES (OF COUNSEL)
CHARLES R. CONWAY (OF COUNSEL)

WALTER F. BACZKOWSKI (1942-2017)
ELIZABETH BAILEY (1920-2016)

Writer's Email:
jcreenan@cbattorneys.com

October 12, 2019

*Via Email Only*

Craig H. Alexander, Esquire
Bruce Dice & Associates PC
787 Pine Valley Dr. Ste E
Pittsburgh, PA 15239

   Re: *501 Cavitt Avenue*
     Our File No. 16885

Dear Mr. Alexander:

  Please consider this letter as the notice by Lanalex Cloyd, Inc. to the Borough of Trafford of the borough liability to it as the property owner of 501 Cavitt Avenue for legal damages and other harm sustained by Lanalex Cloy, Inc., as the borough's actions, inactions, errors, and omissions, have led to the practical and financial inability to rehabilitate the structure at 501 Cavitt.

  Based on the Borough's communications to us and the Court this week, the property owner authorizes the Borough to take whatever action it deems necessary, without prejudice to Lanalex Cloyd, Inc., rights against the Borough, for the borough to stabilize or demolish the structure at its own cost. To the extent necessary, we will voluntarily stipulate by this letter to waive the requirements of the current Court Order preventing the borough from taking such action.

  Thank you for your attention to this matter.

       Very truly yours,

       */s/ James W. Creenan*

       James W. Creenan

JWC/
cc: Lanalex Cloyd, Inc.

**EXHIBIT**
**41**

MURRYSVILLE OFFICE
Town Square Professional Building
Third Floor
3907 Old William Penn Highway
Murrysville, PA 15668
(724) 733-8832

JAMES W. CREENAN
MOLLY M. CREENAN
JAKE S. ORESICK
FRANK W. JONES (OF COUNSEL)
CHARLES R. CONWAY (OF COUNSEL)

# Creenan & Baczkowski, PC
### A T T O R N E Y S

www.cbattorneys.com

MCKEESPORT OFFICE
City Hall Building
Suite 305
502 Fifth Avenue
McKeesport, PA 15132
(412) 675-0940

WALTER F. BACZKOWSKI (1942-2017)
ELIZABETH BAILEY (1920-2016)

Writer's Email:
jcreenan@cbattorneys.com

October 16, 2019

*Via Email Only*
Craig H. Alexander, Esquire
Bruce Dice & Associates PC
787 Pine Valley Dr. Ste E
Pittsburgh, PA 15239

Re:     *501 Cavitt Avenue*
        Westmoreland County Court of Common Pleas
        No.  807 of 2018
        Our File No. 16885

Dear Mr. Alexander:

I write to advise you, pursuant to Paragraphs 1 and 2 of the Court's October 15, 2019 Order, that Lanalex Cloyd, Inc. is unable to confirm demolition of the structure and thus the Borough should proceed with the demolition.  We wish to give you as much notice as possible so that the Borough can meets its obligations under Paragraphs 1 and 2 of the Order.

Please contact me with any specific questions or if you need to discuss any issue relating to the demolition.

Thank you for your attention to this matter.

Very truly yours,

*/s/ James W. Creenan*

James W. Creenan

JWC/jlp

cc:     Lanalex Cloyd, Inc.

**EXHIBIT 42**

## VERIFICATION

I verify that the facts set forth in this Complaint are true and correct to the best of my knowledge, information, and belief. I am authorized to sign this Verification for Lanalex Cloyd, Inc. I understand that false statements herein are made subject to the penalties of 18 Pa.C.S. § 4904, relating to unsworn falsification to authorities.

LANALEX CLOYD, INC.

Date: 07/28/2020          BY: _Frank Yeager_

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing COMPLAINT has been served on the following via U.S. First Class Mail, postage prepaid, facsimile, electronic mail, or by hand delivery, on July 31, 2020:

Craig H. Alexander, Esquire
Bruce E. Dice & Associates P.C.
787 Pine Valley Drive, Suite E
Pittsburgh, PA  15239
*Counsel for Defendant Trafford Borough*

Respectfully Submitted,

CREENAN & BACZKOWSKI, PC

BY: _____
James W. Creenan, Esquire
Pa. Id. No. 79213